# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF NEW YORK

---

William Kerr,

                           Plaintiff,

      v.                                   5:25-CV-1647 (LEK/MJK)

Syracuse Police Department *et. al.*,

                           Defendant.

---

William Kerr,

                           Plaintiff,

      v.                                   5:25-CV-1648 (LEK/MJK)

Funny Bone Comedy Club (Destiny USA) *et. al.*,

                           Defendant.

---

William Kerr,

                           Plaintiff,

      v.                                 5:25-CV-1650 (LEK/MJK)

PO Jason Duell *et. al.*,

                           Defendant.

---

William Kerr, Plaintiff *pro se*

Mitchell J. Katz, U.S. Magistrate Judge

To the Honorable Lawrence E. Kahn, Senior U.S. District Judge:

1

## ORDER & REPORT- RECOMMENDATION

On November 24, 2025, Kerr began these actions by filing three Complaints and moving for leave to proceed *in forma pauperis* ("*IFP*"). (Complaint 25-CV-1647 Dkts. 1, 2; Complaint 25-CV-1648 Dkts. 1, 2); (Complaint 25-CV-1650, Dkts. 1, 2). The Clerk sent Kerr's Complaints and *IFP* applications to this Court for review. (Complaint 25-CV-1647 Dkts. 1, 2; Complaint 25-CV-1648 Dkts. 1, 2; Complaint 25-CV-1650, Dkts. 1, 2).

## TABLE OF CONTENTS

I.   BACKGROUND ....................................................................... 4

  A. Facts....................................................................................... 4

  B. Procedural History.................................................................. 5

II.   STANDARD OF REVIEW ...................................................... 8

III.  DISCUSSION........................................................................... 9

  A.  The Court consolidates Complaints 25-CV-1647, 25-CV-1648, and 25-CV-1650 to conserve judicial resources and increase efficiency. ..... 9

  B.  The District Court should only allow the excessive force and failure to intervene claims in Complaint 25-CV-1647 to proceed. ........ 9

    1.  The District Court should allow Complaint 25-CV-1647's excessive force claim to proceed because Kerr alleged that the officers tased him for no reason. ........................................................ 10

    2.  The District Court should allow Complaint 25-CV-1647's failure-to intervene claim to proceed because Kerr alleged that the officers could have prevented the use of excessive force. .............................. 12

3.   The District Court should dismiss Kerr's false arrest claim because the 25-CV-1647 Complaint fails to allege any facts that would give rise to the claim. ...............................................14

4.   The District Court should dismiss Kerr's substantive Due Process claim because it is duplicative of his Fourth Amendment excessive-force claim. ........................................15

5.   The District Court should dismiss Kerr's negligence claim because Complaint 24-CV-1647 does not plausibly allege negligence. ..................................................................16

C.   The District Court should dismiss Kerr's 25-CV-1648 Complaint because the District Court does not have subject matter jurisdiction over Kerr's 25-CV-1648 claims..............................................19

1.   The District Court lacks subject matter jurisdiction over Complaint 25-CV-1648.................................................20

2.   The District Court should dismiss Kerr's 25-CV-1648 Complaint for failure to state a claim.................................................21

D.   The District Court should dismiss Kerr's 25-CV-1650 Complaint because no state action is alleged. .......................................22

E.   The District Court should reject Kerr's 25-CV-1647, 25-CV-1648, and 25-CV-1650's "motion for sanctions for spoliation of evidence." ..24

F.   The District Court should allow Kerr to amend his Complaints..25

IV. CONCLUSION ...................................................................26

## I.    BACKGROUND

### A. Facts

On November 25, 2023, Kerr and his mother attended Funny Bone Comedy Club, in Syracuse, New York. (Complaint 25-CV-1647, Dkt. 1, pg. 3, at ¶1).[1] While there, the security guards—Defendants Kempton Taylor, Geraldo Arroyo, and Rob El Camino—harassed Kerr and his mother. (*Id.*); *see also* (Complaint 25-CV-1648, Dkt. 1, pgs. 3, 4, at ¶¶4, 10). Kerr who "was not causing trouble" and "committed no crime" tried to leave the area "to avoid escalation." (*Id.* at ¶2). Taylor, Arroyo, and El Camino "fabricated false accusations about" Kerr "and his mother." (Complaint 25-CV-1648, Dkt. 1, pg. 4, at ¶12).[2]  Probation Officers Jason Duell and Phil Philbrick, who were "act[ing] as state agents," "repeated these false statements to the Syracuse Police Department without verifying anything." (Complaint 25-CV-1650, Dkt. 1, pg. 3, at ¶¶4-5) (cleaned up). These "false statements directly escalated the situation." (*Id.* at ¶6) (cleaned up).

---

[1]  The citation pagination refers to the CM/ECF pagination.

[2]  None of the three Complaints identifies who Taylor , Arroyo, and El Camino made these false statements to. See (Complaint 25-CV-1648, Dkt. 1, pg. 4, at ¶12); (Complaint 25-CV-1647, Dkt. 1, pg. 3, at ¶3); (Complaint 25-CV-1650, Dkt. 1, pg. 3, at ¶4)

While trying to leave Funny Bone Comedy Club, which is located inside Destiny Mall U.S.A., Syracuse Police Department officers—Officer Derek Montressor, Officer Matthew Malinowski, Officer Darrel West, Officer Michael DaSilva, Officer Montserrat Garcia, and Officer Goldberg ("Police Defendants")—arrived at the scene of the event. (Complaint 25-CV-1650, Dkt. 1, pg. 3, at ¶4); *see also* (Complaint 25-CV-1648, Dkt. 1, pg. 2, at ¶¶2, 3). The Police Defendants "made no attempt to de-escalate, verify facts, or speak calmly with" Kerr. (Complaint 25-CV-1647, Dkt. 1, pg. 2. at ¶5). They immediately deployed their tasers and shot Kerr without any verbal warnings or issued a verbal warning and immediately fired without giving Kerr the opportunity to respond. (*Id.* at ¶¶7-8). Multiple officers shot Kerr. (*Id.* at ¶9). The taser shots incapacitated Kerr and caused him to fall and suffer "physical pain  and long-term emotional trauma." (*Id.*, pg. 4, at ¶10).

### B. Procedural History

It should be noted that Kerr's three lawsuits follow a spate of litigation by Kerr's mother, Holly Jarvis. In July 2024, Jarvis filed a Complaint, in New York Supreme Court against the City of Syracuse, Syracuse Police Department, the Police Defendants, Duel, and

Philbrick. (25-CV-228 Removal Exh. A, Dkt. 1-1, at pg. 3). That Complaint made substantially similar allegations as Kerr's three Complaints. *Compare* (25-CV-228 Removal Exh A, Dkt. 1-1) *with* (Complaint 25-CV-1647, Complaint 25-CV-1648, Complaint 25-CV-1650). In February 2025, Defendants removed that action to this Court. (Dkt. 1).

Three months after the 25-CV-228 Defendants removed that case to this Court, Jarvis filed a Complaint with this Court. (Complaint 25-CV-645, Dkt. 1). In that Complaint, Jarvis sued, among others, Funny Bone, Arroyo, El Camino, Taylor. *See* (*Id.*). That Complaint makes similar allegations and claims as one of Kerr's Complaints. *Compare* (Complaint, 25-CV-645) *with* (Complaint, 25-CV-1650). This Court recommended that Senior United States District Judge, Lawrence E. Kahn dismiss that Complaint without prejudice and with leave to amend. (25-CV-645 Initial Review, Dkt. 5).

 Roughly a month after filing that Complaint (25-CV-645), Jarvis filed a Complaint against Duell and Philbrick. (Complaint, 25-CV-843). This Court recommended the Senior Judge Kahn dismiss the Complaint 25-CV-843 without prejudice and without leave to amend. *See*

6

(Complaint 25-CV-843). It bears noting that Complaint 25-CV-843 is substantially the same as Kerr's Complaint against Duell and Philbrick. *Compare* (Complaint, 25-CV-843, Dkt. 1) *with* (Complaint, 25-CV-1650, Dkt. 1).

Kerr now brings three separate lawsuits: 25-CV-1647, 25-CV-1648, 25-CV-1650. In lawsuit 25-CV-1647, Kerr sues the Police Defendants for excessive force, false arrest,[3] failure to intervene, violation of due process, and negligence. (Complaint 25-CV-1647, Dkt. 1, pgs. 1, 5). In lawsuit 25-CV-1648, Kerr sues Funny Bone Comedy Club, Destiny U.S.A. Mall, Taylor, Arroyo, and El Camino for negligence, negligent hiring training and supervision, assault, battery, false imprisonment, intentional infliction of emotional distress, and negligent infliction of emotional distress (Complaint 25-CV-1648, Dkt. 1, pgs. 1, 5-9). In lawsuit 25-CV-1650, Kerr sues Duell and Philbrick for violation of his Due Process rights, negligence, defamation, failure to preserve evidence, and intentional infliction of emotional distress. (Complaint 25-CV-1650, Dkt. 1, pg. 2, 4).

---

[3] The Court construes Kerr's unreasonable seizure claim as a false arrest claim.

## II.    STANDARD OF REVIEW

On their own, courts can dismiss a case—at any time—if they determine that an action is (1) frivolous or malicious; (2) fails to state a claim on which relief may be granted; or (3) seeks monetary relief against a defendant who is immune from such relief. *See* 28 U.S.C. § 1915 (e)(2)(B)(i)-(iii).

When determining whether an action is frivolous, courts must consider whether the complaint lacks an arguable basis in law or fact. *See Neitzke v. Williams*, 490 U.S. 319, 325 (1989) (cleaned up); 28 U.S.C. § 1915. Dismissal of frivolous actions is appropriate to prevent abuses of court process as well as to discourage the waste of judicial resources. *Neitzke*, 490 U.S. at 327; *Harkins v. Eldredge*, 505 F.2d 802, 804 (8th Cir. 1974).

Courts must show liberality toward *pro se* litigants and use extreme caution when *sua sponte* dismissing *pro se* complaints. *See Fitzgerald v. First E. Seventh St. Tenants Corp.*, 221 F.3d 362, 363 (2d Cir. 2000). Still, courts have a responsibility to determine that a claim is not frivolous before permitting a plaintiff to proceed. *See id.*

## III.  DISCUSSION

### A. The Court consolidates Complaints 25-CV-1647, 25-CV-1648, and 25-CV-1650 to conserve judicial resources and increase efficiency.

The Court consolidates Kerr's three Complaints for the purposes of initial review. Fed. R. Civ. P. 42(a) allows courts to "order all actions consolidated if they involve 'common issues of law or fact.'" *Glauser v. EVCI Ctr. Colleges Holding Corp.*, 236 F.R.D. 184, 186 (S.D.N.Y. 2006) (quoting Fed. R. Civ. P. 42(a)). District courts have broad discretion when determining whether to consolidate cases. *Id.* Here, Kerr's three Complaints arise out of one incident that began in Funny Bone Comedy Club. *See* (Complaint 25-CV-1647, Complaint 25-CV-1648, Complaint 25-CV-1650). Likewise, Kerr's legal claims are similar throughout each Complaint. *See* (Complaint 25-CV-1647, Complaint 25-CV-1648, Complaint 25-CV-1650). Because there are common issues of law *and* fact, the Court consolidates these Complaints to conserve judicial resources and increase efficiency.

### B. The District Court should only allow the excessive force and failure to intervene claims in Complaint 25-CV-1647 to proceed.

The Court recommends the District Court dismiss Complaint 25-CV-1647 in part. Below, the Court finds that Kerr plausibly alleges

excessive force and failure to intervene claims. The Court also finds that

Kerr's Due Process and false arrest claims unable to survive §1915's

forgiving review. As to Kerr's negligence claim, the Court finds that

Kerr fails to state a negligence claim. With these findings, the Court

recommends the District Court:

1. allow Kerr's excessive force claim to proceed;
2. allow Kerr's failure to intervene claims to proceed;
3. dismiss Kerr's Due Process claim without prejudice and without leave to amend;
4. dismiss Kerr's false arrest claim without prejudice and without leave to amend; and
5. dismiss Kerr's negligence claim without prejudice and with leave to amend.

### 1. The District Court should allow Complaint 25-CV-1647's excessive force claim to proceed because Kerr alleged that the officers tased him for no reason.

"The Fourth Amendment prohibits the use of excessive force in

making an arrest, and whether the force used is excessive is to be

analyzed under that Amendment's 'reasonableness standard.'" *Outlaw*

*v. City of Hartford*, 884 F.3d 351, 366 (2d Cir. 2018) (cleaned up)

(quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989). The "proper

application" of this standard "requires careful attention to the facts and

circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Outlaw*, 884 F. 3d. at 366. (internal citation omitted). "The reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Brown v. City of New York*, 798 F.3d 94, 100 (2d Cir. 2015) (cleaned up). Not to be forgotten, "plaintiff[s] must establish that the defendant used more than *de minimis* force." *Durr v. Slator*, 558 F. Supp. 3d 1, 16 (N.D.N.Y. 2021) (D'Agostino, J.). But "an individual does not need to sustain a severe injury to maintain a" Fourth Amendment excessive-force claim. *Hunter v. Edwards*, No. 22-CV-6205, 2022 WL 19519335, at *3 (W.D.N.Y. 2022)

Kerr has plausibly alleged an excessive force claim. Police Defendants arrived at the scene while Kerr was trying to leave Funny Bone. (Complaint 25-CV-1647, Dkt. 1, pg. 3, at ¶¶2,4). Once they arrived, the Police Defendants "made no attempt to de-escalate, verify facts, or speak calmly with" Kerr. (*Id.* at ¶5). Kerr tried to comply and

was leaving. (*Id.* at ¶6). Without any verbal warnings or a verbal warning without a chance to respond, the Police Defendants deployed their tasers and fired at Kerr. (*Id.* at ¶¶7-8). The tasering caused Kerr to fall and suffer physical and long-term emotional pain. (*Id.,* pgs. 3-4, at ¶¶10). These allegations are sufficient to sustain an excessive force claim. *See, e.g., Sposato v. Carey*, No. 5:23-CV-364 (TJM/ATB), 2023 WL 12107649, at *4 (N.D.N.Y. 2023) (Allowing an excessive force claim to survive because the plaintiff alleged that the police officer defendant tased him in the back while the plaintiff was walking in to his mother's house unarmed). Thus, the Court recommends the District Court allow Complaint 25-CV-1647's excessive force claim to proceed.

> **2. The District Court should allow Complaint 25-CV-1647's failure-to intervene claim to proceed because Kerr alleged that the officers could have prevented the use of excessive force.**

"All law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence." *Hunter*, 2022 WL 19519335, at *3 (W.D.N.Y. Aug. 24, 2022) (cleaned up). So an "officer may be held liable for preventable harm caused by the actions of other officers, if "(1) the officer had a realistic opportunity

to intervene and prevent the harm; (2) a reasonable person in the officer's position would know that the victim's constitutional rights were being violated; and (3) the officer does not take reasonable steps to intervene." *Jackson v. City of New York*, 939 F. Supp. 2d 235, 258 (E.D.N.Y. 2013)

Kerr plausibly alleges a failure-to-intervene claim. When the Police Defendants arrived at the scene, they opted to use tasers without, or with little, warning. *See* (Complaint 25-CV-1647, Dkt. 1, pg. 3, at ¶¶7-9). Kerr's allegations that the Police Defendants decided to use force instead of preventing it is enough for his claim to survive §1915's forgiving review. *See, e.g., Jackson*, 939 F. Supp. 2d at 258 ("having failed to intervene to prevent this initial excessive force, Officers Johnston and Campo are subject to liability. . . for their failure to intervene to prevent Officer Dammacco's use of excessive force against Plaintiff."); *see also Kelly v. Burns,* No. 02-CV-0641, 2005 WL 2387831 (N.D.N.Y. 2005) (Mordue, J.) (upholding claim for failure to intervene on grounds that officer was present during constitutional violation and was supervising officer during the incident in question).

As a result, this Court recommends the District Court allow Kerr's

failure-to-intervene claim to proceed.

> **3. The District Court should dismiss Kerr's false arrest claim because the 25-CV-1647 Complaint fails to allege any facts that would give rise to the claim.**

"A § 1983 claim for false arrest derives from the Fourth

Amendment right to remain free from unreasonable seizures, which

includes the right to remain free from arrest absent probable cause."

*Green v. City of Mount Vernon*, 96 F. Supp. 3d 263, 294 (S.D.N.Y. 2015)

(cleaned up). When "analyzing § 1983 claims for unconstitutional false

arrest, courts have generally looked to the law of the state in which the

arrest occurred." *Id.* (cleaned up). "In New York, to prevail on a false

arrest claim, a plaintiff must show that: (1) the defendant intended to

confine the plaintiff, (2) the plaintiff was conscious of the confinement,

(3) the plaintiff did not consent to the confinement and (4) the

confinement was not otherwise privileged." *Guan v. City of New York*,

37 F.4th 797, 804 (2d Cir. 2022).

Kerr does not plausibly allege a false arrest claim. Nowhere in the

25-CV-1647 Complaint does Kerr plead that he was arrested. *See*

(Complaint 25-CV-1647, at pgs. 2-5). More to the point, Kerr never

alleges that the Police Defendants intended to confine him, he was

14

aware of the confinement, he did not consent to the confinement, and the confinement was not otherwise privileged. *See Guan*, 37 F.4th at 804. Put another way, Kerr does not plausibly allege any facts that could satisfy any element of a false arrest claim. That failure should be fatal on this initial review. To end, this Court recommends the District Court dismiss Kerr's false arrest claim *without prejudice* and *with leave to amend.*

### 4. The District Court should dismiss Kerr's substantive Due Process claim because it is duplicative of his Fourth Amendment excessive-force claim.

The Court construes Kerr's Due Process claim as a substantive Due Process claim. The Court does so because Kerr's 25-CV-1647 Complaint does not allege that Syracuse Police Department denied Kerr any process. *See generally* (Complaint 25-CV-1647, Dkt. 1). Read liberally, the Complaint alleges that the Police Defendants violated Kerr's Fourth Amendment right when they used excessive force against him. (Complaint 25-CV-1647, Dkt. 1, pg. 4, at ¶12).

And because Kerr's 25-CV-1647 Complaint alleges a substantive Due Process claim, this Court recommends dismissing it. Where a particular Amendment "provides an explicit textual source of constitutional protection" against a particular sort of government

behavior, "that Amendment, not the more generalized notion of

substantive due process, must be the guide for analyzing these claims."

*Graham v. Connor*, 490 U.S. 386, 395 (1989) (cleaned up); *see also*

*Albright v. Oliver*, 510 U.S. 266, 273 (1994). As a result, "substantive

due process claims must be dismissed where they are merely

duplicative of claims explicitly protected under other constitutional

sources." *Roman v. Velleca*, No. 3:11-CV-1867, 2012 WL 4445475, at *10

(D. Conn. Sept. 25, 2012) (cleaned up). "The Fourth Amendment

prohibits the use of excessive force in making an arrest[.]"*Brown v. City*

*of New York,* 798 F.3d 94, 100 (2d Cir. 2015). So the District Court

should dismiss Kerr's substantive due process claim—*without prejudice*

and *without leave to amend*—because it is duplicative of his Fourth

Amendment excessive-force claim.

### 5. The District Court should dismiss Kerr's negligence claim because Complaint 24-CV-1647 does not plausibly allege negligence.

Pleadings must contain, among other things, "a short and plain

statement of the claim showing that the pleader is entitled to relief …"

Fed. R. Civ. P. 8(a)(2). "The purpose of" Rule 8 "is to give fair notice of

the claim being asserted so" adverse parties have "the opportunity to

file a responsive answer, prepare an adequate defense, and determine whether the doctrine of res judicata is applicable." *Flores v. Graphtex*, 189 F.R.D. 54, 55 (N.D.N.Y. 1999) (cleaned up). The rule also requires the pleading to include "a short and plain statement of the grounds for the court's jurisdiction" and "a demand for the relief sought[.]" Fed. R. Civ. P. 8(a)(1), (3). "Although 'no technical form is required,' the Federal Rules make clear that each allegation contained in the pleading 'must be simple, concise, and direct.'" *Cole v. Smrtic*, No. 1:24-CV-847, 2024 WL 4870495, at *2 (N.D.N.Y. 2024) (quoting Fed. R. Civ. P. 8(d)). Allegations "so vague as to fail to give the defendants adequate notice of the claims against them" are subject to dismissal. *Sheehy v. Brown*, 335 F. App'x 102, 104 (2d Cir. 2009) (summary order). Indeed, to survive dismissal for failure to state a claim, a complaint must contain sufficient factual matter, accepted as true, to state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice." *Ashcroft*, 556 U.S. at 678 (cleaned up).

17

Complaint 25-CV-1647 does not plausibly allege negligence. To plead a New York negligence claim, plaintiffs must plausibly allege: "(1) that the defendant owed the plaintiff a duty of care; (2) that the defendant breached that duty; and (3) that the plaintiff suffered damages as a proximate result of that breach." *Peters v. Whole Foods Mkt. Grp., Inc.*, 24-CV-02807, 2025 WL 2698328, at *2 (S.D.N.Y. Sept. 23, 2025) (cleaned up) (citing *Solomon v. City of New York*, 66 N.Y.2d 1026, 1027 (1985). Yet Kerr's 25-CV-1647 Complaint does not plead—let alone plausibly allege—the duty defendants owed him, whether that duty was breached,  the proximate result of the breach, and damages. *See* (Complaint 25-CV-1647, Dkt. 1, at pgs. 2-6). The failure to plead any element is fatal to Kerr's negligence claim. *See Ashcroft*, 556 U.S. at 678 As a result, the District Court should dismiss Complaint 25-CV-1648's negligence claim.[4]

---

[4] If the District Court disagrees with this analysis and chooses to hear the negligence claim, it can do so by exercising supplemental jurisdiction. *See* 28 U.S.C. §1367; *see also United Mine Workers of America v. Gibbs*, 383 U.S. 715 (1966).

## C. The District Court should dismiss Kerr's 25-CV-1648 Complaint because the District Court does not have subject matter jurisdiction over Kerr's 25-CV-1648 claims.

The Court recommends dismissing Kerr's 25-CV-1650 Complaint in its entirety. For a Court to have diversity jurisdiction plaintiffs must plausibly allege that the defendants' citizenship are diverse from plaintiffs' citizenship and that the amount in controversy exceeds $75,000. Here, Kerr has not plausibly alleged that the defendants' citizenship is diverse from his own. So the District Court does not have subject matter jurisdiction. As a result, this Court should dismiss Kerr' Complaint *without prejudice* and *with leave to amend. See Karupaiyan v. New York*, No. 23-1257-CV, 2024 WL 2174272, at *2 (2d Cir. May 15, 2024) ("When subject matter jurisdiction is lacking, the district court lacks the power to adjudicate the merits of the case, and accordingly Article III deprives federal courts of the power to dismiss the case with prejudice.") (cleaned up); *see also id.* ("Because Rule 12(h)(3) provides for dismissal for lack of subject matter jurisdiction, such a dismissal must be without prejudice.").

### 1. The District Court lacks subject matter jurisdiction over Complaint 25-CV-1648.

The Court should dismiss Kerr's 25-CV-1648 Complaint for lack of subject matter jurisdiction. Subject matter jurisdiction under 28 U.S.C. § 1332(a)(a) exists "where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different states." 28 U.S.C. § 1332(a)(1). Here, Kerr alleges that he is a resident of New York, and Funny Bone's and Destiny U.S.A's principal place of business is also New York. (Complaint 25-CV-1648, Dkt. 1, at pgs. 2-3). The Complaint also indicates that Taylor, Arroyo, and El Camino are citizens of New York. *See* (Complaint 25-CV-1648, Dkt. 1, at pg. 3) ("Defendants Kempton Taylor, Geraldo Arroyo, and Rob El Camino were employes . . . of the Funny Bone Comedy Club"). In other words, the Complaint plausibly alleges that there is *no* diversity of citizenship. As a result, the Court recommends the District Court find that it has no subject matter jurisdiction over this case and dismiss Kerr's 25-CV-1648 Complaint.

### 2. The District Court should dismiss Kerr's 25-CV-1648 Complaint for failure to state a claim.

Kerr's 25-CV-1648 Complaint does not plausibly allege that any 25-CV-1648 Defendant harmed him.[5] In that Complaint, Kerr alleges that Taylor, Arroyo, and El Camino "confronted and harassed" him "and his mother without justification." (Complaint 25-CV-1648, Dkt. 1, pg. 4, at ¶10). Continuing, Kerr states that "Defendants made false statements about" his "behavior and treated him as a threat when he had done nothing wrong." (*Id.* at ¶12). Neither of these statements—nor any of the 25-CV-1648 Complaint allegations—establish that Taylor, Arroyo, and El Camino harmed Kerr. Similarly, Kerr does allege that either Funny Bone or Destiny U.S.A harmed him. *See generally* (Complaint 25-CV-1648, Dkt. 1). Put another way, Kerr's 25-CV-1648 Complaint is a "unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft*, 556 U.S. at 678. And that is not enough to state a claim. *See, e.g., Lesson v. Jane Doe*, No. 1:25-CV-00188 (AMN/TWD), 2025 WL 1291533 (N.D.N.Y. May 5, 2025) (Adopting Report and Recommendation which dismissed a plaintiff's excessive force claim because that plaintiff failed to "identify what force" was used against

---

[5]  For the legal framework regarding pleadings see Section III.B.5.

him or "how it was excessive."). Thus, this Court recommends that the

District Court dismiss the entire 25-CV-1648 Complaint *without*

*prejudice* and *without leave to amend.*

### D. The District Court should dismiss Kerr's 25-CV-1650 Complaint because no state action is alleged.

The Court recommends dismissing Kerr's 25-CV-1650 Complaint

in its entirety. For a Court to have subject matter jurisdiction over a

§ 1983 claim, plaintiffs must plausibly allege that the defendants were

acting under the color of law. Here, Kerr has not alleged that the off-

duty defendants were acting under the color of law. So, as the 25-CV-

1650 Complaint is currently pleaded, the District Court does not have

subject matter jurisdiction. In response, this Court should dismiss Kerr'

Complaint *without prejudice* and *with leave to amend.*

For purposes of 42 U.S.C. § 1983, acting under color of law means

that the law-enforcement-officer defendant must "have exercised power

possessed by virtue of state law and made possible only because the

wrongdoer is clothed with the authority of state law. " *West v. Atkins*,

487 U.S. 42, 49 (1988) (cleaned up). Thus, "it is axiomatic that private

citizens and entities are not generally subject to § 1983 liability."

*Moroughan v. Cnty. of Suffolk*, 514 F. Supp. 3d 479, 512 (E.D.N.Y. 2021)

(cleaned up). But §1983 liability can attach if an off-duty law enforcement officer acts under the color of law. *See, e.g., Claudio v. Sawyer*, 675 F. Supp. 2d 403, 409 (S.D.N.Y. 2009) ("An off-duty police officer effectuating a traffic stop is also considered to be acting under the color of law."). When determining if §1983 liability attaches, "courts look to the nature of the officer's act" not their position. *Pitchell v. Callan*, 13 F.3d 545, 548 (2d Cir. 1994) (cleaned up). When examining an officer's actions, courts consider seven non-exhaustive factors. *See Mosca v. City of New York*, No. 17-CV-4327, 2018 WL 3151704, at *4 (E.D.N.Y. Apr. 24, 2018) (cleaned up). Courts analyze whether the was off-duty officer: "(1) identified" themselves "as an officer of the law; (2) was in uniform; (3) was authorized to make an arrest at the time; (4) was carrying handcuffs; (5) was carrying any weapons; (6) flashed a police badge; and (7) placed the plaintiff under arrest or otherwise detained her." *Id.* (cleaned up).

Applying these factors, it is unclear whether this Court has jurisdiction to hear Kerr's case. In Complaint 25-CV-1650, Kerr does not allege that Duell and Philbrick identified themselves as law probation officers, were in uniform carrying handcuffs and firearms,

were authorized to arrest Kerr and Jarvis, and arrested the mother and son. *See generally*, (Complaint 25-CV-1650, Dkt. 1). Without pleading these facts, this Court cannot determine whether §1983 liability attaches. And if this there is no §1983 liability, then the District Court cannot hear this case. *See Faiaz v. Colgate Univ.*, 64 F. Supp. 3d 336, 348 (N.D.N.Y. 2014) (Baxter, M.J.) ("The requirement that the defendant act under 'color of state law' is jurisdictional"). In consequence, the Court recommends dismissing Kerr's 25-CV-1650 Complaint—in its entirety—*without prejudice* and *with leave to amend*.

### E. The District Court should reject Kerr's 25-CV-1647, 25-CV-1648, and 25-CV-1650's "motion for sanctions for spoliation of evidence."

The District Court should reject Kerr's spoliation motions because it lack subject matter jurisdiction to hear the claim. Kerr's claim emanates from his inability to obtain camera footage under FOIL. (25-CV-1650, Spoliation Mot., Dkt. 4, pg. 4, at ¶¶4-7). FOIL allows individuals to request disclosure of records collected by New York state agencies, subject to certain statutory exemptions. If an initial request is denied, the requester may appeal the denial first to the "head, chief executive or governing body" of the entity or agency in possession of the documents. N.Y. Pub. Off. L. § 89(4)(a) If the requester is again denied,

they may appeal that denial by commencing a special proceeding in New York State courts under Article 78 of the New York Civil Practice Law and Rules. N.Y. Pub. Off. L. § 89(4)(b). "Federal courts do not have subject matter jurisdiction to enforce state laws regarding public access to official records." *Jarvis v. Duell*, No. 25-CV-843, 2025 WL 2467484, at *2 (N.D.N.Y. Aug. 26, 2025) (dismissing this same claim, which Holly Jarvis, Kerr's mother, brought in the related actions). The Court therefore recommends dismissing any claims arising out of Kerr's FOIL request.

## F. The District Court should allow Kerr to amend his Complaints.

Generally, before courts dismiss a pro se complaint or any part of the complaint on its own, they should afford the plaintiff the opportunity to amend at least once; but leave to re-plead may be denied where any amendment would be futile. *See Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993). Futility is present when the problem with a plaintiff's causes of action is substantive such that better pleading will not cure it. *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (citation omitted). Here, there is no futility because Kerr can amend his

Complaint to include facts that establish subject matter jurisdiction. Thus, the Court recommends finding no futility.

## IV. CONCLUSION

**WHEREFORE,** based on the findings above, it is

**ORDERED**, that Plaintiff's motions to proceed *IFP* (Dkt. 2 in 5:25-cv-1647; 5:25-cv-1648; 5:25-cv-1650) is **GRANTED**; and it is further

**ORDERED,** that Complaints 5:25-CV-1647, 5:25-CV-1648, and 5:25-CV-1650 are consolidated for the purposes of initial review, and it is further;

**RECOMMENDED,** that the District Court allow Kerr's excessive force claim (Complaint 5:25-CV-1647) to **PROCEED,** and it is further

**RECOMMENDED,** that the District Court allow Kerr's failure-to-intervene claim (Complaint 5:25-CV-1647) to **PROCEED**, and it is further;

**RECOMMENDED,** that the District Court **DISMISS** Kerr's false-arrest claim (Complaint 5:25-CV-1647) **WITHOUT PREJUDICE** and **WITH LEAVE TO AMEND,** and it is further;

**RECOMMENDED,** that the District Court **DISMISS** Kerr's due process claim (Complaint 5:25-CV-1647) **WITHOUT PREJUDICE** and **WITH LEAVE TO AMEND,** and it is further;

**RECOMMENDED,** that the District Court **DISMISS** Kerr's negligence claim (Complaint 5:25-CV-1647) **WITHOUT PREJUDICE** and **WITH LEAVE TO AMEND,** and it is further;

**RECOMMENDED,** that the District Court **DISMISS** Complaint 5:25-CV-1648 **WITHOUT PREJUDICE** and **WITH LEAVE TO AMEND,** and it is further;

**RECOMMENDED,** that the District Court **DISMISS** Complaint 5:25-CV-1650 **WITHOUT PREJUDICE** and **WITH LEAVE TO AMEND,** and it is further;

**RECOMMENDED,** that the District Court **DISMISS** Kerr's motion for spoliation of evidence (5:25-CV-1647, Dkt. 4) **WITHOUT PREJUDICE** and **WITH LEAVE TO AMEND,** and it is further;

**RECOMMENDED,** that the District Court **DISMISS** Kerr's motion for spoliation of evidence (5:25-CV-1648, Dkt. 3) **WITHOUT PREJUDICE** and **WITH LEAVE TO AMEND,** and it is further;

**RECOMMENDED,** that the District Court **DISMISS** Kerr's motion for spoliation of evidence (5:25-CV-1650, Dkt. 4) **WITHOUT PREJUDICE** and **WITH LEAVE TO AMEND,** and it is;

**ORDERED** that the Clerk provide Plaintiff with copies of the unpublished decisions cited herein in accordance with *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2008) (*per curiam*).

In accordance with 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *See Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec. of Health & Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636 (b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

Dated: December 19, 2025.

_____
Hon. Mitchell J. Katz
U.S. Magistrate Judge

2024 WL 4870495

Only the Westlaw citation is currently available.

United States District Court, N.D. New York.

Matthew H. COLE, Plaintiff,

v.

Honorable Michael W. SMRTIC, et al. Defendants.

No. 1:24-CV-00847 (MAD/CFH)

|

Signed November 21, 2024

**Attorneys and Law Firms**

MATTHEW H. COLE, 271 Market Street, Amsterdam, New York 12010, Plaintiff pro se.

## REPORT-RECOMMENDATION & ORDER

CHRISTIAN F. HUMMEL, United States Magistrate Judge

### I. In Forma Pauperis

**\*1**  Plaintiff pro se Matthew H. Cole ("plaintiff") commenced this action (No. 1:24-CV-00623) on May 6, 2024, by filing a complaint. See Dkt. No. 1 ("Compl."). On September 26, 2024, plaintiff submitted what the Court construes to be a supplement to the complaint. [1]  See Dkt. No. 7. In lieu of paying this Court's filing fees, he submitted an application for leave to proceed in forma pauperis ("IFP"). See Dkt. No. 2. The undersigned has reviewed plaintiff's IFP application and determines that he financially qualifies to proceed IFP. [2]  Thus, the Court proceeds to its review of the complaint pursuant to 28 U.S.C. § 1915. Plaintiff has also submitted for the Court's review a Pro Se Application for Permission to File Electronically and a Motion to Appoint Counsel. See Dkt. Nos. 4, 5.

### II. Initial Review

#### A. Legal Standards

Section 1915 of Title 28 of the United States Code directs that, when a plaintiff seeks to proceed IFP, "the court shall dismiss the case at any time if the court determines that ... the action or appeal (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). Thus, it is a court's responsibility to determine that a plaintiff may properly maintain his complaint before permitting him to proceed with his action.

Where, as here, the plaintiff proceeds pro se, "the court must construe his submissions liberally and interpret them to raise the strongest arguments that they suggest." Kirkland v. Cablevision Sys., 760 F.3d 223, 224 (2d Cir. 2014) (per curiam) (internal quotation marks omitted); see also Hernandez v. Coughlin, 18 F.3d 133, 136 (2d Cir. 1994). As the Second Circuit stated,

There are many cases in which we have said that a pro se litigant is entitled to "special solicitude," that a pro se litigant's submissions must be construed "liberally," and that such submissions must be read to raise the strongest arguments that they

"suggest[.]" At the same time, our cases have also indicated that we cannot read into pro se submissions claims that are not "consistent" with the pro se litigant's allegations, or arguments that the submissions themselves do not "suggest," that we should not "excuse frivolous or vexatious filings by pro se litigants," and that pro se status "does not exempt a party from compliance with relevant rules of procedural and substantive law[.]"

**\*2** Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 477 (2d Cir. 2006) (citations and footnote omitted); see also Sealed Plaintiff v. Sealed Defendant, 537 F.3d 185, 191-92 (2d Cir. 2008).

"The [Second Circuit]'s 'special solicitude' for pro se pleadings has its limits, because pro se pleadings still must comply with ... the Federal Rules of Civil Procedure [('Fed. R. Civ. P.')]." Kastner v. Tri State Eye, No. 19-CV-10668 (CM), 2019 WL 6841952, at *2 (S.D.N.Y. Dec. 13, 2019) (quoting Ruotolo v. IRS, 28 F.3d 6, 8 (2d Cir. 1994)). Pleading guidelines are provided in the Federal Rules of Civil Procedure. Specifically, Rule 8 requires the pleading to include:

(1) a short and plain statement of the grounds for the court's jurisdiction ...;

(2) a short and plain statement of the claim showing that the pleader is entitled to relief; and

(3) a demand for the relief sought...

FED. R. CIV. P. 8(a). Although "[n]o technical form is required," the Federal Rules make clear that each allegation contained in the pleading "must be simple, concise, and direct." Id. at 8(d). "The purpose ... is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer, prepare an adequate defense and determine whether the doctrine of res judicata is applicable." Flores v. Graphtex, 189 F.R.D. 54, 54 (N.D.N.Y. 1999) (internal quotation marks and citations omitted). Allegations that "are so vague as to fail to give the defendants adequate notice of the claims against them" are subject to dismissal. Sheehy v. Brown, 335 F. App'x 102, 104 (2d Cir. 2009) (summary order).

Further, Fed. R. Civ. P. 10 provides:

> [a] party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances. A later pleading may refer by number to a paragraph in an earlier pleading. If doing so would promote clarity, each claim founded on a separate transaction or occurrence – and each defense other than a denial – must be stated in a separate count or defense.

FED. R. CIV. P. 10(b). This serves the purpose of "provid[ing] an easy mode of identification for referring to a particular paragraph in a prior pleading[.]" Flores, 189 F.R.D. at 54 (internal quotation marks and citations omitted). A complaint that fails to comply with the pleading requirements "presents far too a heavy burden in terms of a defendant's duty to shape a comprehensive defense and provides no meaningful basis for the Court to assess the sufficiency of their claims." Gonzales v. Wing, 167 F.R.D. 352, 355 (N.D.N.Y. 1996). As the Second Circuit has held, "[w]hen a complaint does not comply with the requirement that it be short and plain, the court has the power, on its own initiative ... to dismiss the complaint." Salahuddin v. Cuomo, 861 F.2d 40, 42 (2d Cir. 1988) (citations omitted). However, "[d]ismissal ... is usually reserved for those cases in which the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised." Id. (citations omitted).

**\*3** This Court also has an overarching obligation to determine that a claim is not legally frivolous before permitting a pro se plaintiff's complaint to proceed. See, e.g., Fitzgerald v. First East Seventh St. Tenants Corp., 221 F.3d 362, 363 (2d Cir. 2000). "Legal frivolity ... occurs where 'the claim is based on an indisputably meritless legal theory [such as] when either the claim lacks an arguable basis in law, or a dispositive defense clearly exists on the face of the complaint.' " Aguilar v. United States, Nos. 99-MC-0304, 99-MC-0408, 1999 WL 1067841, at *2 (D. Conn. Nov. 8, 1999)[3] (quoting Livingston v. Adirondack

Beverage Co., 141 F.3d 434, 437 (2d Cir. 1998)); see also Neitzke v. Williams, 490 U.S. 319, 325 (1989) ("[D]ismissal is proper only if the legal theory ... or factual contentions lack an arguable basis.").

**B. Complaint**

Plaintiff's civil cover sheet indicates that he seeks to bring this action pursuant to "Title U.S.C. 18 Section 241, Conspiracy Against Rights & Title U.S.C. 18 Section 242 Deprivation of rights Under Color of Law." Dkt. No. 1-1 at 1. The civil cover sheet further provides that his cause of action involves, "Violation of Due process, Speedy Trial Rights, Ineffective Assistance of Counsel. I feel I am being targeted for being black and gay." Id.

Plaintiff's form complaint checks the box indicating that he seeks to bring this case pursuant to 42 U.S.C. § 1983. See Compl. at 3. In response to the question in the form complaint asking in "what federal constitutional or statutory right(s) do you claim is/are being violated by state or local officials," plaintiff responds, "Due Process, 30.30 Speedy Trial Violation, Ineffective Assistance of counsel." [4] Id. In response to a question asking him to explain "how each defendant acted under color of state or local law," plaintiff states "Each judge deliberately denied me due process, and refused to look into the paperwork to see that i was improperly denied my speedy trial rights. It was a tean [sic] effort. The ADA/Special Prosecutor withheld potential exculpatory material which was usd [sic] against me. All mentioned actions were done and upheld even after I showed federal law with supportive case law as a pro se litigant." Id.

Plaintiff provides that his "case is still on appeakl [sic] in Appellate Court Third Department. I feel they are guilty, or part of what I call a scandal. I went to them from the very start with a complaint to the grievance committee, where they denied any wrongdoing. It must be ok to violate Constitutional rights there. This is from March 2019 to present" Id.

In response to a question that asks plaintiff to state the facts underlying his claims, plaintiff states, "Please see attached Article 78 that is attached. It was dismissed being in the wrong court, but is on point." Id. at 4. Plaintiff did not provide the Court with any such attachment and has not submitted any Article 78 materials. See Compl., Dkt. No. 7.

In response to the form complaint's question asking about any injuries suffered as a result of the conduct he complains of, plaintiff states, "Sever [sic] depression over 20 years, irreperable [sic] harm, defamation of character [sic] by arguments not legally allowed to give. Loss of income, inability to gain and keep employment, mental trauma, instilled disbelief in justice in the legal system, familial traumam [sic] due to my legal battles." Id. Indicating the relief sought, plaintiff states

> **\*4** Petitioner seeks reinstatement of driving priveldges [sic], and 10 million dollars for damages caused by conflict of interest, deliberate violation of Due Process, Speedy Trial rights, Ineffective assistance of counsel, malice, Brady Violation, Petitioner claims deliberate misconduct and malice in Montgomery County Court, the Saratoga Disrict Attorney's Office, and the Supreme Court Appellate Division Third department. ** This is subject to change if an attorney agrees to represent.

Compl. at 5. Although he typed his name, plaintiff does not sign the complaint where a signature is indicated. See id. at 8.

Plaintiff provides in his supplement that he "removed this action to district court asserting jurisdiction pursuant to 42 U.S.C. 1983, and § 1441." Dkt. No. 7. at 1. Plaintiff states that he removed this case from Montgomery County Supreme Court. See id. He states that he seeks or sought the removal because he was told he was "not guarantee counsel" at the state, but that "[i]n Federal Court, there is that option, pending qualification, and I am told, if a lawyer agrees to take it, then I really have something. I am in dire need of counsel." Id.

Plaintiff states, "[t]he ineffective assistance of counsel and The County Court are a matter already mentioned in the appeal." Dkt. No. 7 at 2. Plaintiff states that "[t]o get my conviction, I allege judicial and prosecutorial misconduct, and ineffective assistance of counsel × 4. That is why I am pro se. I had to protect myself when appointed counsel did not. It also went through a couple judges which is why they are mentioned in the preliminary complaint/paperwork, and why I mention bias." Id. Plaintiff states he can "prove each thing I saw not just with my words, but with transcripts [5] from the County Court, and the Adult Drug Court." Id. Plaintiff refers to being drug free for four and a half years and having academic success in college. Id. at 3. He states that he wishes this Court to hear his case because he believes he will not "see bias" in federal court "like I saw in others." Id. Plaintiff states that he "also put in a Notice of Removal in the Federal Court for those criminal charges that led to the Complaint. I do not trust the assigned appellate attorney. That case too has Constitutional violations. That case number is 1:24-CR-301 (AMN)." Id.

### C. Discussion [6]

#### 1. Rule 8

As a threshold issue, plaintiff's complaint fails to meet the requirements of Rule 8. See FED. R. CIV. P. 8(a)(2). He does not provide a short and plain statement of the claim demonstrating why he is entitled to relief. Although he makes general references to both an Article 78 proceeding and a criminal proceeding and unexplained references to "Due Process, 30.30 Speedy Trial Violation, Ineffective of Counsel," he does not provide factual support or context. Thus, his complaint does not provide "fair notice" to defendants of the claims against them. See FED. R. CIV. P. 8(a)(2).

#### 2. Heck v. Humphrey

However, there are several substantive concerns that further lead the undersigned to recommend dismissal. First, in referencing to "Due Process, 30.30 Speedy Trial Violation, Ineffective of Counsel" and explicitly referencing a criminal conviction, it is clear that plaintiff is attempting to seek some kind of review of a criminal proceeding or conviction. See Compl. at 3. Plaintiff also accuses all named judges of denying him due process and contends that an unnamed "ADA/Special Prosecutor withheld potential exculpatory material which was usd [sic] against me." Compl. at 4. Plaintiff also references a conviction. See Dkt. No. 7 at 4. Such claims would be barred by Heck v. Humphrey.

**\*5** As this Court, citing the District of Connecticut, has set forth:

> In Heck, the Supreme Court held that in order for a plaintiff "to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." Id. at 486-87. The court further held that "[a] claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983." Id. at 487 (emphasis in original).

> [ ]

> Thus, under Heck and its progeny, if a conviction has not been invalidated previously, a "§ 1983 action is barred ... no matter the target of the prisoner's suit ... if success in that action would necessarily demonstrate the invalidity of confinement or its duration." Wilkinson v. Dotson, 544 U.S. 74, 81-82 (2005) (emphasis in original).

Ali v. Shattuck, No. 8:24-CV-0128 (DNH/CFH), 2024 WL 2747619, at \*3 (N.D.N.Y. May 29, 2024), report-recommendation adopted sub nom. Ali v. Dow, No. 8:24-CV-128, 2024 WL 3460745 (N.D.N.Y. July 18, 2024) (quoting Zografidis v. Richards,

No. 3:22-CV-00631 (AVC), 2022 WL 21756775, at *7 (D. Conn. July 6, 2022), report and recommendation adopted (Oct. 7, 2022), aff'd, No. 22-3197, 2023 WL 7538211 (2d Cir. Nov. 14, 2023)).

Plaintiff has failed to demonstrate that any criminal charge(s), conviction, or sentence has been "reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." Zografidis, 2022 WL 21756775, at *7. Although plaintiff's complaint wants for detail, the undersigned can clearly determine that plaintiff seeks review of his criminal proceedings, conviction, and/or sentence. The claims plaintiff seeks to pursue relate to allegations that he was denied due process, denied speedy trial rights, and experienced ineffective assistance of counsel. Accordingly, plaintiff's claims are barred by Heck unless and until he can demonstrate favorable termination of his criminal conviction. [7]

### 3. Immunities

Plaintiff names as defendants several defendants who are immune from suit. Insofar as plaintiff names Hon. Michael W. Smrtic, Interim Montgomery County Judge and Tatiana N. Coffinger, "County/Family/Surrogate's Court Judge" [8] such claims would be barred by judicial immunity.

**\*6** "With minor exceptions, judges are entitled to absolute immunity for actions relating to the exercise of their judicial functions." Zavalidroga v. Girouard, No. 6:17-CV-682 (BKS/ATB), 2017 WL 8777370, at *8 (N.D.N.Y. July 7, 2017) (citing Mireles v. Waco, 502 U.S. 9, 9-10 (1991) (per curiam)). "Judicial immunity has been created for the public interest in having judges who are 'at liberty to exercise their functions with independence and without fear of consequences.' " Id. (quoting Huminski v. Corsones, 396 F.3d 53, 74 (2d Cir. 2004)). "Judicial immunity applies even when the judge is accused of acting maliciously or corruptly." Id. (citation omitted); see Positano v. New York, No. 12-CV-2288 (ADS/AKT), 2013 WL 880329, at *4 (E.D.N.Y. Mar. 7, 2013) (explaining that the plaintiff may not bring action against a judge for actions taken in his judicial capacity, even when the actions violated the ADA).

"Judicial immunity is immunity from suit, not just immunity from the assessment of damages." Zavalidroga, 2017 WL 8777370, at *8 (citing Mitchell v. Forsyth, 472 U.S. 511, 526 (1985)). "The only two circumstances in which judicial immunity does not apply is when he or she takes action 'outside' his or her judicial capacity and when the judge takes action that, although judicial in nature, is taken 'in absence of jurisdiction.' " Id. (quoting Mireles, 502 U.S. at 11-12). "In determining whether or not a judge acted in the clear absence of all jurisdiction, the judge's jurisdiction is 'to be construed broadly, and the asserted immunity will only be overcome when the judge clearly lacks jurisdiction over the subject matter.' " Pacherille v. Burns, 30 F. Supp. 3d 159, 163 (N.D.N.Y. 2014) (quoting Ceparano v. Southampton Just. Ct., 404 F. App'x 537, 539 (2d Cir. 2011) (summary order)). "Whether a judge acted in a judicial capacity depends on the nature of the act [complained of] itself, i.e., whether it is a function normally performed by a judge, and [on] the expectations of the parties, i.e., whether they dealt with the judge in his judicial capacity." Ceparano, 404 F. App'x at 539 (internal quotation marks and citation omitted). "Further, if the judge is performing in his judicial capacity," he " 'will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority'; rather, he will be subject to liability only when he has acted in the clear absence of all jurisdiction.' " Ceparano, 404 F. App'x at 539 (quoting Stump v. Sparkman, 435 U.S. 349, 362 (1978)). "Judges are not, however, absolutely 'immune from liability for nonjudicial actions, i.e., actions not taken in the judge's judicial capacity.' " Bliven v. Hunt, 579 F.3d 204, 209 (2d Cir. 2009) (quoting Mireles, 502 U.S. at 11).

Thus, as plaintiff names the judicial defendants in relation to actions or omissions that they took in their roles as judges, their actions are protected by absolute judicial immunity. To the extent plaintiff names Hon. Felix Catena, "Retired Administrative Law Judge," Judge Catena is also protected by absolute judicial immunity as a judge's retirement, "does not impact [his or] her immunity for acts taken in [his or] her official capacity before her retirement." McCray v. Lewis, No. 16-CV-3855 (WFK/VMS), 2016 WL 4579081, at *2 (E.D.N.Y. Aug. 31, 2016). To the extent plaintiff may seek to sue the judges their official

capacities, the suit is barred by the Eleventh Amendment. See Pacherille v. Burns, 30 F. Supp. 3d 159, 163 n.5 (N.D.N.Y. 2014) ("The Eleventh Amendment shields judges from suit to the extent that they are sued in their official capacities.").

**\*7** In addition, plaintiff also references, exclusively in his "relief" section of the form complaint, "the Supreme Court Appellate Division, Third Department" when stating that he experienced "deliberate misconduct and malice." Compl. at 7. He does not name this Court as a defendant anywhere in the complaint. However, even if plaintiff were to have named the Appellate Division, Third Department as a defendant, such defendant would also need to be dismissed based on Eleventh Amendment immunity as the Appellate Division "is merely an agency or arm of New York State." Benyi v. New York, No. 3:20-CV-1463 (DNH/ ML), 2021 WL 1406649, at \*5 (N.D.N.Y. Mar. 23, 2021), report and recommendation adopted, No. 3:20-CV-1463, 2021 WL 1404555 (N.D.N.Y. Apr. 13, 2021) (citation omitted). Accordingly, to the extent a liberal reading of the complaint may suggest that plaintiff seeks to name the Appellate Division as a defendant, such claims are barred by Eleventh Amendment immunity. See Compl.

Finally, insofar as plaintiff seeks to sue Prosecutor Samuel V. Maxwell, Esq., Assistant District Attorney, in addition to the Heck issues noted above, he would be protected by absolute prosecutorial immunity. As this Court has recently reiterated,

Prosecutors enjoy "absolute immunity from § 1983 liability for those prosecutorial activities 'intimately associated with the judicial phase of the criminal process.' " Barr v. Abrams, 810 F.2d 358, 360-61 (2d Cir. 1987) (citing Imbler v. Pachtman, 424 U.S. 409, 430 (1976)). This immunity encompasses "virtually all acts, regardless of motivation, associated with [the prosecutor's] function as an advocate." Hill v. City of New York, 45 F.3d 653, 661 (2d Cir. 1995) (internal quotations and citation omitted). Absolute immunity applies when a prosecutor's conduct, acting as an advocate during the judicial phase of the criminal process, "involves the exercise of discretion." Flagler v. Trainor, 663 F.3d 543, 547 (2d Cir. 2011) (citing Kalina v. Fletcher, 522 U.S. 118, 127 (1997)).

Accordingly, absolute immunity extends to functions such as "deciding whether to bring charges and presenting a case to a grand jury or a court, along with the tasks generally considered adjunct to those functions, such as witness preparation, witness selection, and issuing subpoenas." Simon v. City of New York, 727 F.3d 167, 171 (2d Cir. 2013) (citing Imbler, 424 U.S. at 431 n.33); see also Flagler, 663 F.3d at 547 (explaining, "the Supreme Court has found prosecutors absolutely immune from suit for alleged misconduct during a probable cause hearing, in initiating a prosecution, and in presenting the State's case ... [but] withheld absolute immunity for conduct unrelated to advocacy, such as giving legal advice, holding a press conference, or acting as a complaining witness."). "[O]nce a court determines that challenged conduct involves a function covered by absolute immunity, the actor is shielded from liability for damages regardless of the wrongfulness of his motive or the degree of injury caused ...." Bernard v. Cnty. of Suffolk, 356 F.3d 495, 503 (2d Cir. 2004) (citing Cleavinger v. Saxner, 474 U.S. 193, 199-200 (1985)).

Williams v. Atkins, No. 5:24-CV-0573 (DNH/TWD), 2024 WL 3649849, at \*5 (N.D.N.Y. June 11, 2024), report and recommendation adopted, No. 5:24-CV-573, 2024 WL 3548760 (N.D.N.Y. July 26, 2024).

Plaintiff appears to suggest that Mr. Maxwell "withheld potentially exculpatory material" that was used against him. Compl. at 4. Beyond the Heck barriers already discussed, even if plaintiff could amend to provide greater detail, absolute immunity would extent to even this alleged misconduct as such allegations clearly fall within the scope of prosecutorial immunity. Accordingly, it is recommended that any claims against ADA Samuel V. Maxwell be dismissed for absolute prosecutorial immunity. "Furthermore, because the District Attorney's prosecutorial immunity is substantive and not something that can be corrected by a better pleading, I recommend that the dismissal be with prejudice." Phillips v. New York, No. 5:13-CV-927, 2013 WL 5703629, at \*5 (N.D.N.Y. Oct. 17, 2013) (quoting Cuoco v. Moritsugu, 222 F.3d 99, 223 (2d Cir. 2000)). [9]

### III. Conclusion

**\*8** It is **ORDERED**, that plaintiff's in forma pauperis application (dkt. no. 2) be **GRANTED**; and it is

**RECOMMENDED**, that plaintiff's section 1983 claims against Honorable Michael W. Smrtic; Tatiana N. Coffinger, County/Family/Surrogate's Court Judge; and Felix Catena, Retired Administrative Law Judge (Dkt. Nos. 1, 7) be **DISMISSED WITH PREJUDICE** as follows: (1) claims brought against them in their personal/individual capacities for judicial immunity, and (2) claims brought against them in their official capacities for Eleventh Amendment immunity; and it is further

**RECOMMENDED**, that plaintiff's section 1983 claims against Assistant District Attorney Samuel V. Maxwell (Dkt. Nos. 1, 7) be **DISMISSED WITH PREJUDICE** due to absolute prosecutorial immunity; and it is further

**RECOMMENDED**, that, to the extent a liberal reading of the complaint may suggest that plaintiff seeks to name the Appellate Division, Third Department, as a defendant (Dkt. Nos. 1, 7), such claims be **DISMISSED WITH PREJUDICE** as barred by Eleventh Amendment immunity, and it is

**RECOMMENDED**, that plaintiff's pro se motion for permission to file electronically (dkt. no. 4) and motion to appoint counsel [10] (dkt. no. 5) be **DISMISSED AS MOOT** based on the above recommendations, and it is

**ORDERED**, that the Clerk serve this Report-Recommendation & Order on plaintiff in accordance with the Local Rules.

**IT IS SO ORDERED**.

Pursuant to 28 U.S.C. § 636(b)(1), parties have
**FOURTEEN (14)** days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW**. Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993) (citing Small v. Sec'y of Health and Human Servs., 892 F.2d 15 (2d Cir. 1989)); see also 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 6(a), 72. [11]

**All Citations**

Slip Copy, 2024 WL 4870495

---

### Footnotes

1      The submission includes a letter addressed to District Judge D'Agostino, titled, "Requirements for Cases Removed From State Court," Dkt. No. 7; a receipt from Montgomery County Clerk dated December 8, 2022; and a "Notice of Claim" with the caption of Cole v. County of Montgomery, dated December 7, 2022. See Dkt. No. 7. The undersigned has reviewed this submission in connection with the initial review of plaintiff's complaint. See Sira v. Morton, 380 F. 3d 57, 67 (2d Cir. 2004).

2      Plaintiff is advised that, although he has been granted IFP status, he is still required to pay all fees and costs he may incur in this action, including, but not limited to, copying fees, transcript fees, and witness fees.

3      Any unpublished cases cited within this Report-Recommendation & Order have been provided to plaintiff.

4     Although plaintiff generally references ineffective assistance of counsel, Compl. at 4, he does not name any attorney who may have represented him. Any claims against the prosecutor would not be considered ineffective assistance of counsel because Mr. Maxwell, as the prosecutor, was not plaintiff's attorney.

5     Plaintiff did not provide any transcripts.

6     As a courtesy, the Court has provided plaintiff with copies of any unpublished cases cited within this Report-Recommendation & Order.

7     The undersigned recognizes that claims that are determined to be barred by Heck are dismissed without prejudice. However, the undersigned has recommended dismissal with prejudice because plaintiff has only named defendants who are immune from relief. Accordingly, the undersigned is recommending dismissal of the claims based on these immunities, rather than a Heck dismissal. The undersigned has included the Heck review for sake of completeness.

8     Although plaintiff provides no facts regarding any family court proceedings, that he named a family court judge and makes general reference to that he seeks review over actions taken by a family court judge. Even if plaintiff were to amend his complaint to provide facts about any possible family court proceedings and details about any alleged violations of his rights that he believes he faced in that Court, if plaintiff seeks this Court's review of an order of the family court, such review would be barred by Rooker-Feldman, and if plaintiff seeks this Court's review or intervention of a currently pending/ongoing Family Court proceeding, such review would be barred by Younger. See Porter v. Nasci, No. 5:24-CV-0033 (GTS/TWD), 2024 WL 1142414, at *4 (N.D.N.Y. Mar. 15, 2024) (citations omitted), report and recommendation adopted, 2024 WL 3158645 (N.D.N.Y. June 25, 2024) ("Under the Rooker-Feldman doctrine, a federal district court lacks authority to review a final state court order or judgment where a litigant seeks relief that invites the federal district court to reject or overturn such a final state court order or judgment."); see also Diamond "D" Constr. Corp. v. McGowan, 282 F.3d 191, 198 (2d Cir. 2002) ("[F]ederal courts [must] abstain from taking jurisdiction over federal constitutional claims that involve or call into question ongoing state proceedings.").

9     Plaintiff appears to characterize his submissions as a purported removal to federal court or suggests that he seeks to remove his case from Montgomery County Court to this Court. See Dkt. No. 7 (citing 28 U.S.C. § 1441). However, in addition to the infirmities mentioned above, plaintiff has not demonstrated that any proceeding related to this complaint has been properly removed to, or is subject to removal to, this Court. See, e.g., 28 U.S.C. § 1446. Indeed, plaintiff's submissions appear to indicate that plaintiff is the plaintiff in the County Court action. See id. § 1446(a).

10     The undersigned also notes that plaintiff did not contend that he made any efforts to obtain counsel on his own, show proof of any attorneys he contacted. See Terminate Control Corp v. Horowitz, 28 F.3d 1335 (2d Cir. 1994). See Dkt. No. 5.

11     If you are proceeding pro se and are served with this Report-Recommendation and Order by mail, three (3) additional days will be added to the fourteen (14) day period, meaning that you have seventeen (17) days from the date the Report-Recommendation and Order was mailed to you to serve and file objections. FED. R. CIV. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Id. § 6(a)(1)(c).

---

**End of Document**         © 2025 Thomson Reuters. No claim to original U.S. Government Works.

2022 WL 19519335

Only the Westlaw citation is currently available.

United States District Court, W.D. New York.

James HUNTER, Plaintiff,

v.

Deputy Shawn EDWARDS, Timothy Luety, Alex Jiminez, Bryan Shepard, K-9 Ike, Defendants.

22-CV-6205-CJS

|

Signed August 24, 2022

**Attorneys and Law Firms**

James Hunter, Comstock, NY, Pro Se.

Alissa M. Brennan, Monroe County Department of Law, Rochester, NY, for Defendant Deputy Shawn Edwards.

John M. Campolieto, City of Rochester Law Department, Rochester, NY, for Defendants Timothy Luety, Alex Jiminez.

ORDER

CHARLES J. SIRAGUSA, United States District Judge

 **\*1**  *Pro se* Plaintiff, James Hunter, a prisoner at the Monroe County Jail, filed this action seeking relief under 42 U.S.C. § 1983. He alleges that his rights under the Fourth Amendment to the United States Constitution were violated when during an arrest he was attacked by a police "K-9" dog at the direction of Defendant law enforcement officers and that the officers failed to intervene to stop the attack. He also alleges that his property was seized and not returned in violation of the Fourteenth Amendment. He seeks permission to proceed *in forma pauperis* and filed the required authorization. Docket Nos. 2 and 5.

For the following reasons, Plaintiff is granted permission to proceed *in forma pauperis,* his Fourth Amendment claim against Defendant K-9 Ike and Fourteenth Amendment claim against Defendant Monroe County Sheriff's Deputy Shepard are dismissed with prejudice under 28 U.S.C. § 1915(e)(2)(B) and 1915A, and his Fourth Amendment claims against Defendants City of Rochester Police Officers Luety and Jiminez and Monroe County Sheriff's Deputy Edwards may proceed to service.

**DISCUSSION**

Because Plaintiff has met the statutory requirements of 28 U.S.C. § 1915(a) and filed the required authorization, Docket Items 2 and 5, he is granted permission to proceed *in forma pauperis.* Therefore, under 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(a), this Court must screen this Complaint.

Section 1915 "provide[s] an efficient means by which a court can screen for and dismiss legally insufficient claims." *Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007) (citing *Shakur v. Selsky*, 391 F.3d 106, 112 (2d Cir. 2004)). The court shall dismiss a complaint in a civil action in which a prisoner seeks redress from a governmental entity, or an officer or employee of a governmental entity, if the court determines that the action (1) fails to state a claim upon which relief may be granted or (2) seeks monetary relief against a defendant who is immune from such relief. *See* 28 U.S.C. § 1915A(b)(1)-(2). Generally, the court will afford a *pro se* plaintiff an opportunity to amend or to be heard prior to dismissal "unless the court can rule out any

Case 5:25-cv-01648-LEK-MJK    Document 7    Filed 12/19/25    Page 38 of 89

Hunter v. Edwards, Not Reported in Fed. Supp. (2022)

possibility, however unlikely it might be, that an amended complaint would succeed in stating a claim." *Abbas*, 480 F.3d at 639 (internal quotation marks omitted). But leave to amend pleadings may be denied when any amendment would be futile. *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000).

## I. THE COMPLAINT

In evaluating a complaint, the court must accept all factual allegations as true and must draw all inferences in the plaintiff's favor. *See Larkin v. Savage*, 318 F.3d 138, 139 (2d Cir. 2003) (per curiam); *King v. Simpson*, 189 F.3d 284, 287 (2d Cir. 1999). "Specific facts are not necessary," and the plaintiff "need only 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.' " *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)); *see also Boykin v. Keycorp*, 521 F.3d 202, 216 (2d Cir. 2008) (discussing pleading standard in pro se cases after *Twombly*: "even after *Twombly*, dismissal of a *pro se* claim as insufficiently pleaded is appropriate only in the most unsustainable of cases."). Although "a court is obliged to construe [*pro se*] pleadings liberally, particularly when they allege civil rights violations," *McEachin v. McGuinnis*, 357 F.3d 197, 200 (2d Cir. 2004), even pleadings submitted *pro se* must meet the notice requirements of Rule 8 of the Federal Rules of Civil Procedure. *Wynder v. McMahon*, 360 F.3d 73, 79 n.11 (2d Cir. 2004).

**\*2** Plaintiff has sued City of Rochester Police Officers Timothy Luety and Alex Jiminez, Monroe County Sheriff's Deputy Shawn Edwards, and Monroe County Sheriff's Office dog, K-9 Ike, alleging a violation of the Fourth Amendment. He also sues Monroe County Sheriff's Deputy Shepard alleging a Fourteenth Amendment violation. A liberal reading of the Complaint alleges the following. On or about December 22, 2020, at 7:50 a.m., Plaintiff had broken his leg and was lying on the ground in the backyard at 12 Marlow Street in the City of Rochester, New York. He attempted to stand, and Defendant Officer Luety approached him and grabbed his left wrist. While Luety was "tugging" at Plaintiff's wrist Defendant K-9 Ike began attacking him. K-9 Ike bit him several times on the right arm "tearing the flesh" and causing him "great pain." Docket Item 1 at 6-7. Defendant Deputy Edwards never ordered K-9 Ike to stop, and Defendant Officer Jiminez never attempted to intervene while K-9 Ike was biting Plaintiff. Luety held Plaintiff's arm behind his back while K-9 Ike continued biting him. *Id.* at 7-8. During the attack, Defendant Deputy Edwards said to K-9 Ike, " 'good boy' urging ... Ike on for at least [eight] minutes." *Id.* at 8.

Following the attack and presumed arrest, Defendant Deputy Shepard "confiscated" Plaintiff's wallet, which contained Plaintiff's identification, receipts and approximately $312 in cash; $300 of this amount was never returned. *Id.* at 8-9. Plaintiff was thereafter taken to a hospital where he received treatment for his broken leg and injuries suffered from the attack by K-9 Ike. *Id.* at 9. Plaintiff alleges violation of his rights under the Fourth and Eighth Amendment based on the alleged use of excessive force and failure to intervene, and under the Fourteenth Amendment based on the alleged failure to return his money. He seeks ten million dollars in damages. *Id.* at 10-13.

## II. SECTION 1983 CLAIMS

"To state a valid claim under 42 U.S.C. § 1983, the plaintiff must allege that the challenged conduct (1) was attributable to a person acting under color of state law, and (2) deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States." *Whalen v. County of Fulton*, 126 F.3d 400, 405 (2d Cir. 1997) (citing *Eagleston v. Guido*, 41 F.3d 865, 875-76 (2d Cir. 1994)). "Section 1983 itself creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993) (citing *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985)).

To establish liability against an official under § 1983, a plaintiff must allege that individual's personal involvement in the alleged constitutional violation; it is not enough to assert that the defendant is a link in the chain of command. *See McKenna v. Wright*, 386 F.3d 432, 437 (2d Cir. 2004). Moreover, the theory of *respondeat superior* is not available in a § 1983 action. *See Hernandez v. Keane*, 341 F.3d 137, 144 (2d Cir. 2003). "[T]here is no special rule for supervisory liability. Instead, a plaintiff must plead and prove that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020) (internal quotation marks and citation omitted).

Hunter v. Edwards, Not Reported in Fed. Supp. (2022)

Case 5:25-cv-01648-LEK-MJK    Document 7    Filed 12/19/25    Page 39 of 89

**A. Fourth Amendment: Excessive Force and Failure to Intervene**

Liberally construed, the Complaint asserts claims of excessive force and failure to intervene during the course of an arrest in violation of the Fourth Amendment. The Fourth Amendment's guarantee of the right against unreasonable seizure prohibits the use of excessive force by law enforcement officers in the course of an arrest. *Graham v. Connor*, 490 U.S. 386, 394 (1989) (holding that a claim that law enforcement officers used excessive force in the course of an arrest, investigatory stop, or other "seizure" is properly analyzed under the Fourth Amendment). "In order to establish that the use of force to effect an arrest was unreasonable and therefore a violation of the Fourth Amendment, [a] plaintiff[ ] must establish that the government interests at stake were outweighed by 'the nature and quality of the intrusion on [the plaintiff's] Fourth Amendment interests.' " *Amnesty Am. v. Town of West Hartford*, 361 F.3d 113, 123 (2d Cir. 2004) (quoting *Graham*, 490 U.S. at 396). "In other words, the factfinder must determine whether, in light of the totality of the circumstances faced by the arresting officer, the amount of force used was objectively reasonable at the time." *Id.*; *see Graham*, 490 U.S. at 397. The "proper application" of this standard "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396 (citing *Tennessee v. Garner*, 471 U.S. 1, 8–9 (1985)).

**\*3** " 'Not every push or shove' amounts to a Fourth Amendment violation. Indeed, a 'de minimis use of force will rarely suffice to state a Constitutional claim.' " *Acosta v. City of N.Y.*, No. 11 Civ. 856(KBF), 2012 WL 1506954, at \*10 (S.D.N.Y. Apr. 26, 2012) (citation after first sentence omitted) (second sentence quoting *Romano v. Howarth*, 998 F.2d 101, 105 (2d Cir. 2005)). However, an individual does not need to sustain a severe injury to maintain a claim. *Id.* (citing *Robison v. Via*, 821 F.2d 913, 924 (2d Cir. 1987) ("If the force used was unreasonable and excessive, the plaintiff may recover even if the injuries inflicted were not permanent or severe.")).

Further, "[i]t is widely recognized that all law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence." *Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994) (collecting cases). Thus, in order to show that a law enforcement officer who was not involved in instructing a K-9 to subdue a suspect "failed in [his or her] constitutional duty to intervene to prevent the use of excessive force[,]" the plaintiff "must show not only that he was subject to the use of excessive force but also that [the officers] failed to intervene despite being on notice that the force being used was excessive and ha[d] a 'realistic opportunity' to intervene." *Nuzzo v. Devine*, 494 F. Supp. 3d 232, 237-38 (D. Conn. 2020) (finding that officers "who had nothing to do with instructing the dogs to secure [the plaintiff]" did not know or should have known that "it was excessive for the dogs to be deployed on [the plaintiff] or to hold their positions on [the plaintiff] as long as they did") (quoting *Sloley v. VanBramer*, 945 F. 3d 30, 46-47 (2d Cir. 2019)).

Plaintiff alleges that after suffering a broken leg and while attempting to stand, Officer Luety grabbed and tugged at Plaintiff's wrist and then K-9 Ike began biting Plaintiff. Luety held Plaintiff's arm while K-9 Ike was biting him, and Deputy Edwards was saying "good boy" to K-9 Ike. The K-9 attack lasted eight minutes and neither Deputy Edwards nor Officer Jiminez intervened to stop the attack. Docket Item 1 at 6-8. Plaintiff was treated at a hospital for injuries suffered as a result of the attack. *Id.* at 9. Mindful of the Second Circuit's directives that *pro se* pleadings must be liberally construed and accepting Plaintiff's allegations as true, the Court concludes that Plaintiff's Fourth Amendment claim may proceed to service against Officers Luety and Jiminez and Deputy Edwards. The claim against K-9 Ike is dismissed with prejudice. *Bigwarfe v. Bresnahan*, Civ. No. 8:18-CV-578 (GTS/DJS), 2018 WL 6174188, at \*3 (N.D.N.Y. June 5, 2018) (finding that a "police dog" cannot properly be sued under § 1983) (collecting cases), *report and recommendation adopted* 2018 WL 5077196 (N.D.N.Y. Oct. 18, 2018).

**B. Fourteenth Amendment: Deprivation of Property**

Plaintiff's allegation that Deputy Shepard took his wallet and money during the arrest and that most of the money was not returned, Docket Item 1 at 8, is properly construed as a violation of the Fourteenth Amendment Due Process Clause. A deprivation of property by a person acting under color of state law, "whether done intentionally or negligently, will not support a due process claim redressable under § 1983 if 'adequate state post-deprivation remedies are available.' " *Wahid v. Mogelnicki*, 406 F. Supp. 2d 247, 249 (E.D.N.Y. 2017) (quoting *Davis v. New York*, 311 F. App'x 397, 400 (2d Cir. 2009) (Summary

Order)). Because New York's common law "remedies for various torts (including replevin and trespass to chattels) are adequate to redress" Plaintiff's alleged injury, Plaintiff's due process claim under § 1983 is dismissed with prejudice. [1]  *See Alexander v. Hodell, 124 F. App'x 665, 667 (2d Cir. 2005)* (affirming dismissal of plaintiff's deprivation of property claim based on confiscation of a knife and cash during police officer's seizure and search of vehicle that was not returned).


## CONCLUSION

**\*4**  Because Plaintiff has met the statutory requirements of 28 U.S.C. § 1915(a) and filed an Authorization with respect to the filing fee, his request to proceed *in forma pauperis* is hereby granted. For the reasons discussed above, Plaintiff's Fourth Amendment claim against K-9 Ike and his Fourteenth Amendment claim against Deputy Shepard are dismissed with prejudice pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A, and the United States Marshals Service is directed to serve the Summons and Complaint on City of Rochester Police Officers Luety and Jiminez and Monroe County Sheriff's Deputy Edwards regarding the Fourth Amendment excessive force and failure to intervene claims.


## ORDER

IT HEREBY IS ORDERED, that Plaintiff's request to proceed *in forma pauperis* is granted;

FURTHER, that Plaintiff's Fourth Amendment claim against K-9 Ike and his Fourteenth Amendment claim against Deputy Shepard are dismissed with prejudice;

FURTHER, that the Clerk of the Court is directed to terminate Defendants K-9 Ike and Deputy Shepard as parties to this action;

FURTHER, that the Clerk of Court is directed to file Plaintiff's papers, and to cause the United States Marshals Service to serve copies of the Summons, Complaint, and this Order upon City of Rochester Police Officers Luety and Jiminez and Monroe County Sheriff's Deputy Edwards without Plaintiff's payment therefor, unpaid fees to be recoverable if this action terminates by monetary award in Plaintiff's favor;

FURTHER, that pursuant to 42 U.S.C. § 1997e(g)(2), Defendants are directed to respond to the Complaint; and

FURTHER, that Plaintiff shall notify the Court in writing if his address changes. The Court may dismiss the action if Plaintiff fails to do so.

SO ORDERED.


**All Citations**

Not Reported in Fed. Supp., 2022 WL 19519335

---

**Footnotes**

Case 5:25-cv-01648-LEK-MJK    Document 7    Filed 12/19/25    Page 41 of 89

**Hunter v. Edwards, Not Reported in Fed. Supp. (2022)**

1    Because the Court finds that leave to amend this claim would be futile, it is dismissed without leave and with prejudice. *Cuoco*, 222 F.3d at 112 (denying leave to amend as futile where "[t]he problem with [plaintiff's] causes of action is substantive" such that "[b]etter pleading will not cure it.")

---

**End of Document**                                    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

2024 WL 2174272
Only the Westlaw citation is currently available.
United States Court of Appeals, Second Circuit.

Palani KARUPAIYAN, Plaintiff-Appellant,

v.

State of NEW YORK, City of New York, New York City Police Department (NYPD), John Does Police Officers
of NYPD, Fredrick Dsouza, Pravin Pandey, Raja Pandey, Adar Management Corp., Defendants-Appellees.

23-1257-cv
|
May 15, 2024

Appeal from a judgment of the United States District Court for the Eastern District of New York (Ann M. Donnelly, *District Judge*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED IN PART, VACATED IN PART,** and **REMANDED** for further action consistent with this order.

**Attorneys and Law Firms**

For Plaintiff-Appellant: Palani Karupaiyan, pro se, Philadelphia, PA.

For Defendants-Appellees: No appearance.

Present: Dennis Jacobs, William J. Nardini, Steven J. Menashi, Circuit Judges.


**SUMMARY ORDER**

**\*1** Plaintiff-Appellant Palani Karupaiyan, *pro se*, sued the State and City of New York, the New York City Police Department ("NYPD"), unnamed NYPD officers, three private individuals, and a real estate company under various federal and state causes of action. Karupaiyan's allegations stem from several disagreements and altercations with his co-tenants and his apartment's management company, as well as purported discrimination by New York City police officers who allegedly responded to his residence and arrested him after one of his co-tenants called 911 after an altercation. After granting Karupaiyan *in forma pauperis* status, the district court dismissed his complaint under 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim but permitted him leave to amend. *See Karupaiyan v. New York*, No. 23-CV-5424 (AMD) (LB), 2023 WL 9020011 (E.D.N.Y. Sept. 8, 2023). Instead of amending, Karupaiyan appealed. [1] We assume the parties' familiarity with the case.


**I. Forfeiture of Issues on Appeal**

While we liberally construe *pro se* filings to raise the strongest arguments they suggest, *McLeod v. Jewish Guild for the Blind*, 864 F.3d 154, 156 (2d Cir. 2017), *pro se* appellants must still clearly state the issues on appeal in their briefs, *see Moates v. Barkley*, 147 F.3d 207, 209 (2d Cir. 1998). We normally do not decide issues that are not briefed. *Id.*; *see also LoSacco v. City of Middletown*, 71 F.3d 88, 93 (2d Cir. 1995) ("[W]e need not manufacture claims of error for an appellant proceeding *pro se* ...."). [2] Nor will we decide issues that a *pro se* appellant briefs only "in passing." *Gerstenbluth v. Credit Suisse Secs. (USA) LLC*, 728 F.3d 139, 142 n.4 (2d Cir. 2013).

Karupaiyan's brief largely fails to address the substance of the district court's decision dismissing his complaint. The only substantive grounds his brief could be read to raise are that Defendant-Appellee Fredrick Dsouza filed a "false charge" against

Case 5:25-cv-01648-LEK-MJK     Document 7     Filed 12/19/25     Page 43 of 89

Karupaiyan v. New York, Not Reported in Fed. Rptr. (2024)

him and that his alleged arrest was discriminatory, which can be read to challenge the dismissal of his false arrest and malicious prosecution claims under 42 U.S.C. § 1983. We accordingly conclude that he has forfeited all other issues.

## II. *Sua Sponte* Dismissal

Karupaiyan appears to challenge the district court's *sua sponte* dismissal of his complaint under § 1915(e)(2)(B). While we have cautioned against *sua sponte* dismissals without notice and opportunity to be heard in certain contexts, *see Catzin v. Thank You & Good Luck Corp.*, 899 F.3d 77, 82–83 (2d Cir. 2018), the district court granted Karupaiyan leave to amend his complaint to fix the defects identified, but he did not take advantage of the offer. We discern no error in the *sua sponte* dismissal under these circumstances.

## III. Merits

 **\*2**  We review *de novo* Karupaiyan's challenge to the dismissal of his false arrest and malicious prosecution claims arising out of his alleged arrest. *McEachin v. McGuinnis*, 357 F.3d 197, 200 (2d Cir. 2004). We conclude that he failed to state a claim for false arrest under 42 U.S.C. § 1983 against Fredrick Dsouza and Pravin Pandey because they are private citizens and did not act under color of state law. A private individual becomes a state actor for the purposes of § 1983 only when (1) the state compelled the conduct, (2) the private party acted jointly with a state, or (3) the private party fulfilled a role that is traditionally a public state function. *See Sybalski v. Indep. Group Home Living Program, Inc.*, 546 F.3d 255, 257 (2d Cir. 2008). Filing a complaint with the police does not fit within any of these categories. *See Dahlberg v. Becker*, 748 F.2d 85, 93 (2d Cir. 1984) (holding that "mere invocation" of state legal procedures does not amount to state action under § 1983).

Karupaiyan also fails to plead a false arrest or malicious prosecution claim under § 1983 against NYPD officers or the City of New York, as he does not allege any facts showing that the officers lacked probable cause for the arrest, *see Ashley v. City of New York*, 992 F.3d 128, 136 (2d Cir. 2021) ("Probable cause to arrest is a complete defense to an action for false arrest."), or that the criminal proceedings terminated in his favor, *see Manganiello v. City of New York*, 612 F.3d 149, 161 (2d Cir. 2010) (requiring a plaintiff to plead "termination of the proceeding in [his] favor").

The remainder of Karupaiyan's brief seeks various remedies that are not related to any of the claims he raised below—for example, he seeks an order reorganizing the New York State Unified Court System. He points to no authority that would permit such relief, even assuming he had a meritorious claim.

## IV. Prejudice

Although Karupaiyan's claims against the State of New York fail, the district court erred by dismissing them with prejudice. The district court correctly dismissed these claims because New York is entitled to state sovereign immunity and has not waived that immunity. *See Karupaiyan*, 2023 WL 9020011, at \*2. The "constitutional principle of sovereign immunity" poses "a bar to federal jurisdiction over suits against nonconsenting States." *Alden v. Maine*, 527 U.S. 706, 730 (1999). "When subject matter jurisdiction is lacking, 'the district court lacks the power to adjudicate the merits of the case,' and accordingly 'Article III deprives federal courts of the power to dismiss the case with prejudice.' " *Green v. Dep't of Educ. of City of N.Y.*, 16 F.4th 1070, 1074 (2d Cir. 2021) (quoting *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 54–55 (2d Cir. 2016)). Therefore, because the district court lacked jurisdiction over the claims against the State of New York, it was erroneous to dismiss those claims with prejudice rather than without prejudice.

The district court likewise erred by dismissing with prejudice Karupaiyan's landlord-tenant claims—other than those under the Fair Housing Act or 42 U.S.C. § 1981—pursuant to Federal Rule of Civil Procedure 12(h)(3). *See Karupaiyan*, 2023 WL 9020011, at \*5. Because Rule 12(h)(3) provides for dismissal for lack of subject matter jurisdiction, such a dismissal must be without prejudice. *See Green*, 16 F.4th at 1074. We therefore remand with instructions for the district court to modify its judgment to dismiss these claims without prejudice. *See Russo v. United States*, No. 22-1869, 2024 WL 726884, at \*2 (2d Cir. Feb. 22, 2024).

**Karupaiyan v. New York, Not Reported in Fed. Rptr. (2024)**

Case 5:25-cv-01648-LEK-MJK     Document 7     Filed 12/19/25     Page 44 of 89

* * *

We have considered Karupaiyan's remaining arguments and find them unpersuasive. Accordingly, we **AFFIRM** the judgment of the district court in part, **VACATE** the judgment insofar as the district court dismissed with prejudice claims over which it lacked subject matter jurisdiction, and **REMAND** for the district court to amend its judgment to dismiss these claims without prejudice.

**All Citations**

Not Reported in Fed. Rptr., 2024 WL 2174272

---

**Footnotes**

1     Because the time to amend has long since run despite multiple extensions, the dismissal without prejudice has ripened into a final and appealable order over which we may exercise jurisdiction. *See* 28 U.S.C. § 1291; *Salmon v. Blesser, 802 F.3d 249, 252 n.2 (2d Cir. 2015).*

2     Unless otherwise indicated, case quotations omit all internal quotation marks, alteration marks, footnotes, and citations.

---

**End of Document**                                                    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

2005 WL 2387831
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

John R. KELLY, Plaintiff,

v.

Sergeant John BURNS, in his individual capacity; Officer Paul Hanley, in his individual capacity;
Officer Steve Abbot, in his individual capacity; Officer Daniel Babbage, in his individual capacity;
Officer Sean Goodeve, in his individual capacity; Officer Alp Llukaci, in his individual capacity; Officer
Shawn Prue, in his individual capacity; Sergeant John Savage, in his individual capacity; Officer John
Estabrook, in his individual capacity; Officer Paul Hunter, in his individual capacity, Defendants.

No. 5:02 CV 0641.
|
Sept. 27, 2005.

**Attorneys and Law Firms**

John R. Kelly, Plaintiff, pro se.

Terri Bright, Corporation Counsel, Mary Anne Doherty, Assistant Corporation Counsel, Syracuse, New York, for Defendants.

MEMORANDUM–DECISION AND ORDER

MORDUE, J.

INTRODUCTION

**\*1** In this *pro se* civil rights action under 42 U.S.C. § 1983, plaintiff claims that defendants wrongfully arrested him and used excessive force in effectuating his arrest and interrogating him. Defendants move for summary judgment dismissing the amended complaint. Plaintiff opposes defendants' summary judgment motion and cross-moves for summary judgment in his favor. [1] For the reasons set forth below, the Court grants so much of defendants' motion for summary judgment as seeks dismissal of plaintiff's Eighth Amendment claims. In all other respects, the Court denies the summary judgment motion. The Court denies the cross-motion in its entirety.

AMENDED COMPLAINT

In his amended complaint, plaintiff makes the following allegations. On May 1, 2001, he was proceeding south on Interstate 81 in his van, when he observed a police car behind him with emergency lights flashing. He pulled over, put the vehicle in park, and turned off the engine. Three officers, with weapons drawn, ran towards the van. They told him to place both of his hands on the steering wheel. He complied immediately. Officers Babbage and Hanley grabbed his hands and tried to pull plaintiff out of the vehicle through the driver's side window while other officers entered the van through the passenger side door and punched plaintiff repeatedly in the face and head. Babbage and Hanley then pulled plaintiff through the window, dropped him "hard" on the concrete and handcuffed him behind his back. Then, using his nightstick, Babbage struck plaintiff on the legs and head, knocking him unconscious. The amended complaint states that defendants Sergeant Savage and Officers Babbage, Hanley, Hunter, Prue, Goodeve, Llukaci and Estabrook were involved in this incident.

Kelly v. Burns, Not Reported in Fed. Supp. (2005)

Case 5:25-cv-01648-LEK-MJK    Document 7    Filed 12/19/25    Page 46 of 89

Officers at the scene revived plaintiff, carried him to a police car, threw him in, and drove him to the police station. During the drive, he complained to the officer who was driving that the back of his head "hurt real bad."

After arriving at the police station, plaintiff was interviewed by Hunter and Hanley in Cell No. 1. Hunter became angry with plaintiff for not answering questions about drugs and "setting up drug dealers." At Hunter's suggestion, Hanley left the cell, after which Hunter used racial epithets, told plaintiff he was "in a lot of trouble" and threatened to punch him. Hunter then repeatedly punched plaintiff in the face and called him names for 25 to 35 minutes. Throughout the incident plaintiff was handcuffed to a bench .[2]

Defendant Sergeant Burns, who overheard noises in Cell No. 1, asked Hunter if he was trying to kill plaintiff, stated that there was blood "all over the place," and directed Hunter to leave the cell. Other officers then asked plaintiff if he was all right, stated that his nose was bleeding, and told him to hold back his head. Burns told one of the officers to take some photographs of plaintiff and drive him to the hospital for medical treatment.

**\*2** Plaintiff claims that defendants' conduct in using physical force against him without need or provocation and their failure to intervene to prevent the misuse of force was malicious, sadistic, and constituted cruel and unusual punishment in violation of the Eighth and Fourth Amendments of the United States Constitution. He requests a declaratory judgment that the acts complained of violated his constitutional rights and that defendants' conduct constituted assault and battery, police misconduct, intentional wrongdoing and deliberate violation of the law.

It also appears that plaintiff seeks money damages. He avers that he is on medication for pain in the back of his head and the lower part of his legs, that some of the injuries may be permanent, that he has a lump the size of a walnut on the back of his head, and that he occasionally experiences mental confusion, nosebleeds and difficulty in walking. Attached to the amended complaint is report from University Hospital dated May 1, 2001, setting forth the following diagnosis: "Skin abrasions, muscular pain, concussion."

## DEFENDANTS' MOTION

### Summary judgment standard

A party moving for summary judgment bears the initial burden of demonstrating that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *see Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). If the Court, viewing the evidence in the light most favorable to the nonmovant and drawing all reasonable inferences in the nonmovant's favor, determines that the movant has satisfied this burden, the burden then shifts to the nonmovant to adduce evidence establishing the existence of a disputed issue of material fact requiring a trial. *See Ramseur v. Chase Manhattan Bank,* 865 F.2d 460, 465 (2d Cir.1989). If the nonmovant fails to carry this burden, summary judgment is appropriate. *See Celotex,* 477 U.S. at 323.

### Defendants' factual summary

Defendants summarize their version of the facts, supported by references to the record, as well as plaintiff's version of the incident as follows:

On May 1, 2001 at 7:44 p.m., a red Ford van with New York Registration AEG6564 approached Syracuse Police Officer Rebecca Cosgrove on E. Division St. at Lock Alley. The driver of the van, John R. Kelly, offered to sell Officer Cosgrave crack cocaine. Mr. Kelly produced a clear, knotted plastic bag with a beige chunky substance inside which he dropped into Officer Cosgrave's hand. Officer Cosgrave then dropped a U.S. twenty-dollar bill, serial number AC01357926D, into Mr. Kelly's hand. Mr. Kelly claims that he was waiting for a female friend when he was approached by Officer Cosgrave who

Case 5:25-cv-01648-LEK-MJK    Document 7    Filed 12/19/25    Page 47 of 89

Kelly v. Burns, Not Reported in Fed. Supp. (2005)

asked him for drugs which he denied he had. Mr. Kelly claims that Officer Cosgrave then proceeded to the back of his vehicle where she pulled a gun thus causing him to speed away from the scene frightened at the thought of possibly being robbed.

After the drug transaction, Officer Cosgrave proceeded to Sergeant Burns's car and Officer Babbage was radioed and ordered to pull Mr. Kelly over. Officer Babbage attempted to stop the van, N.Y. Reg. AEG6564, with his emergency lights but Mr. Kelly refused to stop. Mr. Kelly then led Officer Babbage on a chase onto I–81 S. Officer Babbage radioed the pursuit to other units and Officers Prue, Goodeve [and] Hanley responded. Mr. Kelly claims that he did not see Officer Babbage or Officers Prue and Goodeve pursing him in three marked police vehicles with their lights and sirens on until after he got onto I–81 S. He claims that he thought they were trying to pull someone else over despite the fact that Officer Babbage had been pursuing him, with his emergency lights and sirens on, for four city blocks before proceeding onto I–81 S.

 **\*3**  On I–81 S., Mr. Kelly, the only occupant of the van, began to throw items out of the vehicle which the officers believed to be crack cocaine. Officer Babbage radioed this information so that other officers could retrieve the suspected narcotics. Officer Babbage then witnessed Mr. Kelly rip the bags open with his teeth and throw the opened baggies out the passenger side window. Nine baggies which contained a brown rock like substance, which was later determined to be cocaine, were recovered along I–81 S. from distances of 77 ft. to 177 ft. from mile maker 84. The twenty dollar bill, serial number AC01357926D, that Officer Cosgrave had given Mr. Kelly was also recovered near mile marker 84.

After crossing the Harrison and Adams St. on ramp a marked New York State Police vehicle pulled in front of Mr. Kelly's red van. The van slowed then stopped and Mr. Kelly tried to go around the marked police vehicle but could not due to heavy traffic. Officer Goodeve then positioned his vehicle in front of the van at an angle in an attempt to block a possible getaway. Officer Goodeve got out of the driver side while Officer Hanley got out of the passenger side.

Officer Prue arrived on the scene just as Officer Babbage was approaching the van with his gun drawn. Officer Babbage repeatedly ordered Mr. Kelly to put his hands up and to step out of the van but Mr. Kelly refused. Mr. Kelly claims that once alerted that the police were trying to pull him over he quickly did so, placed his vehicle in park, and put his hands out the window.

Officer Babbage attempted to remove Mr. Kelly by opening the door and grabbing him by his shirt while simultaneously telling him to get out of the vehicle but Mr. Kelly refused to comply and further tightened his grip on the steering wheel. While Officer Babbage was attempting to remove Mr. Kelly from the driver side, Officer Goodeve went to the passenger side door and Officer Hanley went to the back door of the vehicle. Officer Goodeve opened the passenger side door and reached into the vehicle to aid Officer Babbage but Mr. Kelly accelerated hard causing both Officer Goodeve and Babbage to be struck by the vehicle. Mr. Kelly's van then collided with Goodeve's police vehicle causing it to become damaged. Mr. Kelly claims that he did not cause his vehicle to crash into the patrol car, that rather the police officers must have backed the van up after the fact, opened the patrol car door and then crashed it into the patrol car themselves.

Officer Babbage's leg was now caught between the police vehicle and the van causing him great pain. Officer Goodeve and Hanley took defensive measures and struck Mr. Kelly with their fists in an attempt to stop his physical resistance. When Officer Goodeve realized that his action was having no [e]ffect he used his collapsible baton and struck Mr. Kelly in the legs.

After getting his leg free, Officer Babbage, with the assistance of Officer Prue, pulled Mr. Kelly through driver side window by his neck and onto the ground; this was the quickest method available to get Mr. Kelly, who was kicking and punching, out of the van. Mr. Kelly claims that he was not resisting when the arresting officers pulled him out of the window of his van, and he also claims that they punched him repeatedly in the head. Mr. Kelly was taken out of the car and onto the ground where he continued to fight even after being handcuffed.

 **\*4**  Officer Llukaci was advised via the police radio of the incident in progress and proceeded to the scene. Upon arrival Officer Llukaci observed that Mr. Kelly was already handcuffed. Officer Llukaci assisted the other officers by placing Mr. Kelly into a police vehicle and following them to C.I.D. for processing where it was observed that Mr. Kelly had a cut on his nose, and a black eye, but no major injuries.

Kelly v. Burns, Not Reported in Fed. Supp. (2005)

Case 5:25-cv-01648-LEK-MJK    Document 7    Filed 12/19/25    Page 48 of 89

Once at C.I.D., Mr. Kelly became highly combative and started to kick at Officer Llukaci while trying to elude the grip the officer had on him. Officer Llukaci forced Mr. Kelly to the ground and was able to subdue him without further incident. Officer Llukaci then performed a field test on a sample of the suspected crack cocaine using a NarcoPouch 904B test kit; the sample came back positive for the presence of cocaine. Mr. Kelly denies ever becoming combative with the officers in CID and further claims that he was called racial slurs and was then attacked by two detectives who punched him until he fell to the floor and then stood him up and "smashed" his throat.

After his arrest Mr. Kelly complained of lower back injuries, an injured elbow, as well as double vision and the appearance of red and black spots in his left eye's field of vision. He claims these injuries were caused by being punched and kicked by the police officers.

May 2nd, 2001, the day after his arrest, a CT scan was performed on Mr. Kelly and it was discovered that there is a bullet as well as additional foreign metallic objects lodged in his posterior scalp. X-rays on the same date also found a 1cm and a 1.5cm jagged radiopaque object located in the left frontal lobe of his head which the attending physician classified as shrapnel. X-rays also revealed that Mr. Kelly sustained no broken ribs, no fractures or dislocation of his elbow, and no fractures of the face.

(Citations to record omitted.)

Section 1983, generally
"Recovery under 42 U.S.C. § 1983 is premised upon a showing, first, that the defendant has denied the plaintiff a constitutional or federal statutory right and, second, that such denial was effected under color of state law." *Patterson v. Coughlin,* 761 F.2d 886, 890 (2d Cir.1985). Here, it is undisputed that any actions taken by defendants were effected under color of state law.

Eighth Amendment
The Eighth Amendment prohibition of cruel and unusual punishment applies only in a postconviction setting. *See Ingraham v. Wright,* 430 U.S. 651, 668–71 (1977). Accordingly, the Eighth Amendment does not apply to the claims herein. Plaintiff's Eighth Amendment claims are dismissed.

Fourth and Fourteenth Amendments
Plaintiff's claims that defendants wrongfully arrested him, used excessive force in arresting him and/or failed to intervene when others did so, implicate the Fourth Amendment, made applicable to the states under the Fourteenth Amendment. *See Graham v. Conner,* 490 U.S. 386, 395–96 (1989). Plaintiff's claims that defendants used excessive force in interrogating him and/or failed to intervene when others did so are grounded in the due process clause of the Fourteenth Amendment. *See id.* at 395, n. 10. Thus, these claims, if proven, may establish violations of plaintiffs' constitutional rights for purposes of 42 U.S.C. § 1983.

**\*5** The Court rejects defendants' argument that they are entitled to summary judgment because plaintiff's opposition to their motion is so contradictory as to be implausible. It is well established that a *pro se* document "is to be liberally construed." *Estelle v. Gamble,* 429 U.S. 97, 106 (1976). While confusing and contradictory in some respects, plaintiff's *pro se* submissions are substantially consistent with respect to most significant events surrounding his arrest and questioning. Plaintiff's factual averments are sufficient to raise questions of fact regarding material elements of defendants' submissions. Accordingly, summary judgment on this ground is denied.

Defendants also argue that plaintiff fails to allege facts sufficient to state claims against certain defendants. Specifically, defendants contend that all claims against Burns, Abbot, Estabrook and Hunter should be dismissed because they had no interaction with plaintiff during the incident. [3]

Kelly v. Burns, Not Reported in Fed. Supp. (2005)

Case 5:25-cv-01648-LEK-MJK    Document 7    Filed 12/19/25    Page 49 of 89

With respect to Burns, plaintiff claims that he was involved in the arrest. Also, it is undisputed that Burns was the supervising officer during the questioning of plaintiff in Cell No. 1. Accordingly, plaintiff's claim of failure to intervene to prevent the misuse of force is sufficient to assert a claim against Burns. Moreover, plaintiff claims that when preparing the "resistance report," Burns attempted to "cover up the defendants' actions" by misrepresenting plaintiff's physical complaints.

In his July 16, 2004 declaration, plaintiff alleges that Hunter was involved in the arrest. Also, plaintiff's amended complaint claims that Hunter beat him when he was in Cell No. 1. It is true that in his July 16, 2004 declaration plaintiff claims that Llukaci beat him in Cell No. 1; this is not, however, sufficient to warrant summary judgment dismissing plaintiff's claims against Hunter.

In his amended complaint and July 16, 2004 declaration, plaintiff alleges that Abbot and Estabrook were involved in his arrest. Accordingly, the Court denies summary judgment dismissing plaintiff's Fourth and Fourteenth Amendment claims against Burns, Abbot, Estabrook and Hunter.

Qualified Immunity

Defendants also argue that they are entitled to summary judgment on the ground that their actions were protected by qualified immunity. Government officials performing discretionary functions enjoy a qualified immunity shielding them from civil damages liability as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated. *See* Anderson v. Creighton, 483 U.S. 635, 639 (1987).

If the jury accepts plaintiff's version of events—that is, that despite his innocence of any crime and his compliance with their commands, defendants wrongfully stopped and arrested him, beat him severely and/or failed to prevent others from doing so —defendants could not reasonably have believed their conduct was consistent with plaintiff's rights. Accordingly, defendants are not entitled to dismissal on the ground that they are protected by qualified immunity as a matter of law.

Statement of Material Facts

 **\*6**  Given plaintiff's *pro se* status and in view of the numerous disputed issues of material fact, plaintiff's failure to comply with Local Rule 7.1 in responding to defendants' Statement of Material Facts Not in Dispute does not affect the outcome of these motions.

PLAINTIFF'S CROSS MOTION

It is clear from the above discussion that the record presents material questions of fact with respect to plaintiff's claims. Accordingly, plaintiff's cross motion for summary judgment is denied.

CONCLUSION

Accordingly, the Court grants so much of defendants' motion for summary judgment as seeks dismissal of plaintiff's Eight Amendment claims. In all other respects, the Court denies defendants' summary judgment motion. [4] The Court denies plaintiff's cross motion in its entirety.

It is therefore

ORDERED that defendants' motion for summary judgment is granted insofar as it seeks dismissal of plaintiff's claims based on the Eighth Amendment and is otherwise denied; and it is further

ORDERED that plaintiff's cross motion for summary judgment is denied.

IT IS SO ORDERED.

**All Citations**

Not Reported in Fed. Supp., 2005 WL 2387831

---

## Footnotes

1   Attached to plaintiff's Notice of Cross Motion for summary judgment is a declaration by plaintiff filed July 16, 2004. Plaintiff refers to the declaration both as support for his motion for summary judgment and as opposition to defendants' motion for summary judgment. To avoid confusion the Court will refer to it simply as plaintiff's "July 16, 2004 declaration."

2   In his July 16, 2004 declaration, plaintiff claims that Officer Llukaci beat plaintiff while questioning him in Cell No. 1.

3   It is undisputed that officers Hanley, Babbage, Goodeve and Prue were involved in the stop and arrest of plaintiff on Route 81.

4   The Court notes that in their Memorandum of Law, defendants argue that the amended complaint fails to state a claim against the city of Syracuse. However, the City is not a defendant in this action, Dkt. No. 02–CV–641, and there is nothing in defendants' Notice of Motion or other submissions on this motion which would alert plaintiff that defendants sought relief in any of the member cases, Dkt. Nos. 02–CV–659, 02–CV–660 and 02–CV–661. Accordingly, the Court does not address the issue in the context of the motions presently before it.

---

**End of Document**                    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

2025 WL 1291533
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Scott LESSON, Plaintiff,

v.

Jane DOE / State Trooper, Defendant.

1:25-cv-00188 (AMN/TWD)

|

Signed May 5, 2025

**Attorneys and Law Firms**

SCOTT LESSON, Saratoga County Jail, 6010 County Farm Road, Ballston Spa, New York 12020, Plaintiff, pro se.

## ORDER

Anne M. Nardacci, United States District Judge:

### I. INTRODUCTION

**\*1** On February 10, 2025, *pro se* plaintiff Scott Lesson ("Plaintiff") commenced this action pursuant to 42 U.S.C. § 1983 ("Section 1983") against an unknown New York State Trooper. Dkt. No. 1 ("Complaint"). Plaintiff sought and was granted leave to proceed *in forma pauperis*. Dkt. Nos. 4, 6.

This matter was referred to United States Magistrate Judge Thérèse Wiley Dancks, who reviewed the Complaint pursuant to 28 U.S.C. § 1915(e) and, on March 26, 2025, recommended that the Complaint be dismissed with leave to amend. Dkt. No. 6 ("Report-Recommendation"). Magistrate Judge Dancks advised that pursuant to 28 U.S.C. § 636(b)(1), the parties had fourteen days within which to file written objections and that failure to object to the Report-Recommendation within fourteen days would preclude appellate review. *Id.* at 7-8. [1] No party has filed objections to the Report-Recommendation and the time for filing objections has expired.

For the reasons set forth below, the Court adopts the Report-Recommendation in its entirety.

### II. STANDARD OF REVIEW

This Court reviews *de novo* those portions of a magistrate judge's report-recommendation that have been properly preserved with a specific objection. 28 U.S.C. § 636(b)(1)(C). "To be 'specific,' the objection must, with particularity, 'identify [1] the portions of the proposed findings, recommendations, or report to which it has an objection and [2] the basis for the objection.' " *Petersen v. Astrue*, 2 F. Supp. 3d 223, 228-29 (N.D.N.Y. 2012) (alteration in original) (quoting N.D.N.Y. Local Rule 72.1(c)). If no specific objections have been filed, this Court reviews a magistrate judge's report-recommendation for clear error. *See Petersen*, 2 F. Supp. 3d at 229 (citing Fed. R. Civ. P. 72(b) advisory committee's notes to 1983 addition). Similarly, when a party files "[g]eneral or conclusory objections, or objections which merely recite the same arguments [previously] presented to the magistrate judge," the district court reviews a magistrate judge's report-recommendations for clear error. *O'Diah v. Mawhir*, No. 08-cv-322, 2011 WL 933846, at *1 (N.D.N.Y. Mar. 16, 2011) (citations omitted); *accord Mario v. P & C Food Markets, Inc.*, 313 F.3d 758, 766 (2d Cir. 2002) (a "statement, devoid of any reference to specific findings or recommendations to which [the plaintiff] objected and why, and unsupported by legal authority, was not sufficient to preserve" a claim); *Petersen*, 2 F. Supp. 3d at 228-29 & n.6 (collecting cases). "When performing such a 'clear error' review, 'the court need only satisfy itself

2025 WL 1291533

that there is no clear error on the face of the record in order to accept the recommendation.' " *Dezarea W. v. Comm'r of Soc. Sec.*, No. 21-cv-01138, 2023 WL 2552452, at *1 (N.D.N.Y. Mar. 17, 2023) (quoting *Canady v. Comm'r of Soc. Sec.*, No. 17-cv-0367, 2017 WL 5484663, at *1 n.1 (N.D.N.Y. Nov. 14, 2017)).

**\*2**   "[I]n a *pro se* case, the court must view the submissions by a more lenient standard than that accorded to 'formal pleadings drafted by lawyers.' " *Govan v. Campbell*, 289 F. Supp. 2d 289, 295 (N.D.N.Y. 2007) (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972)) (additional citations omitted). The Second Circuit has held that courts are obligated to "make reasonable allowances to protect *pro se* litigants" from inadvertently forfeiting legal rights merely because they lack a legal education. *Id.* (quoting *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983)). That said, "even a *pro se* party's objections to a Report and Recommendation must be specific and clearly aimed at particular findings in the magistrate's proposal ...." *Machicote v. Ercole*, No. 06-cv-13320, 2011 WL 3809920, at *2, (S.D.N.Y. Aug. 25, 2011) (citation omitted); *accord Caldwell v. Petros*, No. 22-cv-567, 2022 WL 16918287, at *1 (N.D.N.Y. Nov. 14, 2022). After appropriate review, "the court may accept, reject or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C).

## III. DISCUSSION

Because no party has filed any objections to the Report-Recommendation, the Court reviews the Report-Recommendation for clear error.

Magistrate Judge Dancks determined that Plaintiff's allegations failed to set forth a claim for excessive force, as Plaintiff did not identify what force the unidentified state trooper purportedly used against him, nor how it was excessive. Dkt. No. 6 at 5-6. Magistrate Judge Dancks also found that Plaintiff's allegations failed to comply with the pleading requirements set forth in the Federal Rules of Civil Procedure. *Id.* at 4-5. As a result, Magistrate Judge Dancks recommended that the Complaint be dismissed with leave to amend. *Id.* at 6-7. The Court agrees with Magistrate Judge Dancks' findings and recommendations for the reasons set forth in the Report-Recommendation. Having reviewed the Report-Recommendation for clear error, and found none, the Court adopts the Report-Recommendation in its entirety.

## IV. CONCLUSION

Accordingly, the Court hereby

**ORDERS** that the Report-Recommendation, Dkt. No. 6, is **ADOPTED** in its entirety; and the Court further

**ORDERS** that the Complaint, Dkt. No. 1, is **DISMISSED with leave to amend**; [2] and the Court further

**ORDERS** that any amended complaint must be filed within **thirty (30) days** of the filing date of this Order; and the Court further

**ORDERS** that, if Plaintiffs file a timely amended complaint, it shall be referred to Magistrate Judge Dancks for review; and if Plaintiff fails to file a timely amended complaint, the Clerk is directed to close this case without further order of this Court; and the Court further

**ORDERS** that the Clerk serve a copy of this Order on all parties in accordance with the Local Rules. [3]

**IT IS SO ORDERED.**

## All Citations

Slip Copy, 2025 WL 1291533

Case 5:25-cv-01648-LEK-MJK    Document 7    Filed 12/19/25    Page 53 of 89

---

### Footnotes

1      Citations to docket entries utilize the pagination generated by CM/ECF, the Court's electronic filing system, and not the documents' internal pagination.

2      As set forth in the Report-Recommendation, any amended pleading must comply with Rules 8 and 10 of the Federal Rules of Civil Procedure. Dkt. No. 5 at 6–7.

3      The Clerk shall also provide Plaintiff, at both his address of record and the future address he provided, Dkt. No. 2, with copies of all unreported decisions herein.

---

**End of Document**          © 2025 Thomson Reuters. No claim to original U.S. Government Works.

2018 WL 3151704

Only the Westlaw citation is currently available.

United States District Court, E.D. New York.

Vincent MOSCA, Plaintiff,

v.

The CITY OF NEW YORK, The New York City Police Department,

Francesco Colavito, Tapped 1010 Inc., and MXL LLC, Defendants.

17-CV-4327 (SJF)(SIL)

|

Signed 04/24/2018

**Attorneys and Law Firms**

Marc E. Freund, Lipsig, Shapey, Manus & Moverman, PC, New York, NY, for Plaintiff.

Mark David Zuckerman, NYC Law Department, New York, NY, Brian Stephen Frank, Henry Ling Ping Liao, Steven J. Monn, Penino & Moynihan, LLP, White Plains, NY, Jonathan R. Hammerman, Kaufman, Borgeest & Ryan LLP, Garden City, NY, for Defendants.

### REPORT AND RECOMMENDATION

STEVEN I. LOCKE, United States Magistrate Judge

**\*1**  Presently before the Court, on referral in this 42 U.S.C. § 1983 civil rights litigation from the Honorable Sandra J. Feuerstein for Report and Recommendation, is Defendants' the City of New York (the "City") and the New York City Police Department (the "NYPD" or the "Police Department") (together the "Municipal Defendants") motion to dismiss Plaintiff Vincent Mosca's ("Mosca" or "Plaintiff") Complaint as to them. *See* Motion to Dismiss, Docket Entry ("DE") [28]; *see also* Complaint ("Compl."), DE [1]. On July 21, 2017, Plaintiff commenced the instant action alleging: (i) violations of the First, Fourth and Fourteenth Amendments of the U.S. Constitution under 42 U.S.C. § 1983; and (ii) assorted state-law claims. *See id.* On November 9, 2017, the Municipal Defendants filed the instant motion. *See* DE [28]. On November 29, 2017, Judge Feuerstein referred the motion to this Court for a Report and Recommendation as to whether it should be granted. *See* DE [28, 36]. For the reasons set forth herein, the Court respectfully recommends that the motion be granted in its entirety and that the Complaint as against the Municipal Defendants be dismissed without prejudice and with leave to amend.

### I. STATEMENT OF RELEVANT FACTS

The following facts, set forth in the Complaint and the attached exhibits, are presumed true for purposes of the Municipal Defendants' motion.

Defendant Francesco Colavito's ("Colavito") and non-party Ian Walsh's ("Walsh") purported attack on Plaintiff Mosca sparks the instant action. *See generally* Compl. On April 29, 2016, Plaintiff visited the Tap Room, which is a bar located in Massapequa, New York, where he met a visibly intoxicated Colavito and Walsh. *See id.* ¶¶ 26-27. Almost immediately, Colavito, who at the time was an off-duty probationary NYPD officer, and Walsh began harassing Plaintiff. *See id.* Fearful, Mosca exited the bar and retreated into an adjacent parking lot. *See id.* However, Colavito and Walsh followed. *See id.*

In the parking lot, Colavito confronted Plaintiff and, while showing his NYPD badge, pronounced that he "was with the NYPD, [and that Plaintiff was] not going anywhere." *Id.* ¶¶ 30, 35. Walsh thereafter punched Mosca in the back of his head and "in

Case 5:25-cv-01648-LEK-MJK    Document 7    Filed 12/19/25    Page 55 of 89

Mosca v. City of New York, Not Reported in Fed. Supp. (2018)

concert with Colavito" pummeled Plaintiff into unconsciousness. *See id.* ¶ 37. The pair returned inside the bar and "openly celebrated" the bludgeoning for approximately ten minutes until a good Samaritan eventually assisted Mosca. *Id.* ¶¶ 39, 47. As a result of the incident, Plaintiff allegedly suffered a traumatic brain injury, multiple facial fractures which required reconstructive facial surgery, and permanent psychological injuries. *See id.* ¶ 48. Walsh was ultimately arrested, charged with assault and pleaded guilty to an unidentified misdemeanor. *See id.* ¶ 52.

Colavito, in violation of internal guidelines, never reported the incident to the NYPD. *See id.* ¶ 50. However, within a few weeks of the incident, the NYPD received a copy of the Tap Room's surveillance video which purportedly depicts the attack. *See id.* ¶ 54. Despite the video evidence, Colavito was employed by the NYPD for "more than one full year after the assault" until he was eventually terminated. *See id.* ¶¶ 56-57. Plaintiff alleges that this delay highlights the systemic failure by the NYPD to screen similarly situated officers who are unfit for duty and present a danger to the public. *See id.* ¶ 59.

## II. PROCEDURAL HISTORY

**\*2** Based on the above, Plaintiff commenced the instant action alleging causes of action under 42 U.S.C. § 1983 for: (1) false arrest; (2) excessive force; (3) conspiracy; and (4) failure to train against the Municipal Defendants. *See* Compl. Further, the Complaint asserts state-law claims against the Municipal Defendants for: (1) negligent hiring and retention; (2) negligent and intentional infliction emotional distress; and (3) negligence. In addition, Plaintiff asserts claims for assault and battery and violation of New York's Dram Shop Act against Defendants Colavito, XML, Inc. ("XML") and Tapped 1010 Inc. ("Tapped"). [1] *See id.* Colavito, Tapped and the Municipal Defendants subsequently interposed answers with Colavito asserting crossclaims against the Municipal Defendants. [2] *See* DE [16, 18, 19]. Thereafter, the Municipal Defendants moved pursuant to the Federal Rule of Civil Procedure (Fed. R. Civ. P.) 12(b)(6) to dismiss for failure to state a claim, *see* DE [28], and Judge Feuerstein referred the motion to this Court for Report and Recommendation. *See* DE [36]. Plaintiff and Colavito oppose the motion. *See* DE [30, 31]. However, Mosca withdraws his claims against the NYPD as he concedes that it is a non-suable entity. *See* Plaintiff's Memorandum in Opposition ("Pl.'s Opp."), DE [30], at 1; *see also Jenkins v. City of New York*, 478 F.3d 76, 93 n.19 (2d Cir. 2007). Further, as the Municipal Defendants fail to move with respect to Colavito's crossclaims, the Court does not address them.

## III. LEGAL STANDARD

While ostensibly seeking relief pursuant to Rule 12(b)(6), the Court concludes that, as the Municipal Defendants have already filed their Answer, the motion to dismiss is properly considered under Rule 12(c). However, for the purposes of this motion, as both apply the same standard, this is a distinction without difference. *See Cleveland v. Caplaw Enterprises*, 448 F.3d 518, 521 (2d Cir. 2006) ("The standard for addressing a Rule 12(c) motion for judgment on the pleadings is the same as that for a Rule 12(b)(6) motion to dismiss for failure to state a claim."). Rule 12(c) allows for either party to move for judgment on the pleadings, "after the pleadings are closed but within such time as not to delay the trial." Fed. R. Civ. P. 12(c). Under both Rules 12(b)(6) and 12(c), to survive a motion to dismiss a complaint must set forth "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009). A pleading "that offers only 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' " *Id.* (quoting *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1965). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.' " *Id.* (quoting *Twombly*, 550 U.S. at 557, 127 S. Ct. at 1966).

In reviewing a motion to dismiss, the Court must accept the factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of the non-moving party. *See LaFaro v. New York Cardiothoracic Grp., PLLC*, 570 F.3d 471, 475 (2d Cir. 2009). In deciding a motion to dismiss the complaint, the court may consider:

Case 5:25-cv-01648-LEK-MJK    Document 7    Filed 12/19/25    Page 56 of 89

Mosca v. City of New York, Not Reported in Fed. Supp. (2018)

(1) the factual allegations in the complaint, which are accepted as true; (2) documents attached to the complaint as an exhibit or incorporated ... by reference; (3) matters of which judicial notice may be taken; and (4) documents upon whose terms and effect the complaint relies heavily, *i.e.,* documents that are "integral" to the complaint.

*Calcutti v. SBU, Inc.,* 273 F. Supp. 2d 488, 498 (S.D.N.Y. 2003) (internal citation omitted); *see also Miotto v. Yonkers Pub. Sch.,* 534 F. Supp. 2d 422, 425 (S.D.N.Y. 2008) ("[I]n assessing the legal sufficiency of a claim, the court may consider only the facts alleged in the complaint, and any document attached as an exhibit to the complaint or incorporated in it by reference.").

## IV. DISCUSSION

**\*3** Applying the standards outlined above, and for the reasons set forth herein, the Court respectfully recommends that the Municipal Defendants' motion to dismiss the Complaint be granted in its entirety and without prejudice. Initially, the Municipal Defendants seek to dismiss Plaintiff's 42 U.S.C. § 1983 claims for: (i) failure to allege that Colavito was acting under the color of state law during the subject incident; and (ii) that the Complaint fails to plausibly assert a deliberate indifference cause of action. *See* Municipal Defendants' Memorandum of Law ("Defs.' Mem."), DE [29]. As to the state-law claims, the Municipal Defendants argue, *inter alia,* that the Complaint fails to plausibly allege: (1) that the City is liable for under the doctrine of *respondeat superior*; (2) negligent hiring and retention for failure to assert any prior similar misconduct; (3) negligent and intentional infliction of emotional distress as traditional tort theories of recovery are available; and (4) negligence as Colavito's actions were intentional and deliberate. *See id.* The Court considers each argument in turn. [3]

### A. 42 U.S.C. § 1983

Initially, the Court concludes that Mosca fails to plausibly state a 42 U.S.C. § 1983 claim against the Municipal Defendants. Here, the Complaint's Section 1983 claim against the Municipal Defendants is premised under a municipal theory of liability. *See* Compl. ¶¶ 95-112. 42 U.S.C. § 1983 provides, in relevant part, that:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured ....

42 U.S.C. § 1983. Although Section 1983 itself does not create substantive rights, it does provide "a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James,* 13 F.3d 515, 519 (2d Cir. 1993). To prevail on a claim arising under 42 U.S.C. § 1983, a plaintiff must demonstrate: "(1) the deprivation of any rights, privileges, or immunities secured by the Constitution and its laws; (2) by a person acting under the color of state law." *Hawkins v. Nassau Cty. Corr. Facility,* 781 F. Supp. 2d 107, 111 (E.D.N.Y. 2011) (citing 42 U.S.C. § 1983).

### i. Color of State Law

As a preliminary matter, Mosca sufficiently asserts that Colavito acted under the color of state law as to invoke the protections of 42 U.S.C. § 1983. "The purpose of Section 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails." *Wyatt v. Cole,* 504 U.S. 158, 161, 112 S.Ct. 1827, 1829 (1992). To act under color of state law for purposes of 42 U.S.C. § 1983, the defendant must

"have exercised power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.' " *West v. Atkins*, 487 U.S. 42, 49, 108 S.Ct. 2250, 2255 (1988) (quoting *United States v. Classic*, 313 U.S. 299, 326, 61 S.Ct. 1031, 1043 (1941) ). "However, not all acts performed by public employees are under color of state law: 'acts of officers in the ambit of their personal pursuits are plainly excluded.' " *Gleason v. Scoppetta*, 566 Fed.Appx. 65, 68 (2d Cir. 2014) (quoting *Screws v. United States*, 325 U.S. 91, 111, 65 S.Ct. 1031, 1040 (1945) ).

**\*4** "[T]here is no bright line test for distinguishing personal pursuits from activities taken under color of law." *Pitchell v. Callan*, 13 F.3d 545, 548 (2d Cir. 1994) (internal quotation marks omitted). Where the defendant is an off-duty police officer, "courts look to the nature of the officer's act, not simply his duty status." *Id.* Liability under Section 1983 "may attach where an off-duty officer 'invokes the real or apparent power of the police department.' " *Wong v. Yoo*, 649 F.Supp.2d 34, 54 (E.D.N.Y. 2009) (quoting *Pitchell*, 13 F.3d at 548); *see also Rivera v. La Porte*, 896 F.2d 691, 695 (2d Cir. 1990) ("The off-duty status of an arresting officer does not mean that he is not acting under color of law."). In analyzing whether a police officer acted under the color of law, courts consider, among other things, whether the officer:

> (1) was off-duty; (2) identified himself as an officer of the law; (3) was in uniform; (4) was authorized to make an arrest at the time; (5) was carrying handcuffs; (6) was carrying any weapons; (7) flashed a police badge; and (8) placed the plaintiff under arrest or otherwise detained her.

*Cotz v. Mastroeni*, 476 F.Supp.2d 332, 372 (S.D.N.Y. 2007).

Consistent with these factors, courts have found that an off-duty officer who engaged in a private altercation but also invoked the real or apparent power of the police department acted under the color of state law. In *Davis v. Lynbrook Police Dep't*, the court denied summary judgment on the issue of whether an off-duty officer who initiated a traffic stop was acting under the color of state law. *See* 224 F. Supp. 2d 463, 475 (E.D.N.Y. 2002). Significantly, the off-duty officer was dressed in civilian clothes and immediately prior to the stop was at local bar drinking for approximately four hours. *See id.* The Court concluded that, while the officer's pursuit began as purely personal in nature, the character of the officer's conduct changed when he identified himself as a police officer and flashed what appeared to be a badge thereby invoking the "real or apparent power of the police department." *See id.* As a result, the Court concluded that a reasonably jury could rationally conclude that the off-duty officer was acting under the color of state law. *See id.*

Here, the nature of Colavito's alleged conduct, like the off-duty officer in *Davis*, changed when he invoked his apparent authority as a police officer. Specifically, the Complaint alleges that Colavito: (1) identified himself as an officer of the law; (2) flashed his badge; and (3) detained Plaintiff when he stated that "I'm with the NYPD, you're not going anywhere." *See* Compl. ¶ 35. Assuming these allegations to be true, it is reasonable to conclude that Colavito used his authority as an NYPD officer to facilitate his conduct. Accordingly, Mosca has plausibly alleged that Colavito acted under the color of state law and proceeds to consider whether municipal liability is otherwise properly stated.

### *ii. Municipal Liability*

Turning to the substance of Mosca's municipal liability cause of action, the Court concludes that the Complaint fails to state a claim. A municipality may not be held liable under Section 1983 on a *respondeat superior* theory of liability. *Monell v. N.Y.C. Dep't of Soc. Servs.*, 436 U.S. 658, 690-91, 98 S. Ct. 2018, 2036 (1978); *see also Genovese v. Town of Southampton*, 921 F. Supp. 2d 8, 24 (E.D.N.Y. 2013) ("[A] municipal entity may only be held liable where the entity itself commits a wrong; a municipality cannot be held liable under § 1983 on a *respondeat superior* theory.") (internal quotation omitted). To state a claim for municipal liability, a plaintiff must allege "(1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." *Torraco v. Port Authority of New York & New Jersey*, 615 F.3d 129, 140 (2d Cir. 2010) (citing

**Mosca v. City of New York, Not Reported in Fed. Supp. (2018)**

Case 5:25-cv-01648-LEK-MJK    Document 7    Filed 12/19/25    Page 58 of 89

*Wray v. City of New York*, 490 F.3d 189, 195 (2d Cir. 2007) ); *see Norton v. Town of Islip*, 97 F. Supp. 3d 241, 264 (E.D.N.Y. 2015), *reconsideration denied*, 12 CV 4463, 2016 WL 264930 (E.D.N.Y. Jan. 21, 2016), *aff'd*, 16-490-CV, 2017 WL 440131 (2d Cir. Feb. 1, 2017) (citing *Monell*, 436 U.S. at 690-91, 98 S. Ct. at 2036; *Lamont v. City of New York*, 12-CV-2478, 2014 WL 4829328, at *7 (E.D.N.Y. Sept. 29, 2014) ).

 **\*5**  Moreover, though Section 1983 does not require application of a heightened pleading standard to allege municipal liability, a complaint does not "suffice if it tenders naked assertion[s] devoid of further factual enhancement." *Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1937 (alteration in original) (internal citations and quotation marks omitted); *see Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 168, 113 S. Ct. 1160, 1163 (1993). Thus, Plaintiff cannot simply allege the existence of a policy and/or custom without putting forth "facts tending to support, at least circumstantially, an inference that such a municipal policy or custom exists." *Santos*, 847 F. Supp. 2d at 576 (citing *Dwares v. City of New York*, 985 F.2d 94, 100 (2d Cir. 1993), *overruled on other grounds by Leatherman*, 507 U.S. at 164, 113 S. Ct. at 1163-64). Simply asserting that the alleged violations could not have occurred unless supervisors and policy makers tolerated them is insufficient to demonstrate the existence of such a custom unless the assertion is clearly supported by an articulated factual context. *See Missel v. Cnty. of Monroe*, 351 Fed.Appx. 543, 545 (2d Cir. 2009); *Duncan v. City of New York*, 11-CV-3826, 2012 WL 1672929, at *3 (E.D.N.Y. May 14, 2012) (holding that "boilerplate statements" claiming that the city has a custom of making and tolerating false arrests and of using excessive force "are insufficient to state a claim of municipal liability under *Monell*"); *Bradley v. City of New York*, 08-CV-1106, 2009 WL 1703237, at *3 (E.D.N.Y. June 18, 2009) ("The Complaint's conclusory, boilerplate language—that the City 'fail[ed] to adequately discipline and supervise' employees and 'fail[ed] to promulgate and put into effect appropriate rules and regulations applicable to the duties and behavior' of its employees—is insufficient to raise an inference of the existence of a custom or policy, let alone that such a policy caused Plaintiff to be arrested without probable cause.") (internal citations omitted).

A municipality may also be held liable where it demonstrates a "manifest failure to train, supervise or discipline [its] employees." *Mahan v. City of New York*, No. 00-CV-6645, 2005 WL 1677524, at *3 (E.D.N.Y. July 19, 2005) (citing *Oklahoma City v. Tuttle*, 471 U.S. 808, 823, 105 S. Ct. 2427, 2436 (1985) ). As described by the Supreme Court:

> [D]eliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action. Thus, when [municipal] policymakers are on actual or constructive notice that a particular omission in their training program causes [municipal] employees to violate citizens' constitutional rights, the [municipal entity] may be deemed deliberately indifferent if the policymakers choose to retain that program.

*Connick v. Thompson*, 563 U.S. 51, 62, 131 S. Ct. 1350, 1360 (2011) (internal citations omitted); *see also Batista v. Rodriguez*, 702 F.2d 393, 397 (2d Cir. 1983) ("We have held that municipal inaction such as the persistent failure to discipline subordinates who violate civil rights could give rise to an inference of an unlawful municipal policy or ratification of unconstitutional conduct within the meaning of *Monell*."). As a result, "[a] pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference for purposes of failure to train." *Connick*, 563 U.S. at 62, 131 S. Ct. at 1360. Moreover, where a municipal entity has a training program, a plaintiff must identify a specific deficiency in the program that is "closely related to the ultimate injury, such that it 'actually caused' the constitutional deprivation." *Wray v. City of New York*, 490 F.3d 189, 196 (2d Cir. 2007) (citing *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 129 (2d Cir. 2004) ).

Applying these standards, Mosca has failed to state a claim for municipal liability under Section 1983. Plaintiff alleges that the Municipal Defendants were deliberately indifferent to the need to properly screen potential NYPD police officers that "pose a serious threat of danger to the general public." *See* Compl. ¶ 106. However, the Complaint is devoid of any allegations of prior similar constitutional violations. Therefore, Plaintiff cannot plausibly allege that the Municipal Defendants acquired sufficient actual or constructive notice as to be deliberately indifferent as to the need for further screening of potential NYPD employees. *See Connick*, 563 U.S. at 62, 131 S. Ct. at 1360 ("Without notice that a course of training is deficient in a particular respect,

Case 5:25-cv-01648-LEK-MJK    Document 7    Filed 12/19/25    Page 59 of 89

Mosca v. City of New York, Not Reported in Fed. Supp. (2018)

decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights."). Further, the Complaint fails to allege any inadequacies—specific or general—in the NYPD's existing training program. *See Wray v. City of New York*, 490 F.3d at 196. Instead, it appears that Mosca attempts to impermissibly infer a policy from the alleged single violation of its own civil rights. *See Anderson v. City of New York*, 657 F. Supp. 1571, 1574 (S.D.N.Y. 1987) ("Plaintiff cannot infer a policy from the alleged violation of his own civil rights."). Therefore, at most, Plaintiff has identified an isolated incident which is insufficient to state a claim for municipal liability. *See Tuttle*, 471 U.S. at 814, 105 S. Ct. at 2431 ("Proof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell*."). Accordingly, the Court recommends that the Municipal Defendants' motion to dismiss Plaintiff's Section 1983 claims be granted as to them. [4]

### B. State-Law Claims

**\*6** Turning to Plaintiff's state-law claims, the Court concludes that they similarly fail as a matter of law. Initially, the Court notes that Plaintiff's opposition fails to address the Municipal Defendants' arguments for dismissal of the state-law claims. Therefore, these claims are deemed abandoned as against the Municipal Defendants. *See D.C. by Conley v. Copiague Union Free Sch. Dist.*, No. 16-cv-4546, 2017 WL 3017189, at \*10 (E.D.N.Y. July 11, 2017) (citing *Tamir v. Bank of N.Y. Mellon*, No. 12-cv-4780, 2013 WL 4522926, at \*2 (E.D.N.Y. Aug. 27, 2013) ("Plaintiff has failed to provide any response to Defendants' plausible arguments, and, therefore, the court deems the ... claim abandoned.") ). However, for the sake of completeness, the Court proceeds to consider the merits of Mosca's state-law claims.

*i. Respondeat Superior*

Here, the Court concludes that the City is not vicariously liable based on Colavito's allegedly tortious conduct. Initially, the Court notes that the state-law *respondeat superior* inquiry is distinct from the Section 1983 color of state law analysis. *DeVito v. Barrant*, No. 03-cv-1927, 2005 WL 2033722, at \*7 (E.D.N.Y. Aug. 23, 2005). It is well-established that an employer is vicariously liable for a tort committed by his servant while acting within the scope of his employment. *Krynski v. Chase*, 707 F. Supp. 2d 318, 329 (E.D.N.Y. 2009) (internal citations omitted). To determine whether an action falls within the scope of employment, New York state courts consider five factors:

> (1) the connection between the time, place and occasion for the act; (2) the history of the relationship between the employer and employee as spelled out in actual practice; (3) whether the act is one commonly done by such an employee; (4) the extent of departure from normal methods of performance; and (5) and whether the specific act was one that the employer could reasonably have anticipated.

*Mingo v. United States*, 274 F. Supp. 2d 336, 346 (E.D.N.Y. 2003). In the context of vicarious liability, it is not determinative that the officer may have flashed his badge or identified himself as a police officer. *See Mahmood v. City of New York*, No. 01 Civ. 5899, 2003 WL 21047728, at \*2–3 (S.D.N.Y. May 8, 2003). Where a police officer's "conduct is brought on by a matter wholly personal in nature, the source of which is not job-related, his actions cannot be said to fall within the scope of his employment." *See Wahhab v. City of New York*, 386 F. Supp. 2d 277, 290 (S.D.N.Y. 2005) (quoting *Stavitz v. City of New York*, 98 A.D.2d 529, 471 N.Y.S.2d 272, 274 (1st Dep't 1984) ).

Here, the Complaint fails to plausibly allege that the Municipal Defendants are liable under a theory of *respondeat superior*. Initially, the Court notes that Colavito's purportedly unlawful actions occurred when he was off duty and outside of New York City. Further, Colavito's alleged tortious conduct—specifically acting in "concert" with Walsh to perpetrate a criminal act—is a significant departure from NYPD's normal method of performance as a law enforcement agency. *See Nu–Life Const. v. Board of Educ.*, 779 F.Supp. 248, 250–251 (E.D.N.Y. 1991) ("The criminal intent of municipal agents cannot be imputed to the municipality itself by reason of *respondeat superior*."); *see also Heffernan v. Marine Midland Bank, N.A.*, 267 A.D.2d 83,

Mosca v. City of New York, Not Reported in Fed. Supp. (2018)

Case 5:25-cv-01648-LEK-MJK   Document 7   Filed 12/19/25   Page 60 of 89

84, 701 N.Y.S.2d 4, 6 (1st Dep't 1999) (finding that alleged criminal conduct is so gross a departure from normal performance that it cannot be considered to have been within the scope of employment). Finally, the Complaint is silent as to any events that would have allowed the Municipal Defendants to reasonably anticipate Colavito's specific wrongful behavior. Simply, as alleged, Colavito's purely personal actions appear to be completely unrelated to the performance of his job with the NYPD. Therefore, Plaintiff has failed to plausibly allege that the City is vicariously liable for Colavito's action. Accordingly, on this basis, the Court recommends that the state-law claims against the Municipal Defendants again be dismissed.

*ii. Negligent Hiring and Retention*

**\*7** The Court further concludes that Plaintiff's negligent hiring and retention claim fails on its merits as a matter of law. To state a claim for negligent hiring and retention under New York law, in addition to the standard elements of negligence, a plaintiff must show: (1) that the tortfeasor and the defendant were in an employee-employer relationship; (2) that the employer "knew or should have known of the employee's propensity for the conduct which caused the injury" prior to the injury's occurrence; and (3) that the tort was committed on the employer's premises or with the employer's chattels. *Ehrens v. Lutheran Church,* 385 F.3d 232, 235 (2d Cir. 2004).

Once again, the Complaint fails to allege any specific facts concerning any of Colavito's prior misconduct. Therefore, even assuming the facts alleged in the Complaint to be true, Plaintiff is unable to plausibly demonstrate that NYPD "knew or should have known of [Colavito's] propensity for the conduct which caused [Plaintiff's alleged] injury." *Soliman v. City of New York,* No. 15-cv-531, 2017 WL 1229730, at *12 (E.D.N.Y. Mar. 31, 2017). Accordingly, the Court recommends that the Municipal Defendants' motion to dismiss Plaintiff's negligent hiring and retention claim again be granted on this alternate ground.

*iii. Negligent and Intentional Infliction of Emotional Distress*

Plaintiff's negligent and intentional infliction of emotional distress claim is similarly subject to dismissal. "Under New York law, a claim for intentional infliction of emotional distress requires a showing of (1) extreme and outrageous conduct; (2) intent to cause, or reckless disregard of a substantial probability of causing, severe emotional distress; (3) a causal connection between the conduct and the injury; and (4) severe emotional distress." *See Stuto v. Fleishman,* 164 F.3d 820, 827 (2d Cir. 1999). A viable claim for negligent infliction of emotional distress can be achieved in one of two ways: (1) the 'bystander' theory; or (2) the 'direct duty' theory." *Lloyd v. City of New York,* 246 F. Supp. 3d 704, 730 (S.D.N.Y. 2017) (quoting *Baker v. Dorfman,* 239 F.3d 415, 421 (2d Cir. 2000) ). Here, Plaintiff attempts to set forth a claim under the latter. Under the "direct duty" theory, "a plaintiff suffers emotional distress caused by [a] defendant's breach of a duty which unreasonably endangered [the plaintiff's] own physical safety." *Id.* (citation and internal quotation marks omitted).

Negligent and intentional infliction of emotional distress are "highly disfavored [torts] under New York law," and they are "to be invoked only as a last resort." *Turley,* 774 F.3d at 158 (internal citations omitted). To that end, these causes of action may be applied only "to provide relief in those circumstances where traditional theories of recovery do not." *Salmon v. Blesser,* 802 F.3d 249, 256 (2d Cir. 2015) (citations omitted).

Here, Mosca' negligent and intentional infliction of emotional distress cause of action is fatally flawed as it is duplicative of his assault and battery claim. *See, e.g., Caravalho v. City of New York,* No. 13-cv-4174, 2016 WL 1274575, at *23 (S.D.N.Y. Mar. 31, 2016) (dismissing as duplicative negligent infliction of emotional distress claim because "the conduct at issue—[the defendant's] allegedly unreasonable use of force—and any resulting emotional damage is entirely subsumed by [the plaintiff's] common law assault and battery claim and his federal excessive force claim). Accordingly, the Court recommends that Plaintiff's negligent and intentional infliction of emotional distress claim also be dismissed.

Case 5:25-cv-01648-LEK-MJK    Document 7    Filed 12/19/25    Page 61 of 89

Mosca v. City of New York, Not Reported in Fed. Supp. (2018)

*iv. Negligence*

  **\*8**  Finally, Plaintiff has failed to plausibly allege a negligence cause of action against the Municipal Defendants. To establish a claim of negligence, a plaintiff must demonstrate each of following elements: "(1) a duty owed by the defendant to the plaintiff, (2) a breach thereof, and (3) injury proximately resulting therefrom." *Genao v. Bd. of Educ. of City of New York*, 888 F. Supp. 501, 505 (S.D.N.Y. 1995). It is well-settled that once intentional offensive conduct has been established, the actor is liable for assault and not negligence. *See, e.g., United Nat. Ins. Co. v. Tunnel, Inc.*, 988 F.2d 351, 353 (2d Cir. 1993) (discussing the mutual exclusivity of negligence and battery under New York law).

The Municipal Defendants are also entitled to dismissal of Mosca's negligence claim. Here, as the Complaint alleges that Colavito's actions were intentional and deliberate, they are outside the ambit of a negligence claim. Accordingly, the Court recommends that the Municipal Defendants' motion to dismiss be granted as to Mosca's negligence claim as well.

###   C. Leave to File an Amended Complaint

Finally, Mosca seeks leave his amend his municipal liability claim if Defendants' motion is granted. While leave to amend a complaint should be freely given "when justice so requires," Fed. R. Civ. P. 15(a)(2), it is "within the sound discretion of the district court to grant or deny leave to amend." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007). "[A] district court may deny leave to amend when [...] amendment would be futile because the problem with the claim 'is substantive ... [and] better pleading will not cure it.' " *Reynolds v. City of Mount Vernon*, 14-CV-1481, 2015 WL 1514894, at \*5 (S.D.N.Y. Apr. 1, 2015) (quoting *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) ). Here, the Court cannot conclude with certainty that amendment would be futile. Accordingly, the Court recommends that Plaintiff be granted leave to file an amended complaint that would satisfy the pleading requirements under the standards addressed above.

### V. CONCLUSION

Based on the foregoing, the Court respectfully recommends that the District Court grant the Municipal Defendants' motion to dismiss in its entirety and without prejudice. Further, the Court recommends that Plaintiff be granted to leave to file an amended complaint addressing the deficiencies in the causes of action asserted against the Municipal Defendants. Finally, the Court recommends that the NYPD be removed from the caption as a Defendant in the case because it is a non-suable entity.

### VI. OBJECTIONS

A copy of this Report and Recommendation is being served on all parties by electronic filing on the date below. Any objections to this Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days of receipt of this report. Failure to file objections within the specified time waives the right to appeal the District Court's order. *See* 28 U.S.C. § 636(b) (1); Fed. R. Civ. P. 6(a); *Ferrer v. Woliver*, 05-3696, 2008 WL 4951035, at \*2 (2d Cir. Nov. 20, 2008); *Beverly v. Walker*, 118 F.3d 900, 902 (2d Cir. 1997); *Savoie v. Merchants Bank*, 84 F.3d 52, 60 (2d Cir. 1996).

**All Citations**

Not Reported in Fed. Supp., 2018 WL 3151704

---

**Footnotes**

Mosca v. City of New York, Not Reported in Fed. Supp. (2018)

Case 5:25-cv-01648-LEK-MJK    Document 7    Filed 12/19/25    Page 62 of 89

1     Tapped is alleged to be the tenant of MXL which, in turn, is alleged to own the subject premises. *See* Compl. ¶¶ 15-16.

2     Defendant MXL has failed to answer or otherwise respond to the Complaint.

3     In opposition to the motion to dismiss, Plaintiff annexes a purported copy of the Tap Room's surveillance video that purportedly depicts the subject incident. *See* DE [30-2]. In this Circuit, courts have considered video evidence in conjunction with 12(b)(6) motions where the tape has either been: (1) incorporated into the pleadings by reference; (2) offered by the plaintiff as part of its pleadings; or (3) the plaintiff has incorporated the video by reference after the defendant introduced the video. *Garcia v. Does*, 779 F.3d 84, 88 (2d Cir. 2015); *see also Gersbacher v. City of New York*, 134 F. Supp. 3d 711, 720 (S.D.N.Y. 2015). Here, Mosca has not offered the video as part of his pleadings but does reference a surveillance tape that depicts the subject incident. *See, e.g.*, Compl. ¶ 49. However, the Court declines to consider the video for the purposes of the instant motion as it is not integral to the analysis of the allegations against the Municipal Defendants. *See Leibovitz v. City of New York*, No. 14-cv-7106, 2018 WL 1157872, at *6 (E.D.N.Y. Mar. 2, 2018) (declining to consider, among other things, video evidence that was not integral to allegations made in the complaint).

4     While not specifically alleged in the Complaint, Plaintiff's opposition references 42 U.S.C. §§ 1981 and 1985. *See* Pl.'s Opp. at 5. To the extent that the Complaint alleges municipal liability under Sections 1981 and 1985, those claims are similarly deficient for failure to plausibly allege the existence of a municipal policy or custom. *See Owens v. Hass*, 601 F.2d 1242, 1247 (2d Cir. 1979), *cert. denied sub nom. County of Nassau v. Owens*, 444 U.S. 980, 100 S.Ct. 483 (1979) (finding that a municipal policy or custom is a prerequisite for liability as against a municipality under Section 1985); *see also Patterson v. Cty. of Oneida*, N.Y., 375 F.3d 206, 226 (2d Cir. 2004) (finding that a Section 1981 claim requires that the challenged acts were performed pursuant to a municipal policy or custom). Further, as Mosca does not plausibly allege the existence of a municipal policy or custom, he similarly fails to assert that the Municipal Defendants were the proximate cause of his injuries. *See Cash v. Cty. of Erie*, 654 F.3d 324, 342 (2d Cir. 2011) (recognizing that proximate cause fairly describes a plaintiff's causation burden with respect to a municipal liability claim under 42 U.S.C. § 1983); *see also H.H. v. City of New York*, No. 11-cv-4905, 2017 WL 3396434, at *9 (E.D.N.Y. Aug. 7, 2017).

---

**End of Document**                                         © 2025 Thomson Reuters. No claim to original U.S. Government Works.

2012 WL 4445475

Only the Westlaw citation is currently available.

United States District Court, D. Connecticut.

Carlos ROMAN, Plaintiff,

v.

John VELLECA, et al, Defendants.

Civil Action No. 3:11cv1867(VLB).

|

Sept. 25, 2012.

### Attorneys and Law Firms

William Sylvester Palmieri, Law Offices of William S. Palmieri, LLC, New Haven, CT, for Plaintiff.

Nicole C. Chomiak, Stacey L. Pitcher, Nuzzo & Roberts, Cheshire, CT, Vikki Cooper, Corporation Counsel City of Stamford, Stamford, CT, for Defendants.

### MEMORANDUM OF DECISION GRANTING DEFENDANTS' [DKT. # 16] MOTION TO

VANESSA L. BRYANT, District Judge.

**\*1** Before the Court is the Defendants' Motion to Dismiss the complaint of the Plaintiff, Detective Carlos Roman of the New Haven Police Department, alleging that he was subjected to four counts of unlawful mistreatment in the course of his employment. The Defendants, John Velleca ("Velleca"), Frank Limon ("Limon"), and the City of New Haven (the "City") now move to dismiss the Plaintiff's complaint on the grounds that the Plaintiff has failed to state a claim upon which relief can be granted. In his complaint, Plaintiff alleges that "the Defendants engaged in discrimination, harassment, hostile work environment, disparate treatment of, and retaliation against" the Plaintiff in violation of his rights under the Constitution, federal law, and Connecticut state law. In Count I of his complaint, the Plaintiff claims that Velleca's actions constitute a violation of the Plaintiff's equal protection, First Amendment, and substantive and procedural due process rights. In Count II, the Plaintiff reasserts his Count I claims as applied to the actions of Defendant Frank Limon. In Count III, the Plaintiff alleges that "the actions and conduct of the Defendant City of New Haven evince an official policy or custom which has caused the Plaintiff to be subject to a denial of ... his constitutional rights," subjecting the city to municipal liability for the claims set forth in Counts I and II. Finally, in Count IV, the Plaintiff alleges that Defendants Velleca and Limon unlawfully and intentionally inflicted extreme emotional distress upon the Plaintiff. The Defendants have filed a motion to dismiss counts one through four of the Plaintiff's complaint pursuant to Fed.R.Civ.P. 12(b)(6). For the reasons stated below, the Defendants' motion is granted.

*Factual Background*

Plaintiff, Carlos Roman, has been a police officer for the New Haven Police Department for approximately nineteen years and alleges that he has been a "loyal and valuable employee" with "an excellent employment record." [Dkt. # 1, Compl. Count I, ¶ 10]. He now claims that the City and members of the Department subjected him to unlawful abuse on multiple occasions, and seeks relief for the allegedly ongoing mistreatment. *Id.* at ¶ 1.

  A. The Initial Altercation

In July of 2010, the Plaintiff was employed as a Major Crimes Unit Detective for the New Haven Police Department. *Id.* at ¶¶ 11, 12. At that time, the Department's Major Crimes Unit was undergoing a personnel change directed by Defendant then-

Lieutenant John Velleca. *Id.* at ¶¶ 7, 13. On or around July 26, 2010, when Defendant Velleca directed the Plaintiff to bring a memorandum of the new transfers and assignments to Defendant Velleca's office, the Plaintiff chose to express the concerns he had regarding the change. *Id.* at ¶ 12. Although Plaintiff himself was not named on the transfer list, he was concerned that the transfers would "negatively impact[ ] the provision of police services to the public." *Id.* at If 16.

**\*2** When the Plaintiff raised his concerns, however, "Defendant Velleca began yelling at Plaintiff," and informed Plaintiff "in a loud and threatening manner" that the changes had been made " 'because [Velleca] said so.' " *Id.* at If 13. Distressed, the Plaintiff "responded by looking downward at the floor." *Id.* at If 16. According to the Plaintiff, Defendant Velleca nevertheless continued his "threatening tirade." *Id.* at If 19. After first directing the Plaintiff to close the door "so that others would not overhear," the Defendant "instructed the Plaintiff to voice his concerns." *Id.* at If 14. The Plaintiff complied, and "spoke out on matters of public concern," by opining to Velleca that "a strong bond and trust exists between the detectives in the squad," such that "transferring in new detectives while transferring the existing detectives to other units would make working relationships difficult, thereby negatively impacting the provision of police services to the public." *Id.* at If 15. The Plaintiff claims that Defendant then responded by violently, repeatedly and profanely "shout[ing] at the Plaintiff, 'Get the f——k out! I'm not listening to this s——t! Get out!' " while clenching his fist and repeatedly pounding it against his desk. *Id.* at ¶¶ 17, 18. The Plaintiff asserts that, in his rage, "the veins in the Defendant Velleca's neck protruded and saliva flew from his mouth," causing the Plaintiff to fear for his safety, "convinced that the Defendant ... was going to attack him." *Id.* at ¶¶ 20, 21. When Velleca then threatened to "mak[e] [Plaintiff's] life miserable," the Plaintiff sought to make clear that his concerns were for public safety and "not simply his own assignment." *Id.* at ¶¶ 24, 25. Accordingly, he assured Velleca that " 'No matter what decisions" were made, he would "continue to come to work and give one hundred percent." *Id.* at ¶ 25.

Immediately after the Plaintiff left the office, Defendant Velleca directed that the Plaintiff be written up for voicing his concerns. *Id.* at ¶ 36. Yet what is more, soon after the incident, on July 27, 2010, the Plaintiff received a transfer order, which "was signed by Defendant Limon, and copied to Defendant Velleca." *Id.* at ¶ 41. The Plaintiff alleges that Defendant Velleca "obtained the transfer of the Plaintiff to a less desirable assignment" by "making false statements about the incident to an Assistant Chief." *Id.* at ¶ 41. Plaintiff, an Hispanic officer, also claims that Defendant Velleca has a history of similar "discriminatory, harassing, abusive, and retaliatory conduct" toward minority employees and female officers. *Id.* at ¶ s 5, 43.

Consequently, the Plaintiff filed a formal complaint against Velleca with his supervisors. *Id.* at ¶ 26. He also forwarded copies of the complaint to the New Haven Police Union, his private attorney, the National Latino Peace Officers Association, and the "Commission of Human Rights." *Id.* at ¶ 26.

### B. The August 12 Incident

**\*3** The Plaintiff asserts that a second episode of harassment by Defendant Velleca took place the following month, around August 12. *Id.* at ¶ 45. The incident began, according to the Plaintiff, when Defendant Velleca approached the Plaintiff's new desk, "stared at him," and repeatedly asked, "Do you have a problem?" *Id.* at ¶¶ 45, 47. When the Plaintiff remained silent, the Defendant stated, "Yeah, I didn't think so!" and left. *Id.* at ¶ 48. Immediately after the incident, the Plaintiff complained to his supervisor. At that time, accompanied by his supervisor, the Plaintiff informed Defendant Velleca that he would not tolerate the Defendant's harassment. *Id.* at ¶ 50. In response, Velleca again threatened the Plaintiff, telling him, "Carlos, you did not learn your lesson, but you will!" *Id.* at ¶ 51. Once again, "after he finished berating and humiliating the Plaintiff, the Defendant Velleca ordered Plaintiff's supervisor ... to write up the Plaintiff," even though he was "unable to specify a violation ... upon which to discipline the Plaintiff." *Id.* at ¶¶ 69, 71. Additionally, Defendant Velleca also "filed a written disciplinary report to the Defendant Limon, once again falsely claiming that the Plaintiff had engaged in misconduct." *Id.* at ¶ 74.

Subsequent to the August 12 incident, the Plaintiff made verbal complaints, which he later followed up with written complaints, to his supervisor, his Union representatives, and the City of New Haven. *Id.* at ¶¶ 52, 53, 72. In his written complaints, the Plaintiff made clear that the Defendant's behavior not only "made him afraid to be in the workplace," but also "made him feel

like a prisoner in his own home as well, as he ... worried that Velleca [would] show up there, and threaten him and his family." *Id.* at ¶ 60.

### C. Allegations of Continued Mistreatment

On August 24, 2010, Defendant Velleca again ordered a supervisor to "discipline the Plaintiff" for pretextual reasons with the motive "to further discriminate against, harass, and retaliate against the Plaintiff." *Id.* at ¶ ¶ 77, 78, 79. When the matter was referred to Defendant Assistant Chief Limon, however, Limon disregarded the Plaintiff's complaints and ignored the positive appraisal of the Plaintiff offered by his supervisor. *Id* . at ¶ s 83, 84. Thus, on November 10, 2010, Defendant Limon suspended the Plaintiff for three days "on the basis of [the] false and pretextual claims" put forth by Velleca. *Id.* at If 85.

Finally, after the Plaintiff filed an additional grievance about his mistreatment, on March 14, 2010, the Defendant City of New Haven acknowledged that " 'some of Lt. Velleca's actions were inappropriate for a supervisor,' and that Velleca both initiated and escalated the inappropriate contact with the Plaintiff." *Id.* at ¶¶ 86, 87. Nevertheless, according to the Plaintiff, "the City of New Haven failed, refused, or neglected to discipline the Defendant" or to "act to prevent further harm to the Plaintiff." *Id.* at If 88. Consequently, around July 29, 2011, the Plaintiff was wrongfully excluded from routine training as a result of the Defendants' continued unlawful conduct. *Id.* at If 91. Indeed, according to the Plaintiff, "the Defendant Velleca, now an Assistant Chief, continues to subject the Plaintiff to harassment." *Id.* at If 90. As a result, the Plaintiff claims that he continues to suffer economic and psychological losses. *Id.* at If 93. For example, on one occasion, "Velleca's conduct caused the Plaintiff to be upset and agitated," so that he was "forced to leave his workplace and to use a sick day." *Id.* at If 68

**\*4** For the aforementioned reasons, the Plaintiff seeks relief for the mistreatment he claims to have undergone in the course of his employment. *Id.* at If 1.

### Legal Standard

" 'To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.' " *Sarmiento v. U.S.,* 678 F.3d 147 (2d Cir.2012)(quoting *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)). While Rule 8 does not require detailed factual allegations, "[a] pleading that offers 'labels and conclusions' or 'formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s] devoid of 'further factual enhancement.' " *Iqbal,* 556 U.S. at 678 (citations and internal quotations omitted). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.' " *Id.* (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 557, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (internal citations omitted).

In considering a motion to dismiss for failure to state a claim, the Court should follow a "two-pronged approach" to evaluate the sufficiency of the complaint. *Hayden v. Paterson,* 594 F.3d 150, 161 (2d Cir.2010). "A court 'can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.' " *Id.* (quoting *Iqbal,* 129 S.Ct. at 1949–50). "At the second step, a court should determine whether the 'well-pleaded factual allegations,' assumed to be true, 'plausibly give rise to an entitlement to relief .' " *Id.* (quoting *Iqbal,* 556 U.S. 679). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal,* 556 U.S. at 678 (internal quotations omitted).

### Analysis

#### A. Discrimination, Harassment, and Hostile Work Environment Claims

To begin, the Plaintiff alleges that the Defendants subjected him to discrimination in the form of disparate treatment, harassment, hostile work environment, and retaliation. An employee subjected to such unlawful treatment has a cause of action under both

Title VII of the Civil Rights Act of 1964 ("Title VII") and the Connecticut Fair Employment Practices Act ("CFEPA"). A Plaintiff's Title VII and CFEPA claims will not stand, however, where the Plaintiff (1) brings his complaint prematurely, (2) issues a complaint alleging inadequate factual allegations, or (3) fails to properly substantiate his claim.

First, because voluntary compliance is the "preferred means for enforcing Title VII," before resorting to the courts a Title VII Plaintiff must make preliminary attempts to resolve his dispute by filing a charge with the Equal Employment Opportunity Commission ("EEOC") or an equivalent state agency and obtaining a right-to-sue letter. *W.R. Grace & Co. v. Local Union 759,* 461 U.S. 757, 771, 103 S.Ct. 2177, 76 L.Ed.2d 298, (1983); *Williams v. New York City Hous. Auth.,* 458 F.3d 67, 71 (2d Cir.2006). Similarly, this court has held that a complaint under the CFEPA cannot survive where the Plaintiff did not first file a timely claim with the Connecticut Commission on Human Rights and Opportunities ("CHRO"). *Spell v. Connecticut,* 602 F.Supp.2d 387, 392 (D.Conn.2009).

**\*5** The Supreme Court has held that "filing a timely charge of discrimination with the EEOC is not a jurisdictional prerequisite to suit in federal court, but a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling." *Zipes v. Trans World Airlines, Inc.,* 455 U.S. 385, 393, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982). The Second Circuit has explained that "[e]very circuit before us that has faced the question has held that a plaintiff's failure to obtain a notice-of-right-to-sue-letter is not a jurisdictional bar, but only a precondition to bringing a Title VII action that can be waived by the parties or the court. *Pietras v. Bd. of Fire Com'rs of Farmingville Fire Dist.,* 180 F.3d 468, 474 (2d Cir.1999) (citing *Rivers v. Barberton Bd. of Educ.,* 143 F.3d 1029, 1031 (6th Cir.1998); *McKinnon v. Kwong Wah Restaurant,* 83 F.3d 498, 505 (1st. Cir.1996); *Gooding v. Warner–Lambert Co.,* 744 F.2d 354, 358 (3d Cir.1984)).

In this case, the Plaintiff did not allege or otherwise informed the Court that he had at any time filed a complaint with the EEOC or obtained a right-to-sue letter. The Plaintiff does, however, allege to have "forwarded a copy" of a complaint he had written to his supervisor to "the Commission of Human Rights." Nevertheless, the Plaintiff's complaint does not make clear whether the Plaintiff filed a formal complaint under Title VII or CFEPA with the CHRO. In addition, neither plaintiff nor defendant has set forth any circumstances indicating that the failure to obtain a right to sue letter has been waived by either party. Moreover, this Court sees no good cause to apply estoppel, equitable tolling or waiver to this requirement. Consequently, Plaintiff's employment discrimination, retaliation and hostile work environment claims under Title VII and CFEPA claims are barred by Plaintiff's failure to timely file a charge of discrimination with the EEOC.

Assuming arguendo that Plaintiff did timely file a charge of discrimination with the EEOC and obtained a right to sue letter, the Plaintiff's employment discrimination, retaliation and hostile work environment claims under Title VII and CFEPA cannot stand because they rest solely on legal conclusions and do not, as a matter of law, provide sufficient factual grounds to comply with the plausibility standard set forth in *Iqbal,* 129 S.Ct. at 1949.

i. Title VII Disparate Treatment Claim

Discriminatory treatment claims under Title VII depend on the plaintiff's ability to show that (1) he is a member of a protected class; (2) he was qualified for his position; (3) he suffered an adverse employment action; and (4) the circumstances surrounding the employment action give rise to an inference of discrimination. *Adams–Martin v. CT Dept. of Dev. Services,* No.3:10–cv00099(VLB), 2012 WL 878306, \*16 (D.Conn. Mar. 14, 2012) (citing *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)).

Here, the first and second prongs of the test are satisfied because the Plaintiff is a Hispanic employee, and his complaint identifies him as a loyal employee with an excellent employment record. In addition, Plaintiff has arguably satisfied the third prong of the test by alleging that he was demoted and was suspended for three days to survive a 12(b)(6) challenge. However, courts have held that mere inconvenience or changes in job responsibilities do not rise to the level of materially adverse employment action. *See Galabya v. New York City Bd. of Educ.,* 202 F.3d 636, 640 (2d. Cir.2000) (holding that a demotion may constitute a materially adverse action only when "evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices' ") (quoting *Crady v. Liberty Nat'l Bank and Trust*

*Co.,* 993 F.2d 132, 136 (7th Cir.1993)). Likewise courts have found that a suspension without pay only in certain circumstances can constitute an adverse employment action. *See, e.g., Lovejoy–Wilson v. NOCO Motor Fuel, Inc.,* 263 F.3d 208, 223–224 (2d Cir.2001) (holding that one-week suspension without pay is adverse action, even if pay is later reimbursed, because plaintiff "at least suffered the loss of the use of her wages for a time"); *Page v. Connecticut Dep't of Pub. Safety, Div., of State Police,* 185 F.Supp.2d 149, 157 (D.Conn.2002) ("In this case, plaintiff was suspended for two days without pay. Thus, she lost wages. She was also orally counseled for three alleged incidents of unacceptable work behavior and then reprimanded in writing. These would be sufficient to support a jury's finding that she suffered adverse employment action."); *Cormier v. City of Meriden,* 420 F.Supp.2d 11, 21 (D.Conn.2006) (finding that "the one-day suspension without pay, which also resulted in a one-year loss of eligibility for the crew-leader premium, and the written disciplinary letters, which were placed in plaintiff's personnel file, can be considered adverse employment actions"); *Dobrynio v. Central Hudson Gas & Electric Corp.,* 419 F.Supp.2d 557, 564–565 (S.D.N.Y.2006) (rejecting "as a matter of law Plaintiff's contention that the loss of one day's pay worked a substantial change in the terms and conditions of his employment ... But being suspended for a single day, with no long term consequences whatever, is not an actionable adverse employment action because it is not *material*.") (emphasis in the original).

**\*6** Plaintiff's claim nonetheless fails as he has not alleged any facts which plausibly establish the final prong of the analysis. As to Defendant Velleca, the Plaintiff provides no factual grounds to provide a plausible basis for concluding that Defendant engaged in discrimination based on racial animus. Indeed, although Plaintiff complains about Defendant Velleca's history of racism and his "bias and bigotry toward [Plaintiff] on the basis of plaintiff's race," he provides no factual allegations to substantiate the conclusion. Plaintiff does not even attempt to show that an employee outside his protected class, who was "similarly situated" and who "engaged in comparable conduct," was treated more favorably by the Defendant. *Ruiz v. Cnty. Of Rockland,* 609 F.3d 486, 493–4 (2d Cir.2010) (holding that an inference of discrimination may be found where the plaintiff is treated less favorably than a similarly situated employee not in plaintiff's protected class). What is more, the Plaintiff makes clear that Defendant Velleca's retaliation stemmed from the parties' July 26 dispute regarding personnel transfers, and not from Defendant's alleged racial prejudice.

As to Defendants Limon and the City of New Haven, the Plaintiff offers nothing more than the legal conclusion that Defendants have engaged in "invidious discrimination." Indeed, the complaint expressly states that Defendant Limon relied on false allegations, and not discriminatory prejudice, when he suspended Plaintiff for three days. Plaintiff has therefore failed to fulfill his burden of establishing a plausible inference of discrimination. Consequently, Plaintiff's Title VII disparate treatment claim is dismissed on this basis as well.

ii. Title VII Retaliation Claim

The Plaintiff also alleges that the Defendants exercised unlawful retaliation under Title VII. In order to establish a retaliation claim, a plaintiff must show: "(1) participation in a protected activity; (2) that the defendant knew of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action." *Hicks v. Baines,* 593 F.3d 159, 162 (2d. Cir.2010) (quoting *Jute v. Hamilton Sundstrand Corp.,* 420 F.3d 166, 173 (2d Cir.2005)). For the purposes of retaliation claims under Title VII, "adverse employment actions" include any "employer actions that would have been materially adverse to a reasonable employee." *Burlington Northern and Santa Fe Ry. Co. v. White,* 548 U.S. 53, 57, 126 S.Ct. 2405, 165 L.Ed.2d 345 (2006).

In this case, it does not appear that the Plaintiff filed a grievance with the EEOC or a proper complaint with the CHRO. Plaintiff did, however, engage in a protected act when he filed complaints with his supervisor and forwarded them to his Union, his attorney, and the Commission. *See Martin v. Town of Westport,* 558 F.Supp.2d 228, 245 (D.Conn.2008) ("[T]he filing of internal complaints of discrimination prohibited by CFEPA, or of a CHRO complaint, would constitute protected activities."). Nevertheless, even to the extent that the Plaintiff engaged in a protected activity, Plaintiff's claim must fail. After all, "the antiretaliation provision protects an individual not from all retaliation, but from retaliation that produces an injury or harm." *White,* 548 U.S. at 67. In his complaint, the Plaintiff fails to demonstrate that, as a result of filing his complaints, he suffered an adverse employment action rising to the level that a reasonable employee would have been deterred from complaining to the proper agency. *Id.* at 68; *see also Hicks,* 593 F.3d at 168 (holding that "reassignment of job duties is not immediately actionable,"

nor is the contention that defendant submitted false memoranda regarding plaintiff's work performance). For example, Plaintiff offers no factual enhancement whatsoever to support his conclusion that he "was wrongfully excluded from routine training as a result of the Defendants' continued unlawful conduct." Thus unsubstantiated, Plaintiff's Title VII retaliation claim is also dismissed on this basis.

### iii. Title VII Hostile Work Environment Claim

**\*7** Title VII also protects employees from being subjected to a discriminatorily hostile work environment. *Adams–Martin,* 2012 WL 878306, at \*34 (citing *Harris v. Forklift Sys. Inc.,* 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993)). Whether the Plaintiff's workplace is hostile under Title VII depends on the totality of the circumstances in each case; however, relevant factors may include the frequency, severity, and effect of the discriminatory conduct. *Harris,* 510 U.S at 23. To prevail in a hostile work environment claim, a plaintiff must show three elements: (1) that the plaintiff himself found the environment hostile, (2) that the environment would have been considered hostile to a reasonable person, and (3) the employee was subjected to the abusive environment because of his race or national origin. *Id.*

The Plaintiff complains that within the span of one month, he was subjected to two occasions of verbal abuse from Defendant Velleca, including shouting, swearing, and threats to "make [Plaintiff's] life miserable." Plaintiff also alleges that the Defendant ordered that Plaintiff be written up without just cause, and that Defendant submitted a false report that resulted in Plaintiff's suspension. Yet where a plaintiff's claim is based on facially race-neutral conduct, he must set forth enough evidence indicative of discrimination to establish "a basis from which a reasonable fact-finder could infer that those incidents were infected by discriminatory animus." *Alfano v. Costello,* 294 F.3d 365, 377 (2d Cir.2002). Here, despite Plaintiff's subjective view that the environment was abusive, Plaintiff has failed to allege facts plausibly demonstrating any kind of discriminatory abuse, let alone that which is so pervasive or severe "that the terms and conditions of [his] employment were thereby altered." *Leibovitz v. N.Y. City Transit Authority,* 252 F.3d 179, 188 (2d Cir.2001). To be sure, "hostile work environment cases [must] exclude from consideration personnel decisions that lack a linkage or correlation to the claimed ground of discrimination" to prevent the federal courts from "becom [ing] a court of personnel appeals." *Alfano,* 294 F.3d at 377. Thus, Plaintiff's unsubstantiated claim of hostile work environment on the basis of his race is dismissed on this basis as well.

### iv. CFEPA Claim

Furthermore, an employer violates the CFEPA if he discriminates "in terms, conditions or privileges of employment because of the individual's race, color ... [or] national origin." Conn. Gen.Stat. § 46a–60(a)(1). The Connecticut Supreme Court has held that claims of discrimination and retribution under the CFEPA are analyzed under the same model of analysis used in federal Title VII claims. *Jackson v. Water Pollution Control Auth. of City of Bridgeport,* 278 Conn. 692, 705–06, 900 A.2d 498 (2006). Therefore, for the same reasons discussed above, Plaintiff's claims under Connecticut State Law must also fail in their entirety.

### B. Equal Protection Claim

**\*8** The Plaintiff also alleges in his complaint that the government violated his right to Equal Protection under the Fourteenth Amendment. The government violates the Equal Protection Clause where it fails to treat "similarly situated people in a like manner ." *See Heusser v. Hale,* 777 F.Supp.2d 366, 382 (D.Conn.2011) (citing *Harlen Assocs. v. Incorporated Vill. of Mineola,* 273 F.3d 494, 499 (2d Cir.2001)). Where a plaintiff alleges that he was singled out for discriminatory treatment that was race-neutral on its face, however, the plaintiff must show that the defendant acted with a *purpose* to discriminate. *Hayden v. County of Nassau,* 180 F.3d 42, 50 (2d Cir.1999). That is, he must show that the defendant "selected or reaffirmed a particular course of action at least in part 'because of,' not merely 'in spite of,' adverse effects" upon members of a protected class. *Id.* (quoting *Personnel Administrator v. Feeney,* 442 U.S. 256, 279, 99 S.Ct. 2282, 60 L.Ed.2d 870 (1979)).

In this case, the Plaintiff fails to allege facts demonstrative of government action that was discriminatory on its face. At the same time, the Plaintiff also fails to create a plausible inference that Defendants acted with discriminatory purpose. Indeed, aside from his assertion that Defendant Velleca had a history of discriminatory conduct toward minority and female employees,

Plaintiff offers no grounds to support his assertion that the defendant "engaged in invidious discrimination" in this instance. As discussed above, the facts set forth in the complaint demonstrate that Defendant Velleca's inappropriate conduct was motivated by his disagreement with Plaintiff over the reorganization of the Major Crimes Unit rather than Plaintiff's race or ethnicity.

As for the Plaintiff's claims against Defendant Assistant Chief Limon (Count II), the Defendant cannot be held liable " 'merely because he held a high position of authority,' but can be held liable only of he was personally involved in the alleged deprivation ." *Back v. Hastings On Hudson Union Free School Dist.,* 365 F.3d 107, 127 (quoting *Black v. Coughlin,* 76 F.3d 72, 74 (2d Cir.1996)). While such direct involvement may in some cases be found where the defendant exhibits "deliberate indifference" by "failing to act on information indicating that unconstitutional acts were occurring," such will only be the case where "the defendant was grossly negligent in supervising subordinates who committed the wrongful acts." *Id.* (citing *Colon v. Coughlin,* 58 F.3d 865, 873 (2d Cir.1995)). Plaintiff has failed to supply a factual basis for so finding in this case. *See Id.* at 127 (finding no "deliberate indifference" where defendant's response was not "clearly unreasonable in light of known circumstances"). Indeed, Plaintiff merely alleges that Defendant Limon acted on false information in disciplining the Plaintiff. Thus, Plaintiff's Equal Protection claim is dismissed as a matter of law.

### C. First Amendment Retaliation Claim

**\*9** It is well-established that a government employee who is speaking as a citizen on matters of public concern is protected from retaliation for his speech under the First Amendment. *Garcetti v. Ceballos,* 547 U.S. 410, 419, 126 S.Ct. 1951, 164 L.Ed.2d 689 (2006). However, speech by a public employee pursuant to the employee's official duties, is not protected from employer discipline. *Id.* at 421. In some instances, speech may be deemed " 'pursuant to 'a public employee's official job duties even though it is not required by, or included in, the employee's job description, or in response to a request by the employer.' " *Platt v. Incorporated Village of Southampton,* 391 Fed.Appx. 62, 64 (2d Cir.2010) (citing *Weintraub v. Bd. of Educ.,* 593 F.3d 196, 203 (2d Cir.2010)). In any case, to survive a motion to dismiss, a plaintiff must present sufficient facts to support the plausible inference that (1) his speech was protected, (2) the plaintiff was subjected to adverse action, and (3) the speech was the cause of the adverse action. *Scott v. Coughlin,* 344 F.3d 282, 286 (2d Cir.2003).

In this case, the Plaintiff, a Detective in the Major Crimes Unit, does not have First Amendment protection for his speech where he spoke out in protest against the manner in which the Unit was being operated. *See Garcetti,* 547 U.S. at 418 (holding that, insofar as the speech "has some potential to affect the entity's operations," the government "has broader discretion to restrict speech"). Plaintiff alleges that he "spoke out on matters of public concern" because he was worried that the personnel transfers would put the public at risk. In support of his allegation, he claims that he was not on the transfer list at the time of his speech, and thus was clearly concerned with public safety rather than his own position. Even if the Court draws all reasonable inferences from such allegations which are entitled to an assumption of truth, it is clear that Plaintiff's alleged speech was made in his capacity as a police officer and not as a citizen on a matter of public concern. Consequently, Plaintiff's speech is not protected as a matter of law. *See Platt,* 391 Fed.Appx at 64 (finding no protected speech where plaintiff raised concerns regarding the adverse impact of an inter-department relationship on public safety because "we cannot say that a police officer speaking to a public official about his concerns over public safety issues is speaking in his capacity as a citizen, as opposed to his capacity as a police officer"); *Carter v. Incorporated Village of Ocean Beach,* 415 Fed. Appx. 290, 291 (2d Cir.2011) ("Plaintiffs' allegations establish no more than that they reported what they believed to be misconduct by a supervisor up the chain of command—misconduct they knew of only by virtue of their jobs as police officers and which they reported as 'part-and-parcel of [their] concerns about [their] ability to properly execute [their] duties.' ") (quoting *Weintraub,* 593 F.3d at 203); *Pisano v. Mancone,* No. 08 Civ. 1045(KMW), 2011 WL 1097554, at \*13 (S.D.N.Y. Mar.18, 2011) (holding that speech regarding lack of departmental rules or policies, that chief of police was issuing allegedly unlawful orders, that another police officer was not qualified and that the chief of police had directed improper alteration of payroll records "concerned the internal working of the police department, as well as issues of public safety" and that since such speech was in furtherance of the plaintiff's duties as a police sergeant it was part and parcel of his concerns about his abilities to execute that duty and therefore not protected under the First Amendment); *Frisenda v. Incorporated Village of Malverne,* 775 F.Supp.2d 486, 509 (E.D.N.Y.2011) (Fact that officer's memorandum to police chief discussing failure by members of the department to follow procedure in responding to emergency situations was written by the officer at his home did not "magically transform his speech as public employee into speech as private citizen,

as would support his First Amendment retaliation claims" as the speech was "made in connection with, and during course of, lieutenant's job duties.").

**\*10** The Plaintiff's alleged speech concerning the departmental transfers and its "public safety" impact undeniably concerned the internal workings of the police department and was clearly in furtherance of Plaintiff's duties as a Detective in that it was "part and parcel of his concerns about his ability to properly execute" those duties. *Weintraub*, 593 F.3d at 203. The fact that Plaintiff was not one of the officers on the transfer list did not magically transform his speech as a public employee into speech as private citizen. Thus, even insofar as the Plaintiff was concerned about the adverse effects of the Unit transfers on public safety, he expressed his concerns in the capacity of a police officer when he spoke to the Lieutenant in his office at the Lieutenant's request. Therefore, the Plaintiff has not plausibly stated a First Amendment Retaliation claim and his claim is accordingly dismissed.

### D. Substantive Due Process Claim

Additionally, the Plaintiff claims that the government deprived him of his right to substantive due process in the course of his employment. Government conduct violates a plaintiff's Fourteenth Amendment right to substantive due process only where it is "so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *County of Sacramento v. Lewis*, 523 U.S. 833, 847 n. 8, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998). Constitutional violations do not, in and of themselves, "shock the conscience" for the purposes of substantive due process. *Velez v. Levy*, 401 F.3d 75, 94 (2d Cir .2005). Therefore, where factual allegations shock the conscience only insofar as they constitute specific constitutional violations, plaintiffs may not seek redress under substantive due process. *See Id.* (dismissing substantive due process claims where allegations amounted to First Amendment and Equal Protection violations). Consequently, a substantive due process claim will not survive a motion to dismiss where it is either (1) subsumed by other constitutional claims, or (2) does not amount to a substantive due process violation as a matter of law.

First, "Where a particular Amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment ... must be the guide for analyzing' such a claim," and plaintiffs may not resort to the more general alternative category of substantive due process. *Albright v. Oliver*, 510 U.S. 266, 273, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994) (citing *Graham v. Connor*, 490 U.S. 386, 395, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989)). Under this rule, substantive due process claims must be dismissed where they are merely duplicative of claims explicitly protected under other constitutional sources. *See Kia P. v. McIntyre*, 235 F.3d 749, 758 (2d Cir.2000) (analyzing detention claims under the Fourth Amendment rather than substantive due process).

The Plaintiff's claim that he was wrongly retaliated against after exercising his right to free speech must be analyzed under the First Amendment and not substantive due process. *See Velez*, 401 F.3d at 94 (denying to analyze plaintiff's First Amendment claim under a substantive due process rubric where plaintiff alleged that she was removed from the school board and defamed as a result of her speech). Moreover, the Plaintiff's claim that the government engaged in invidious discrimination against him merely duplicates his Equal Protection claims, as the Plaintiff does not allege any egregious facts beyond those comfortably subsumed by the alternative clause. *See Hogan v. State of Conn. Judicial Branch*, 220 F.Supp.2d 111, 124 (D.Conn.2002) (finding no substantive due process claim where plaintiff claimed that he was terminated on the basis of race since "the equal protection clause provides explicit textual protection against race-motivated state action"). For these reasons, the Plaintiff's substantive due process claims are dismissed.

**\*11** The Plaintiff's substantive due process claims must also be dismissed because they do not allege facts that are so arbitrary or egregious as to "shock the conscience" as a matter of law. *See County of Sacramento*, 523 U.S. at 845 ("[O]nly the most egregious official conduct" is arbitrary or egregious as a matter of law.); *see also Collins v. Harker Heights*, 503 U.S. 115,129 (1992) (holding that "particularly in the area of public employment," a claim "analogous to a fairly typical tort claim under state law" does not amount to a substantive due process violation). While no precise test can determine whether government conduct "shocks the conscience," the query necessarily depends on "the state of mind of the government actor and the context in which the action was taken." *See O'Connor v. Pierson*, 426 F.3d 187, 203 (2d Cir.2005) (holding that intent to cause harm

may in some cases constitute a violation, while "deliberate indifference" only "shocks the conscience "in situations where the government owes a special duty of care to those in its charge").

The Plaintiff alleges that Defendant Velleca fabricated incidents of misconduct in order to impugn the Plaintiff's reputation, causing him to be reprimanded in writing, transferred, and suspended. Yet however wrongful such alleged conduct may be, it does not plausibly state conduct that amounts to a substantive due process claim as a matter of law. *See Hogan,* 220 F.Supp.2d at 123 (dismissing a substantive due process claim where defendant allegedly made him a scapegoat and had him wrongfully terminated on that basis). Nor do Plaintiff's allegations that Defendant created a hostile environment by on one occasion yelling, swearing at, and on another occasion threatening the Plaintiff amount to a violation of substantive due process. *See Richards v. Connecticut Dept. of Corr.,* 349 F.Supp.2d 278, 293 (D.Conn.2004) (holding that, while "unprofessional and unto plausible necessary," the government-employer's conduct did not shock the conscience where defendant yelled, swore at, and berated plaintiff, who was then placed on leave, transferred, and reprimanded in writing).

As to Defendant Limon (Count II), the Plaintiff does not allege that the Defendant was aware of Defendant Velleca's allegedly unlawful behavior, but rather, asserts only that Limon wrongly credited Defendant Velleca's claims over the Plaintiff's. Yet even had Limon been aware of Velleca's acts, the Defendant's alleged failure to act does not constitute a basis for the Plaintiff's claim. *See Goldfarb v. Town of W. Hartford,* 474 F.Supp.2d 356, 371 (D.Conn.2007) (rejecting plaintiff's substantive due process claim where defendant allegedly failed to respond to plaintiff's complaints or prevent further harassment to plaintiff). Indeed, while "deliberate indifference" to a supervisee's wrongful behavior may "shock the conscience "in situations where the government owes a special duty of care to those in its charge," such as a government detainee, this is not such a case. *O'Connor,* 426 F.3d at 203. Therefore, because the Plaintiff does not, as a matter of law, allege facts that "shock the conscience," his substantive due process claim is dismissed.

## E. Procedural Due Process Claim

**\*12** Additionally, the state acts in violation of the Fourteenth Amendment when it deprives an individual of property without due process of law. *Cleveland Bd. Of Educ. V. Loudermill,* 470 U.S. 532, 541, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985). "In analyzing plaintiffs' procedural due process claims, the court must first determine (1) whether plaintiffs possessed a protected liberty or property interest, and, if so, (2) what process plaintiffs were due before they could be deprived of that interest." *Sealed v. Sealed,* 332 F.3d 51, 55 (2d Cir.2003). As to the first inquiry, depriving an individual of his livelihood may in some cases constitute a property depravation requiring due process for the purposes of the Fourteenth Amendment. *Loudermill,* 470 U.S. at 543. As to the second, "due process is flexible and calls for such procedural protections as the particular situation demands." *Morrissey v. Brewer,* 408 U.S. 471, 481, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972). Nevertheless, three factors may be balanced to determine what process is due in a given situation: " "First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest." *Mathews v. Eldridge,* 424 U.S. 319, 335, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976).

In this case, the Plaintiff fails to adequately allege a procedural due process violation because he makes no reference to facts providing a basis for the claim. The Plaintiff alleges that he was suspended for three days and arbitrarily subjected to punishment without appropriate opportunity for adequate review. Yet the Plaintiff fails to elucidate his point by describing what process he was due. *See DeLoreto V. Ment,* 944 F.Supp. 1023, 1034 (D.Conn.1996) (dismissing an employment depravation claim where plaintiffs failed to present allegations as to "what procedural due process rights they [were] claiming entitlement"). Indeed, in this case, Plaintiff does allege that he took advantage of various grievance procedures, suggesting that he was not, in fact, deprived of adequate process as a matter of law. *See Gilbert v. Homar,* 520 U.S. 924, 932, 117 S.Ct. 1807, 138 L.Ed.2d 120 (1997) (holding that no pre-depravation hearing was required where an employee faces only a temporary suspension without pay and not termination). After all, a plaintiff does not have a due process claim merely because he is unhappy with the results of the process he is provided. *See Martin v. Town of Westport,* 329 F.Supp.2d 318, 335 (D.Conn.2004) (holding that adequate process had been provided where plaintiff took advantage of collective bargaining agreement procedures after being terminated,

and merely disagreed with the results). For the foregoing reasons, the Plaintiffs procedural due process claim is dismissed as a matter of law.

### F. Municipal Liability Claim

In regard to Count III of Plaintiff's claim, to establish municipal liability for the conduct of city employees, "a plaintiff must show that the violation of his constitutional rights resulted from a municipal custom or policy" that caused the violation. *Ricciuti v. N.Y.C. Transit Auth.,* 941 F.2d 119, 122 (2d Cir.1991). In some cases, such an unlawful policy may be inferred where "the municipality had notice of but repeatedly failed to make any meaningful investigation" into allegations that its agents had violated constitutional rights. *Id.*

**\*13** In Count III, Plaintiff alleges that Defendant City of New Haven displayed "deliberate indifference" to the violation of Plaintiff's constitutional rights. Such unlawful indifference, Plaintiff claims, evinces "a municipal policy or custom" that makes Defendant City of New Haven liable in this case. Plaintiff fails, however, to provide a factual basis for his claim. The fact that Defendant City of New Haven "acknowledged that 'some of Lt. Velleca's actions were inappropriate for a supervisor' " and failed to act does not provide a plausible inference that Defendant deliberately and repeatedly ignored allegations of conduct that plausibly amounted to a constitutional violation. Nor does the threadbare claim demonstrate that "through its *deliberate* conduct, the municipality was the 'moving force' behind the injury alleged." *Bd. of County Com'rs of Bryan County, Okl. v. Brown,* 520 U.S. 397, 404, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997). Plaintiff's allegations against the City are replete with conclusions devoid of any factual enhancement that would render such conclusions plausible under *Iqbal.* Absent any factual allegations supporting the plausible inference of "a direct causal link between the municipal action and the deprivation of federal rights," the Plaintiff's claim must be dismissed.

### G. Intentional Infliction of Emotional Distress Claim

Liability for intentional infliction of emotional distress depends on the plaintiff's ability to establish four elements: (1) that the defendant intended to inflict emotional distress, or knew or should have known that emotional distress would result from his conduct; (2) that the defendant's conduct was extreme and outrageous; (3) that the defendant's conduct caused the plaintiff's distress; and (4) that the plaintiff's distress was severe. *Miner v. Town of Cheshire,* 126 F.Supp.2d 184, 194 (D.Conn.2000) (quoting *Petyan v. Ellis,* 200 Conn. 243, 253, 510 A.2d 1337 (1986)). To constitute "extreme and outrageous conduct," the action must be "so extreme and outrageous that it goes beyond all possible bounds of decency, is regarded as atrocious, is utterly intolerable in a civilized society," and causes "mental distress of a very serious kind." *Id.*

In Count I, Plaintiff claims that Defendant Velleca verbally threatened him, making him fear for his safety both at work and at home. He also alleges that Defendant issued false negative reports about Plaintiff and caused him to be unfairly disciplined. Plaintiff asserts that, as a result of the psychological trauma caused by Defendant, he was forced to leave work and take a sick day. Yet however ill-founded and improper Defendant's alleged actions may have been, they do not, as a matter of law, arise to level of egregious conduct required to substantiate a claim of intentional infliction of emotional distress. *See Miner v. Town of Cheshire,* 126 F.Supp.2d 184, 195 (D.Conn.2000) (holding that "insults, verbal taunts, threats, indignities, annoyances, petty oppressions or conduct that displays bad manners or results in hurt feelings do not support a claim for intentional infliction of emotional distress"); *Armstrong v. Chrysler Financial Corp. and Roger Pinneault,* No. 3:97CV1557, 1998 WL 342045, at \*5 (D.Conn. May 14, 1998) ("Mere insults, indignities, annoyances, or conduct that displays bad manners or results in hurt feelings, is insufficient" and therefore holding that Plaintiff failed to plausibly state claim for intentional infliction of emotional distress where employer criticized, insulted, demeaned, and embarrassed plaintiff on a daily basis). Indeed, even unfounded discipline does not amount to extreme and outrageous behavior when conducted in an employment setting. *See Hill v. Pinkerton Sec. & Investigation Services, Inc.,* 977 F.Supp. 148, 160 (D.Conn.1997) (finding no claim where plaintiff was disciplined, reprimanded, and transferred); *see also Barbuto v. William Backus Hosp.,* 1995 WL 235068, \*8 (Conn.Super.) (April 13, 1995, *Hendel, J.*) (dismissing a claim where plaintiff suffered a two day suspension).

**\*14**  Additionally, while Plaintiff alleges that Defendant Limon ignored his complaints, failure to prevent another employee from harassing a complainant cannot properly be considered intentional infliction of emotional distress as a matter of law. *See Abate v. Circuit–Wise, Inc.,* 130 F.Supp.2d 341, 348 (D.Conn.2001) (finding that failure to prevent supervisor from sexually harassing plaintiff-employee was not extreme and outrageous conduct). Furthermore, while the Plaintiff alleges that Defendant Limon participated in transferring and suspending the Plaintiff for fabricated reasons, as discussed above, unfair discipline, even to the extent of termination of employment, does not amount to extreme and outrageous conduct. *See Venterina v. Cummings & Lockwood,* 117 F.Supp.2d 114, 120 (D.Conn.1999) (holding that false accusations and wrongful termination is insufficient to sustain a claim). Thus, unsubstantiated, Plaintiff's Count IV claims against Defendant Velleca and Defendant Limon are dismissed.

Lastly, the City correctly asserts that under Connecticut law, a municipality cannot be liable for the intentional and/or malicious conduct of its employees or agents. Indeed, the Connecticut Supreme Court has held that under Conn. Gen.Stat. § 52–55n, a municipality could not be held liable for the intentional infliction of emotional distress by one its employees. *Pane v. City of Danbury,* 267 Conn. 669, 686, 841 A.2d 684 (2004).

*Conclusion*
For the foregoing reasons, Defendants' motion to dismiss Plaintiff's complaint in its entirety is GRANTED. The Clerk is directed to close the case.

IT IS SO ORDERED.

**All Citations**

Not Reported in F.Supp.2d, 2012 WL 4445475

---

**End of Document**                                            © 2025 Thomson Reuters. No claim to original U.S. Government Works.

335 Fed.Appx. 102
This case was not selected for publication in West's Federal Reporter.
United States Court of Appeals,
Second Circuit.

Sandra SHEEHY, et al., Plaintiffs–Appellants,

v.

Thomas P. BROWN, et al., Defendants–Appellees.

No. 08–0102–cv.
|
June 23, 2009.

**Synopsis**
**Background:** Plaintiffs appealed, pro se, a judgment of the United States District Court for the Western District of New York, Telesca, J., sua sponte dismissing their complaint.

**Holdings:** The Court of Appeals held that:

[1] plaintiffs failed to establish § 1983 claims arising out of their allegedly false prosecutions, and

[2] plaintiffs failed to state a claim for conspiracy to interfere with civil rights.

Affirmed.

West Headnotes (2)

[1]    **Civil Rights** 🔑 **Criminal prosecutions**

Plaintiffs failed to allege that their convictions or sentences were invalidated or otherwise expunged, as required to establish § 1983 claims arising out of their allegedly false prosecutions. 42 U.S.C.A. § 1983.

50 Cases that cite this headnote

[2]    **Conspiracy** 🔑 **Civil rights conspiracies**

Plaintiffs failed to allege the formation of a conspiracy, and overt acts in furtherance of such conspiracy, as required to state a claim for conspiracy to interfere with civil rights. 42 U.S.C.A. § 1985.

395 Cases that cite this headnote

**\*103** **UPON DUE CONSIDERATION,** it is hereby **ORDERED, ADJUDGED AND DECREED** that the judgment of the district court is **AFFIRMED.**

**Attorneys and Law Firms**

Sandra Sheehy, pro se.

Robert Sheehy, pro se.

Patrick Sheehy, pro se.

Bobbi Sheehy, pro se.

Billie Sheehy, pro se.

Casey Sheehy, pro se.

Sherry Sheehy, pro se.

PRESENT: Hon. PIERRE N. LEVAL, Hon. ROSEMARY S. POOLER and Hon. B.D. PARKER, Circuit Judges.

### SUMMARY ORDER

**\*\*1** Plaintiffs–Appellants Sandra, Robert, Patrick, Bobbi, Billie, Casey, and Sherri Sheehy, *pro se,* appeal from the judgment of the United States District Court for the Western District of New York (Telesca, J.), *sua sponte* dismissing the complaint, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). We assume the parties' familiarity with the facts, procedural history and issues on appeal.

Having reviewed *de novo* the district court's *sua sponte* dismissal under § 1915(e), *see Giano v. Goord,* 250 F.3d 146, 149–50 (2d Cir.2001), we conclude that the district court did not err in dismissing Appellants' complaint.

**[1]** First, any 42 U.S.C. § 1981 or § 1983 claim against Appellees Lucy or Edward Sherwood, Thomas Fuoco, Mark Wattenberg, or Steve Presutti was properly dismissed, as private actors and institutions generally are not proper § 1983 defendants. *See American Mfrs. Mut. Ins. Co. v. Sullivan,* 526 U.S. 40, 49–50, 119 S.Ct. 977, 143 L.Ed.2d 130 (1999) (§ 1983 actions do not reach purely private conduct). Additionally, for an individual to recover damages for an allegedly unconstitutional conviction or imprisonment, he or she "must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal ... or called into question by a federal court's issuance of a writ of habeas corpus...." *Heck v. Humphrey,* 512 U.S. 477, 486–87, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994). Thus, any § 1983 claims arising out of the allegedly false prosecutions of Sandra, Patrick, or Robert Sheehy were appropriately dismissed, as Appellants did not allege that their convictions or sentences were invalidated or otherwise expunged. *Id.*

**\*104** As for the American Society for the Prevention of Cruelty to Animals, the Allegany County Society for the Prevention of Cruelty to Animals, and Appellee Presutti, claims against these defendants were properly dismissed, as Appellants did not allege any wrongdoing on their part or specify how they were involved in the constitutional violations alleged. *See* 28 U.S.C. § 1915(e)(2). Next, to the extent that Appellants challenge the conduct of county district attorneys or state court judges, such actors are entitled to immunity. *Nixon v. Fitzgerald,* 457 U.S. 731, 766, 102 S.Ct. 2690, 73 L.Ed.2d 349 (1982); *Imbler v. Pachtman,* 424 U.S. 409, 430–31, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976); *Buckley v. Fitzsimmons,* 509 U.S. 259, 273, 113 S.Ct. 2606, 125 L.Ed.2d 209 (1993).

Appellants also assert § 1983 claims against: (1) county sanitation workers for entering the Sheehys' property, in violation of their property and privacy rights; (2) state troopers for use of excessive force and retaliation; and (3) Allegany County Department of Social Services employees for entering the Sheehys' property and removing the Sheehy children from their homes, in violation of their First, Fourth, and Ninth Amendment rights. Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Rule 8 "demands more than an unadorned,

the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal,* ––– U.S. ––––, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009). Thus, a pleading that only "tenders naked assertions devoid of further factual enhancement" will not suffice. *Id.* (internal citations and alterations omitted). We conclude that because the Appellants' § 1983 allegations are so vague as to fail to give the defendants adequate notice of the claims against them, the district court did not err in dismissing them.

 **2   [2]   Appellants also assert claims under § 1985, for which a plaintiff must allege: (1) a conspiracy, (2) which has an intent or purpose to deprive a person of equal protection of the law; (3) an act in furtherance of the conspiracy; (4) which results in an injury to a person, or a person's property, or the deprivation of a federal constitutional right. *See Mian v. Donaldson, Lufkin & Jenrette Securities Corp.,* 7 F.3d 1085, 1087 (2d Cir.1993) (per curiam). Here, the Appellants' claims of conspiracy failed to specifically allege (1) the formation of a conspiracy; or (2) overt acts in furtherance of such conspiracy. Thus, the district court correctly dismissed any claims brought pursuant to §§ 1985 and 1986.

To the extent that Appellants assert claims based on the violation of federal criminal statutes, such as 18 U.S.C. §§ 241–242, these claims are not cognizable, as federal criminal statutes do not provide private causes of action. *See Robinson v. Overseas Military Sales Corp.,* 21 F.3d 502, 511 (2d Cir.1994). In addition, any claim brought under 42 U.S.C. § 2000d, which prohibits the exclusion of individuals from a federally funded program or activity on the basis of race, color, or national origin, properly was dismissed, as Appellants did not allege that they were excluded from a federally funded program or activity and, thus, no claim exists under that statute. Similarly, although former 42 U.S.C. § 13981 authorized a cause of action arising out of a crime of violence motivated by gender, the Supreme Court has held that statute unconstitutional. *See United States v. Morrison,* 529 U.S. 598, 601, 120 S.Ct. 1740, 146 L.Ed.2d 658 (2000).

We have reviewed Appellants' remaining arguments and find them to be without merit. We also note here that we see no  *105 indication in the record that Appellants perfected service on any of the defendants in this case.

Therefore, for the reasons stated above, the judgment of the district court is AFFIRMED.

**All Citations**

335 Fed.Appx. 102, 2009 WL 1762856

---

**End of Document**                                                    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Case 5:25-cv-01648-LEK-MJK    Document 7    Filed 12/19/25    Page 77 of 89

Sposato v. Carey, Not Reported in Fed. Supp. (2023)

🚩 KeyCite Yellow Flag

Dismissed as Moot by   Sposato v. Carey,   N.D.N.Y.,   June 26, 2023

2023 WL 12107649
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Richard SPOSATO, Plaintiff,
v.
Paul G. CAREY, et al., Defendants.

5:23-CV-364 (TJM/ATB)
|
Signed April 10, 2023

**Attorneys and Law Firms**

RICHARD SPOSATO, Plaintiff, pro se

### ORDER and REPORT-RECOMMENDATION

Andrew T. Baxter, United States Magistrate Judge

 **\*1**  The Clerk has sent to the court for review a complaint brought pursuant to 42 U.S.C. § 1983, filed by plaintiff Richard Sposato. (Dkt. No. 1) ("Compl."). Plaintiff has also moved to proceed in forma pauperis. (Dkt. No. 2).

### I. IFP Application

Plaintiff declares in his IFP application that he is unable to pay the filing fee. (Dkt. No. 2). After reviewing his application, this court finds that plaintiff is financially eligible for IFP status.

However, in addition to determining whether plaintiff meets the financial criteria to proceed IFP, the court must also consider the sufficiency of the allegations set forth in the complaint in light of 28 U.S.C. § 1915, which provides that the court shall dismiss the case at any time if the court determines that the action is (i) frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915 (e)(2)(B)(i) -(iii).

In determining whether an action is frivolous, the court must consider whether the complaint lacks an arguable basis in law or in fact. *Neitzke v. Williams,* 490 U.S. 319, 325 (1989). Dismissal of frivolous actions is appropriate to prevent abuses of court process as well as to discourage the waste of judicial resources. *Neitzke,* 490 U.S. at 327; *Harkins v. Eldridge,* 505 F.2d 802, 804 (8th Cir. 1974). Although the court has a duty to show liberality toward *pro se* litigants, and must use extreme caution in ordering *sua sponte* dismissal of a *pro se* complaint before the adverse party has been served and has had an opportunity to respond, the court still has a responsibility to determine that a claim is not frivolous before permitting a plaintiff to proceed. *Fitzgerald v. First East Seventh St. Tenants Corp.,* 221 F.3d 362, 363 (2d Cir. 2000) (finding that a district court may dismiss a frivolous complaint *sua sponte* even when plaintiff has paid the filing fee).

To survive dismissal for failure to state a claim, the complaint must contain sufficient factual matter, accepted as true, to state a claim that is "plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S.

**Sposato v. Carey, Not Reported in Fed. Supp. (2023)**

Case 5:25-cv-01648-LEK-MJK    Document 7    Filed 12/19/25    Page 78 of 89

544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Bell Atl. Corp.*, 550 U.S. at 555).

## II. **Complaint**

Plaintiff is suing twenty-five defendants for alleged constitutional violations stemming from various traffic stops affected on him between May 2021 and December 2022. (*See generally,* Compl.). The named defendants include municipalities and their representative officials, local government agencies, judicial officers and their employees, prosecutors, and law enforcement officers.

Plaintiff's allegations are consistent with those ideologies shared by "Sovereign Citizens," "a loosely affiliated group who follow their own set of laws and, accordingly, do not recognize federal, state, or local laws, policies or regulations as legitimate." *United States v. DiMartino*, 949 F.3d 67, 69 (2d Cir. 2020) (internal quotations omitted) (quoting *United States v. McLaughlin*, 949 F.3d 780, 2019 WL 7602324, at *1 n.1 (2d Cir. December 30, 2019)* (quoting Sovereign Citizens: A growing Domestic Threat to Law Enforcement, FBI Law Enforcement Bulletin (2011)). In this case, plaintiff contends, generally, that he was stopped, ticketed, and/or arrested, and his car was towed, on five separate occasions in violation of his constitutional rights while "exercising [his] Right to travel," i.e.

> **\*2** exercising [his] lawful right to travel upon the public passageways, in [his] private used automobile, not registered with the State of New York, or any State for that matter, with a vanity plate on the back of [his] 'used automobile' labeled 'PR1V4T3, DOT EXEMPT, FOR NON COMMERCIAL USE ONLY,' notifying any potential police officers that [his] private, used automobile is not within their limited scope of jurisdiction, as it's not being used for commercial purposes.

(Compl. 5-6). Plaintiff readily admits that he does not possess a driver license, because, as he contends, it is not "required of [him] by law." (*Id.* at 6).

Because the majority of plaintiff's claims are patently frivolous, and many of the named defendants are protected by immunity, the court will not endeavor to provide an in-depth recitation of all the facts alleged in plaintiff's 196 paragraph complaint. To the extent that plaintiff's allegations are relevant to individual causes of action, I will discuss them in my analysis.

## III. **Defendants Watson, Elsenbeck, Lynch and Nerber**

Plaintiff was stopped by defendant law enforcement officers Watson, Elsenbeck, Lynch and Nerber on May 28, 2021; March 8, 2022; March 18, 2022; and December 10, 2022, respectively. (Compl. at 5-8, 13-14, 20-21). In conjunction with these traffic stops and the numerous, associated instances when his vehicle was towed, plaintiff asserts that the previously named defendants violated his Fourth and Fourteenth Amendment rights when they "unlawfully stopped and arrested [plaintiff] and [his] car, in [his] lawful travel[.]" (Compl. at 23-29).

Plaintiff's claims alleging violations of constitutional proportion relative to the traffic stops are undermined by his own admissions in the complaint. A traffic stop is reasonable if the stopping officer has "probable cause or reasonable suspicion that the person stopped has committed a traffic violation or is otherwise engaged in or about to be engaged in criminal activity." *United States v. Gomez*, 877 F.3d 76, 86 (2d Cir. 2017) (citing *United States v. Stewart*, 551 F.3d 187, 191 (2d Cir. 2009)). Even a "minor" traffic violation meets this standard and provides probable cause for a stop. *United States v. Scopo*, 19 F.3d 777, 782 (2d Cir. 1994).

In this case, plaintiff, who apparently believes he is not subject to the laws of the state of New York, readily admits that when he was pulled over he was operating a vehicle in violation of New York Vehicle and Traffic Law § 402. [1] (Compl. at 5-6). Thus, it is undisputed that the officers had probable cause for the initial stop of plaintiff's vehicle. *See United States v. Stewart,* 551 F.3d 187, 191 (2d Cir. 2009) (quoting *United States v. Jenkins,* 452 F.3d at 212) ("no error in the District Court's determination that the initial basis for the stop of the SUV was valid because the officers reasonably believed that the SUV lacked license plates,

**Sposato v. Carey, Not Reported in Fed. Supp. (2023)**

Case 5:25-cv-01648-LEK-MJK    Document 7    Filed 12/19/25    Page 79 of 89

which would have been a violation of VTL § 402(1)(a)."); *United States v. Williams*, No. 11 CR. 228, 2011 WL 5843475, at *6 (S.D.N.Y. Nov. 21, 2011) (citing *People v. Smith*, 1 A.D.3d 965, 965-66 (4th Dep't 2003) ("The lack of a license plate on a vehicle generally will justify a stop of the vehicle for violation of Vehicle and Traffic Law § 402").

**\*3** Plaintiff also admits that he was driving in violation of *at least* two other vehicle and traffic laws, including driving a motor vehicle without a license in violation of New York Vehicle and Traffic Law § 509(1), and operating an unregistered vehicle in violation of New York Vehicle and Traffic Law § 401. (Compl. at 5-6). Thus, plaintiff's claims that the law enforcement officer defendants lacked probable cause to arrest him are wholly unsupported, defeating any claims related to false arrest/imprisonment and malicious prosecution. *See United States v. White*, 298 F. Supp. 3d 451, 458 (E.D.N.Y. 2018) ("As the Supreme Court and Second Circuit have made clear, an arrest is constitutionally proper even for minor traffic offenses."); *see also Thompson v. Kline*, 504 F. Supp. 3d 200, 208, 213 (W.D.N.Y. 2020) (recognizing that the existence of probable cause is a "complete defense" to claims for false arrest and malicious prosecution).

To the extent plaintiff is claiming the impoundment of his vehicle violated his due process or other constitutional rights, that claim would not be viable in light of the fact that he was operating an unregistered vehicle without a driver license. *See, e.g.*, *Carter v. Campanelli*, No. 22-CV-2702, 2022 WL 1667022, at *2-3 (E.D.N.Y. May 20, 2022) (finding no due process or other constitutional violations arising from the impoundment of a vehicle with a suspended registration); *Di Pompo v. Mendelson*, No. 21-CV-1340, 2022 WL 463317, at *3 (S.D.N.Y. Feb. 15, 2022), *on reconsideration in part*, 2022 WL 1093500 (S.D.N.Y. Apr. 7, 2022) ("Plaintiff concedes that the vehicle did not bear a valid registration, which provided probable cause to impound.").

For these reasons, plaintiff has failed to plausibly state a claim against defendants Watson, Elsenbeck, Lynch and Nerber, and the complaint should be dismissed as against them.


## IV. **Defendant Ryan**

Plaintiff further alleges that on June 19, 2021, at approximately 2:15 a.m., while "again exercising [his] right to travel in ... [his] car ... emergency lights were seen flashing behind [him]." (Compl. at 7). Plaintiff pulled into his mother's driveway, which was on the same road, at which time a Solvay Police vehicle "followed" plaintiff, "pulling up behind [him], parking in the driveway behind [him]." (*Id.*). Plaintiff "exited [his] car and proceeded to walk to the entrance of his mother's house, when at the moment [he] put [his] hand on the door knob and opened the side door to the garage, [he] felt a bullet go into [his] back, with a wire attached to it." (*Id.*). Plaintiff "grabbed the wire, broke it off from being attached to the bullet and proceeded to enter [his] mom's house." (*Id.*). Plaintiff then describes "roughly [five] police cars arriving on the scene, emergency lights flashing [sic] there was much commotion in the driveway, waking up my 84 yr. old mother from her sleep, with officers pounding on the house, yelling for me to come out." (*Id.*). After thirty minutes of "disturbance by the officers," a tow truck arrived and towed plaintiff's car. (*Id.*). Shortly thereafter, "everyone left the scene." (*Id.*).

After "going to bed to try to get some sleep," plaintiff's phone "started ringing from a restricted number, which [he] assumed was the Solvay police[.]" (*Id.*). Plaintiff "told the officer on the other end he was bothering [plaintiff], he had no probable cause of a crime, thus no jurisdiction to require [plaintiff] to stop and speak with the officers who had chased [plaintiff] with emergency lights flashing[.]" (*Id.*). Later that day, defendant Solvay Police Officer Matt Ryan called plaintiff "and told [him] to come in by the end of the weekend for processing, or else [plaintiff] could have a warrant out for [his] arrest." (Compl. at 8).

**\*4** Although plaintiff does not identify the individual who allegedly followed him to his mother's house and tased him in his factual allegations, plaintiff states in his Fifth Cause of Action that "Defendant, Matthew W. Ryan tried to initiate an unlawful arrest of a peaceful man, and, in doing so, pointed and fired a potentially lethal weapon upon Plaintiff, hitting an unarmed, peaceful Plaintiff in the back with a bullet, intentionally discharged from a taser gun." (Compl. at 28).

For the reasons previously set forth in this court's analysis of the claims asserted against the other police officer defendants, plaintiff's claims against defendant Ryan arising from the initial stop of his vehicle are not viable, as it is clear defendant Ryan has probable cause for the traffic stop.

**Sposato v. Carey, Not Reported in Fed. Supp. (2023)**

Case 5:25-cv-01648-LEK-MJK    Document 7    Filed 12/19/25    Page 80 of 89

Plaintiff also asserts an excessive force claim against defendant Ryan. " '[A]ll claims that law enforcement officers have used excessive force ... in the course of an arrest, investigatory stop, or other seizure of a free citizen should be analyzed under the Fourth Amendment and its reasonableness standard.' " *Ketcham v. City of Mount Vernon*, 992 F.3d 144, 148-49 (2d Cir. 2021) (quoting *Graham v. Connor*, 490 U.S. 386, 395 (1989) (emphasis and internal quotation marks omitted)). Examining the reasonableness of the force used "requires careful attention to the facts and circumstances of each particular case, including [1] the severity of the crime at issue, [2] whether the suspect poses an immediate threat to the safety of the officers or others, and [3] whether [the suspect] is actively resisting arrest or attempting to evade arrest by flight." *Id.* (quoting *Graham*, 490 U.S. at 396). An officer may not constitutionally employ "a degree of force beyond that which is warranted by the objective circumstances of an arrest." *Cugini v. City of New York*, 941 F.3d 604, 612 (2d Cir. 2019). It is well-established "that the use of entirely gratuitous force is unreasonable and therefore excessive." *Tracy v. Freshwater*, 623 F.3d 90, 99 n.5 (2d Cir. 2010).

In this case, plaintiff alleges that defendant Ryan violated plaintiff's constitutional right to be free from excessive force when he tased plaintiff in the back, while plaintiff walking into his mother's house, "unarmed." (Compl. at 28). Mindful of the obligation to liberally construe a pro se litigant's pleadings, *see, e.g., Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008), this court finds that plaintiff's Eighth Amendment excessive force claim against defendant Ryan survives initial review, and requires a response. [2]

## V. Judicial Immunity

### A. Legal Standards
With minor exceptions, judges are entitled to absolute immunity for actions relating to the exercise of their judicial functions. *Mireles v. Waco*, 502 U.S. 9, 9-10 (1991). Judicial immunity has been created for the public interest in having judges who are "at liberty to exercise their functions with independence and without fear of consequences." *Huminski v. Corsones*, 396 F.3d 53, 74 (2d Cir. 2004). Judicial immunity applies even when the judge is accused of acting maliciously or corruptly. *Imbler v. Pachtman*, 424 U.S. 409, 419 n.12 (1976) (citing *Pierson v. Ray*, 386 U.S. 547, 554 (1967)). Judicial immunity is immunity from suit, not just immunity from the assessment of damages. *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). The only two circumstances in which judicial immunity does not apply is when he or she takes action "outside" his or her judicial capacity and when the judge takes action that, although judicial in nature, is taken "in absence of jurisdiction." *Mireles*, 502 U.S. at 11-12.

**\*5** Injunctive relief against judges is also barred "unless a declaratory decree was violated or declaratory relief was unavailable." *Bobrowski v. Yonkers Courthouse*, 777 F. Supp. 2d 692, 711 (S.D.N.Y. 2011) (citing inter alia *Montero v. Travis*, 171 F.3d 757, 761 (2d Cir. 1999) (per curiam)). Although fairness and injustice may result on occasion, a judicial officer must be free to act on his or her own convictions in exercising the authority vested in him or her, "without apprehension of personal consequences...." *Id.* (citing inter alia *Mireles*, 502 U.S. at 10).

Whether an act by a judge is a "judicial one" relates to the "nature of the act itself" – whether it is a function that is necessarily performed by a judge. *Id.* (citing *Stump v. Sparkman*, 436 U.S. 349, 362 (1978)). The parties must have dealt with the judge in his or her "judicial capacity." *Id.* The court acts in "absence of all jurisdiction" when "it does not have any statutory or constitutional power to adjudicate the case." *Id.* (citing *Gross v. Rell*, 585 F.3d 72, 84 (2d Cir. 2009)). The judge will not be deprived of absolute immunity if he or she takes action that is merely "in excess" of his or her authority. *Id.* (citing *Mireles*, 502 U.S. at 12-13).

### B. Analysis
Plaintiff has named Town of Salina Justice Paul G. Carey and Village of Solvay Acting Justice Kara A. LaSorsa as defendants. The complaint alleges that plaintiff appeared in front of both Justices Carey and LaSorsa at "unlawful court proceeding[s] without personal and/or subject matter jurisdiction" over him, in connection with the charges stemming from his various traffic stops. (Compl. at 8-19, 22). Although Justice LaSorsa was originally presiding over plaintiff's court proceedings, she apparently recused herself on September 28, 2021, and plaintiff's case was moved to Salina Town Court before Justice Carey. (*Id.* at 11).

Sposato v. Carey, Not Reported in Fed. Supp. (2023)

Case 5:25-cv-01648-LEK-MJK    Document 7    Filed 12/19/25    Page 81 of 89

Plaintiff alleges that he received a "threatening letter" from Justice Carey to appear in court, violating his right to due process of law. (*Id.* at 11). Plaintiff unsuccessfully attempted to recuse Justice Carey from his criminal proceedings, because Justice Carey was also presiding over plaintiff's eviction case. (*Id.* at 12-13). Justice Carey also "forced" plaintiff to sign an order of protection against defendant Megan Cavaliere, the Village of Solvay assistant court clerk.[3] (*Id.* at 12, 16). Plaintiff contends that in conjunction with his criminal charges, Justice Carey commenced a bench trial on November 18, 2022, despite plaintiff's insistence on a trial by jury. (Compl. at 30).

Notwithstanding plaintiff's frivolous claim that Justices LaSorsa and Carey lacked jurisdiction over him, it is clear that these individuals were performing authorized judicial functions when each of the alleged violations took place. As stated above, a judge does not lose his or her judicial immunity because he or she is accused of acting with malice or corrupt intent. Thus, plaintiff's complaint should be dismissed as against defendant Justices LaSorsa and Carey.

## VI. Quasi-Judicial Immunity

### A. Legal Standards

**\*6** "The doctrine of quasi-judicial immunity extends absolute immunity to 'certain others who perform functions closely associated with the judicial process.' " *Marshall v. New York State Pub. High Sch. Athletic Ass'n, Inc.*, 374 F. Supp. 3d 276, 288 (W.D.N.Y. 2019) (quoting inter alia *Cleavinger v. Saxner*, 474 U.S. 193, 200 (1985)). Quasi-judicial immunity is absolute if the official's role "is 'functionally comparable' to that of a judge." *Butz v. Economou*, 438 U.S. 478, 513 (1978); *see Cleavinger*, 474 U.S. at 201 ("Absolute immunity flows not from rank or title or location within the Government, but from the nature of the responsibilities of the individual official." (internal quotation marks and citation omitted)); *Gross v. Rell*, 585 F.3d 72, 81 (2d Cir. 2009) ("Judicial and quasi-judicial immunity are both absolute immunities." (citations omitted)). In evaluating whether an official's duties are "functionally comparable" to those of a judge, courts should consider several factors, including:

> (a) the need to assure that the individual can perform his functions without harassment or intimidation; (b) the presence of safeguards that reduce the need for private damages actions as a means of controlling unconstitutional conduct; (c) insulation from political influence; (d) the importance of precedent; (e) the adversary nature of the process; and (f) the correctability of error on appeal.

*Cleavinger*, 474 U.S. at 200-02 (citing *Butz*, 438 U.S. at 512); *see also Rodriguez v. Weprin*, 116 F.3d 62, 66-67 (2d Cir. 1997) (extending immunity to court clerks when performing judicial functions).

Much like judicial immunity, "[a] defendant entitled to quasi-judicial immunity loses that privilege only if [he or] she acts in the clear absence of all jurisdiction." *Finn v. Anderson*, 592 F. App'x 16, 19 (2d Cir. 2014) (internal quotation marks and citation omitted). The scope of a judicial officer's jurisdiction, however,

> must be construed broadly in order to allow [him or] her to exercise [his or her] functions with independence and without fear of consequences[; m]ere evidence that an official's action was in error, was done maliciously, or was in excess of [his or her] authority does not undermine [a] claim to absolute immunity so long as it did not fall clearly outside all official authority.

*Id.* (internal quotation marks and citations omitted).

Sposato v. Carey, Not Reported in Fed. Supp. (2023)

Case 5:25-cv-01648-LEK-MJK    Document 7    Filed 12/19/25    Page 82 of 89

**B. Analysis**

Plaintiff has also sued various court employees as defendants in his complaint. On the morning of September 22, 2021, plaintiff "went down to the Solvay Village Court Clerk's office to inquire about who sent" an "unofficial" notice to appear in court that evening. (Compl. at 9). "[A]fter waiting around for approximately 10 minutes before anyone showed up at the window to attend to [plaintiff's] needs," defendant Solvay Court Clerk Megan Cavaliere "finally appeared[.]" (*Id.*). Plaintiff showed her the notice, asking her who sent it, to "which she rather rudely stated, 'the court sent it.' " (*Id.*). Plaintiff then alleges that "after being lied to, with an insufficient response, I proceeded to leave the premises on my own accord." (*Id.*). When plaintiff appeared in Salina Town Court on November 18, 2021, he was "handed an order of protection pertaining to [defendant Cavaliere], signed by [defendant Justice Carey], which [he] was forced to sign[.]" (Compl. at 11-12).

Plaintiff alleges that defendant Cavaliere, along with defendants Czerow, Hardy, and Williams, "conspired to fabricate frivolous charges, in relation to the assertion of Plaintiff's Rights, while questioning the competency of [defendant Cavaliere], the lawful authority of the Solvay police, and [defendant Justice LaSorsa]." (Compl. at 27). Plaintiff alleges that there was no justifiable basis for the filing of a police report and the order of protection issued against him relative to his interactions with defendant Cavaliere. (*Id.*).

**\*7** It is well settled that quasi-judicial immunity attaches when a court clerk undertakes "discretionary acts that implement judicial decisions or that are performed at the discretion or under the supervision of a judge." *Garcia v. Hebert*, No. 3:08-CV-95, 2013 WL 1294412, at \*12 (D. Conn. Mar. 28, 2013) (quoting *Bliven v. Hunt*, No. 05-CV-4852, 2005 WL 3409620, \*2 (E.D.N.Y. Dec. 12, 2005) (citations omitted)). Additionally, court clerks are absolutely immune from suit for "functions which are administrative in nature if the task was undertaken pursuant to the explicit direction of a judicial officer or pursuant to the established practice of the court." *Id.* (quoting *Humphrey v. Court Clerk for the Second Circuit*, No. 5:08-CV-0363 (DNH/DEP), 2008 WL 1945308, at \*2 (N.D.N.Y. May 1, 2008).

Plaintiff's allegations with respect to defendant Cavaliere are cryptic at best. Although plaintiff alleges that the order of protection is "without merit or fact of any threats ... made against Defendant Cavaliere, nor fear of perceived danger or injury in the future to [her,]" he has conveniently omitted the specifics of his interaction with her on September 22 $^{nd}$. (Compl. at 9). Thus, at base, plaintiff's claims against defendant Cavaliere fail to state a claim under Fed. R. Civ. P. 8. [4] In any event, to the extent plaintiff's claims against defendant Cavaliere stem from the tasks she was performing within the scope of her employment that day, i.e. responding to plaintiff's questions about his court appearance, she is protected from suit by quasi-judicial immunity. *See, e.g., Bloom v. New York State Unified Ct. Sys.,* No. 19-CV-7115, 2020 WL 6118828, at \*5 (E.D.N.Y. Oct. 16, 2020) (citing *Weiner v. State*, 710 N.Y.S.2d 325, 327 (N.Y. App. Div. 2000) ("The normal work of a court clerk who participates in the processing of legal proceedings is generally viewed as 'quasi-judicial,' thereby cloaking the clerk with judicial immunity."). Accordingly, the claims against defendant Cavaliere should be dismissed.

Moreover, at plaintiff's "bench trial" on November 18, 2022, "after a few minutes of [plaintiff] trying to protect [his] Rights, and calling for the arrest of [defendant Justice Carey]," Justice Carey "unlawfully ordered defendant court bailiffs Mike Quigley and John Lyons to arrest plaintiff for being in contempt of court. (Compl. at 19-20). Quigley and Lyons handcuffed plaintiff and took him away, "kidnapped outside the courtroom, for roughly 90 minutes." (Compl. at 20). Plaintiff has asserted a false arrest/imprisonment claim against defendants Quigley and Lyons.

"Neither the Supreme Court nor the Second Circuit has addressed the applicability of quasi-judicial immunity to court officers' conduct while responding to a judge's order, but there is a split among other circuit courts that have addressed the issue." *Bey ex rel. Palmgren v. Conte*, No. 18-CV-9594, 2019 WL 1745672, at \*3 (S.D.N.Y. Apr. 18, 2019) (identifying split among circuit courts). However, in this case, even if the court were to assume the more limited approach to quasi-judicial immunity adopted by the majority of circuit courts, extending the protection only to the acts authorized by court order and not to the manner in which it is executed, the defendant bailiffs in this case are entitled to quasi-judicial immunity. Plaintiff is challenging Justice Carey's direction to the bailiffs to restrain and "kidnap" plaintiff, and does not allege that Quigley and/or Lyons exceeded Justice Carey's

direction in the manner they executed the order, such as by the use of excessive force. Accordingly, Quigley and Lyons are entitled to quasi-judicial immunity and plaintiff's false arrest/imprisonment claims against them should be dismissed. *See Bey ex rel. Palmgren v. Conte*, 2019 WL 1745672 at \*4; *Martin v. Hendren*, 127 F.3d 720, 722 (8th Cir. 1997) (holding that officer directed by judge to restore order to courtroom is entitled to quasi-judicial immunity for handcuffing and removing individual from courtroom, and stating "[b]ecause judges frequently encounter disruptive individuals in their courtrooms, exposing bailiffs and other court security officers to potential liability for acting on a judge's courtroom orders could breed a dangerous, even fatal, hesitation.").

## VII. Prosecutorial Immunity

### A. Legal Standards

**\*8** Prosecutors are afforded absolute immunity from suit under section 1983 in matters associated with their prosecutorial functions, regardless of motivation. *Dory v. Ryan*, 25 F.3d 81, 83 (2d Cir. 1994) (prosecutorial immunity covers virtually all acts associated with the prosecutor's function, including conspiracies to present false evidence); *Bernard v. County of Suffolk*, 356 F.3d 495 (2d Cir. 2004) (absolute immunity shields prosecutors from suit pursuant to section 1983 for their alleged malicious or selective prosecution as well as for any misconduct in the presentation of evidence to the grand jury). The initiation and pursuit of prosecution, regardless of any alleged illegality, is protected by absolute prosecutorial immunity. *Peay v. Ajello*, 470 F.3d 65, 67-68 (2d Cir. 2006). It has also been held that a prosecutor is entitled to absolute immunity for his or her decision not to prosecute, regardless of the motivation for that decision. *Scloss v. Bouse*, 876 F.2d 287, 292 (2d Cir. 1989).

Absolute immunity is defeated only when the prosecutor is engaging in investigative functions. *Bernard v. County of Suffolk*, 356 F.3d at 502-503 (citation omitted). Absolute immunity has not been extended to situations in which the prosecutor gives legal advice to the police. *Burns v. Reed*, 500 U.S. 478, 492-93 (1991) (citations omitted). *See Brown v. Oneida County*, No. 6:15-CV-849, 2016 WL 4275727, at \*10 (N.D.N.Y. Aug. 12, 2016) (denying absolute immunity when precise actions of the prosecutor were unknown). In these situations, the prosecutor would be entitled only to qualified immunity.

### B. Analysis

Plaintiff names Onondaga County District Attorney William Fitzpatrick and Onondaga County Assistant District Attorneys Jed Hudson, Alphonse Williams, and Jeffrey D. Albert as defendants. Generally, plaintiff alleges that despite appearing for his many court appearances as directed, these defendants failed to prosecute his case for "over 15 months." (Compl. at 30).

On September 22, 2021, ADA Williams appeared at plaintiff's Solvay Village Court proceeding, where Justice LaSorsa entered a "not guilty" plea on plaintiff's behalf and adjourned the case until October 5, 2022. (Compl. 10). On September 29, 2022, plaintiff appeared for a Salina Town Court proceeding, at which, "to [his] surprise, for the first time in over 15 months," ADA Hudson "showed up to court to prosecute [plaintiff's] traffic cases[.]" (Compl. at 17). On November 18, 2022, the court commenced a trial against plaintiff, during which ADA Hudson "unlawfully prosecuted [plaintiff] during his continued forward movement of this VOID case." (Compl. at 19).

ADA Albert was responsible for "signing off" on a property release form for plaintiff on December 16, 2022, concerning the return of his vehicle after it was towed during a December 10, 2022 traffic stop. (Compl. 20-21). The form stipulated that plaintiff needed "proof of registration, insurance and the removal of an Ignition Interlock Device requirement" before his vehicle would be returned to him. (Compl. at 21).

DA Fitzpatrick is only mentioned once at the end of plaintiff's complaint, where it is alleged that he "abandon[ed] all pretenses of acting in accordance with prosecutorial lawful standards." (Compl. at 22). This is but one example of plaintiff's failure to plausibly allege the personal involvement of particular defendants in a violation of plaintiff's constitutional rights, which is a necessary element of a viable civil rights claim. [5]

In any event, because all of the claims against them relate to the prosecution of a criminal case, and other conduct "intimately associated with the judicial phase of the criminal process," these defendants are entitled to absolute immunity. *Brown v. Oneida County*, No. 6:15-CV-849, 2016 WL 4275727, at *10 (N.D.N.Y. Aug. 12, 2016) (citations omitted). Therefore, plaintiff's complaint should be dismissed as against defendants Fitzpatrick, Williams, Hudson, and Albert.

## VIII. Claims Against Municipalities and their Agencies

### A. Legal Standards

**\*9** A municipality may only be named as a defendant in certain circumstances. In *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978), the Supreme Court outlined the limited circumstances under which a municipality may be liable under Section 1983. A municipality may not be held liable solely because it employs a tortfeasor. *LaVertu v. Town of Huntington*, No. 13-CV-4378, 2014 WL 2475566, at *3 (E.D.N.Y. Apr. 4, 2014) (citing inter alia *Los Angeles County, Cal. v. Humphries*, __ U.S. __, 131 S. Ct. 447, 452 (2010)), *report recommendation adopted in relevant part*, 2014 WL 2506217 (E.D.N.Y. June 2, 2014). Only when the municipality, through the execution of its policies, actually deprives an individual of his constitutional rights, is it liable for the injury. *Monell*, 436 U.S. at 694.

"The existence of a municipal policy that gives rise to *Monell* liability can be established in four ways: (1) a formal policy endorsed by the municipality; (2) actions directed by the government's 'authorized decisionmakers' or 'those who establish governmental policy;' (3) a persistent and widespread practice that amounts to a custom of which policymakers must have been aware; or (4) a constitutional violation resulting from policymakers' failure to train municipal employees[.]" *Deferio v. City of Syracuse*, 770 F. App'x 587, 590 (2d Cir. 2019)(cleaned up). "Once a plaintiff has demonstrated the existence of a municipal policy, a plaintiff must then establish a causal connection, or an 'affirmative link,' between the policy and the deprivation of his constitutional rights. *Id.* (citing *Vippolis v. Vill. of Haverstraw*, 768 F.2d 40, 44 (2d Cir. 1985)); *see also Bd. of the Cty. Comm'rs v. Brown*, 520 U.S. 397, 404 (1997) (holding that plaintiff must "demonstrate that, through its deliberate conduct, the municipality was the 'moving force' behind the injury alleged").

A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train. *Connick v. Thompson*, 563 U.S. 51, 61 (2011) (citing *Oklahoma City v. Tuttle*, 471 U.S. 808, 822-823 (1985)) ("[A] 'policy' of 'inadequate training' " is "far more nebulous, and a good deal further removed from the constitutional violation, than was the policy in *Monell*"). To satisfy the statute, the municipality's "failure to train its employees in a relevant respect must amount to " 'deliberate indifference to the rights of persons with whom the [untrained employees] come into contact.' " *Id.* (quoting *Canton v. Harris*, 489 U.S. 378, 388 (1989)). "Only then 'can such a shortcoming be properly thought of as a city 'policy or custom' that is actionable under § 1983.' " *Id.* (quoting *Canton*, 489 U.S. at 389).

### B. Analysis

Plaintiff has named the Village of Solvay, the Town of Salina, and the County of Onondaga as defendants in his complaint. In plaintiff's Tenth Cause of Action, in which plaintiff asserts "*Monell* Liability," plaintiff asserts that the unconstitutional policies and/or practices promulgated by these entities includes

> unlawfully stopping vehicles, seizing property, arresting persons without reasonable suspicion, probable cause or lawful justification; misrepresenting or falsifying evidence, discouraging sheriff deputies and employees of the Office of the Sheriff from filing police reports of corrupt governmental employees; and using excessive force, without reasonable suspicion, probable cause or lawful justification, violating [plaintiff's] right to a speedy trial, and violating [plaintiff's] right to a Jury[.]

**\*10** (Compl. at 34).

Sposato v. Carey, Not Reported in Fed. Supp. (2023)

Case 5:25-cv-01648-LEK-MJK    Document 7    Filed 12/19/25    Page 85 of 89

To the extent plaintiff's claims against the named municipalities stem from the traffic stops affected against him and the related criminal charges subsequently imposed, as well as the repeated seizure of his vehicle, they are patently meritless. As previously set forth, plaintiff's allegations make clear that probable cause did exist for the defendant law enforcement officers to initially stop plaintiff's vehicle for lacking proper number plates, and for subsequently towing his vehicle and issuing him citations for numerous violations of the New York Vehicle and Traffic Law, which he readily admits to. Accordingly, plaintiff's *Monell* claims pertaining to the traffic stops fail because he has failed to sufficiently allege any associated unconstitutional policy or custom.

Plaintiff's *Monell* claims are also insufficient to the extent they stem from (1) the alleged use of excessive force by an unnamed Solvay Police Officer on June 19, 2021, (2) the allegedly unconstitutional order of protection issued by Justice Carey on November 18, 2021, and (3) the manner in which his criminal proceedings were handled. Even if plaintiff had established that any individual defendant violated his constitutional rights on these isolated occurrences, "a custom or policy cannot be shown by pointing to a single instance of unconstitutional conduct by a mere employee of the [municipality]." *Newton v. City of New York*, 566 F. Supp. 2d 256, 271 (July 16, 2008); *see also City of Okla. City v. Tuttle*, 471 U.S. 808, 823-24 (1985) ("Proof of a single incident of unconstitutional activity is not sufficient to impose liability under Monell, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker."); *Bird v. Cnty. of Westchester*, No. 20-CV-10076, 2022 WL 2263794, at *12 (S.D.N.Y. June 23, 2022) ("Plaintiff fails to allege the existence of any other similar incident, which dooms Plaintiff's claim because a custom or policy cannot be shown by pointing to a single instance of unconstitutional conduct by a mere employee of the municipality.") (citation and quotation marks omitted); *Santana v. City of N.Y.*, No. 15-CV-6715, 2018 WL 1633563, at *10 (S.D.N.Y. Mar. 29, 2018) ("[A] 'single incident alleged in a complaint, especially if it involved only actors below the policy-making level, does not suffice to show a municipal policy.' " (quoting *DeCarlo v. Fry*, 141 F.3d 56, 61 (2d Cir. 1998)); *Brogdon v. City of New Rochelle*, 200 F. Supp. 2d 411, 427 (S.D.N.Y. 2002) ("A single incident by itself is generally insufficient to establish the affirmative link between the municipal policy or custom and the alleged unconstitutional violation."). Accordingly, plaintiff has failed to state a viable *Monell* claim against the Village of Solvay, the Town of Salina, and the County of Onondaga.

Plaintiff has also named the Solvay Police Department and the Onondaga County District Attorney's Office as defendants. Neither is a proper defendant in this matter, as they are "merely administrative arms of a municipality, [and thus] do not have a legal identity separate and apart from the municipality and cannot sue or be sued." *Harris v. Tioga Cnty.*, No. 3:17-CV-932, 2023 WL 2604125, at *12 (N.D.N.Y. Mar. 23, 2023) (Courts have routinely ... conclude[d] that 'the District Attorney's Office is not a suable entity.') (citations omitted); *Kelly v. Guilderland Police Dep't*, No. 8:20-CV-235 (DNH/CFH), 2020 WL 6083454, at *3 (N.D.N.Y. Sept. 10, 2020), *report and recommendation adopted*, 2020 WL 6075844 (N.D.N.Y. Oct. 14, 2020) ("It is well established that '[a] police department is an administrative arm of [a] municipal corporation,' and 'cannot sue or be sued because it does not exist separate and apart from the municipality and does not have its own legal identity.' ") (citation omitted). Accordingly, these claims should also be dismissed for failure to state a claim.

## IX. Personal Involvement

### A. Legal Standards

**\*11** It has long been established that "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983[,]" and supervisory officials may not be held liable merely because they held a position of authority. *See Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (citations omitted); *Black v. Coughlin*, 76 F.3d 72, 74 (2d Cir. 1996). In *Colon v. Coughlin*, 58 F.3d 865 (2d Cir. 1995), the Second Circuit articulated standards for courts to use when determining personal involvement or supervisory liability. [6]

However, after the Supreme Court's decision in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the factors articulated in *Colon* were called into question. Recently, pursuant to *Iqbal*, and in the context of the appeal of a qualified immunity issue, the Second Circuit has specifically revised its standard for determining personal involvement or supervisory liability, finding that the *Colon*

factors are no longer controlling and articulating the proper standard for the courts in this circuit to utilize. *Tangreti v. Bachmann*, 983 F.3d 609, 614-19 (2d Cir. 2020).

Joining other circuits, the Second Circuit held that, after *Iqbal*, there is no "special" rule for supervisory liability. *Id.* at 618.

> Instead, a plaintiff must plead and prove "that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676 .... "The factors necessary to establish a [§ 1983] violation will vary with the constitutional provision at issue" because the elements of different constitutional violations vary. *Id*. The violation must be established against the supervisory official directly.

*Id.* (quoting *Iqbal*, 556 U.S. at 676). The supervisor must have committed the violation him or herself, not by the supervision of others who committed the violation. *Id.* Likewise, the supervisor must personally display the requisite state of mind, depending on the violation at issue. *Id.*

### B. Analysis

Plaintiff has failed to plausibly allege the personal involvement of several named defendants in the complaint. To begin, plaintiff has named Solvay Police Officers D. Czerow and Joseph Hardy as parties to this action; however their names do not appear anywhere in the factual allegations. Plaintiff merely references these defendants in one sentence in a paragraph setting forth his Fourth Cause of Action, in which he states that

> Solvay Court Clerk Megan Cavaliere, Officer D. Czerow, Officer Joseph Hardy and Onondaga County ADA Alphonse Williams, conspired together to fabricate frivolous charges, in retaliation to the assertion of Plaintiff's Rights, while questioning the competency of the Solvay Court Clerk, the lawful authority of the Solvay police and acting judge Kara LaSorsa.

**\*12** (Compl. at 27). Plaintiff alleges no facts showing specifically how defendants Czerow and Hardy allegedly violated his rights, but merely offers legal conclusions to this effect. Accordingly, the claims against defendants Czerow and Hardy should be dismissed.

Plaintiff also attempts to impose liability against several named defendants by reason of their supervisory authority. Plaintiff alleges that on July 29, 2022 he

> met with Town of Salina Supervisor, [defendant] Nick Paro, to notify him of and discuss the criminal actions that were being committed against [him] by his Town employee, [defendant Justice Carey], to which Nick Paro just brushed off my plea for help, thus condoning [Justice Carey's] unlawful actions against me.

(Compl. at 17). Even accepting plaintiff's allegations as true, knowledge that unconstitutional acts were occurring is insufficient to state a claim for supervisory liability. "A supervisor's 'mere knowledge ...' is not sufficient because that knowledge does not amount[ ] to the supervisor's violating the Constitution." *Tangreti*, 983 F.3d at 616-17 (quoting *Iqbal*, 556 U.S. at 676-77); *see also Lopez v. Chappius*, No. 6:17-CV-06305, 2021 WL 859384, at *2 (W.D.N.Y. Mar. 8, 2021) (finding that receipt of communication insufficient to show personal involvement because "[e]ven before *Tangreti*, it was 'well-established that a supervisor's failure to respond to a letter of complaint does not provide a sufficient basis to find that the defendant was personally

involved in the deprivation alleged' " (internal citation omitted)). Accordingly, the complaint fails to state a claim as against defendant Paro.

Plaintiff further alleges that on or about October 18, 2021, he sent defendant Village of Solvay Mayor Derek Baichi a "Notice making him aware his employees were assaulting me, violating my rights, causing me harm, etc." (Compl. at 11). Defendant Village of Solvay Chief of Police Derek Osbeck is identified in the "parties" section of the complaint, but is absent from any factual allegations set forth by plaintiff.

Liberally construed, plaintiff's causes of action against defendants Baichi and Osbeck concern the alleged use of excessive force by Solvay Police Officer Matthew W. Ryan, and their "policy that weaponizes [sic] the legal process against plaintiff and unsuspecting, peaceful citizens going about their daily life." (Compl. at 28). As previously discussed, plaintiff's *Monell* claims against the named municipalities are subject to dismissal. Otherwise, plaintiff has failed to plausibly allege that either defendant Baichi or Osbeck personally used any physical force on plaintiff, or were even present for the alleged events. Accordingly, plaintiff's complaint should be dismissed as against these defendants.

Last, plaintiff has named Onondaga County Executive Ryan McMahon as a defendant. Other than being identified as a party, defendant McMahon is not mentioned throughout plaintiff's factual allegations, and is only generally referred to in plaintiff's Tenth Cause of Action for a claim pursuant to *Monell*. Plaintiff cannot, however, maintain *Monell* claim against defendant McMahon in his individual capacity. [7] *See Jackson v. Williams*, No. 18-CV-1137, 2017 WL 1162196, at \*3 (N.D.N.Y. Mar. 28, 2017) (quoting *Amory v. Katz*, No. 15-CV-1535, 2016 WL 7377091, at \*5) ("*Monell* does not apply to ... individuals who are sued in their individual capacity."). Because individual defendant McMahon was not personally involved in any of the alleged Constitutional violations asserted by plaintiff, the complaint should be dismissed as against him.

## X. Remaining Causes of Action

**\*13** Plaintiff has asserted causes of action under the Fourteenth Amendment for "abuse of process" (Compl. at 25-26); the Sixth Amendment for violations of his right to a speedy trial (Compl. at 29-30); and the Seventh Amendment for violating his right to a jury trial (Compl. at 30-31). Because the defendants against whom plaintiff has asserted these claims, or against whom the allegations in the complaint plausibly raise these claims, enjoy absolute immunity from suit and should be dismissed from this action for the reasons previously set forth in my analysis, the court recommends that these remaining causes of actions also be dismissed without further consideration of the merits.

## XI. Opportunity to Amend

### A. Legal Standards

Generally, when the court dismisses a pro se complaint *sua sponte*, the court should afford the plaintiff the opportunity to amend at least once; however, leave to re-plead may be denied where any amendment would be futile. *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993).

### B. Application

This court is recommending that plaintiff's excessive force claim against defendant Ryan survive initial review. Otherwise, the court finds that there is no amendment that plaintiff can make to his complaint that would allow him to sue the remaining named defendants. The defects in plaintiff's claims are substantive, rather than formal, such that any amendments would be futile. The majority of plaintiff's claims are founded on a legal theory that has been uniformly rejected as not just lacking in merit, but a frivolous waste of court resources. *See Tyson v. Clifford*, No. 3:18-CV-1600, 2018 WL 6727538, at \*3 (D. Conn. Dec. 21, 2018) ("Federal courts across the country, however, have routinely refused to credit arguments based on a redemption, sovereign citizen, or other similar theory because the arguments are often frivolous, irrational and unintelligible."); *Buchholz-Kaestner v. Fitzgerald*, No. 6:16-CV-604 (GTS/TWD), 2017 WL 2345589, at \*6 (N.D.N.Y. May 30, 2017) (listing cases). Accordingly,

Sposato v. Carey, Not Reported in Fed. Supp. (2023)

Case 5:25-cv-01648-LEK-MJK    Document 7    Filed 12/19/25    Page 88 of 89

the court cannot conclude that granting leave to amend as to the remainder of plaintiff's claims has any likelihood of being productive in this instance.

**WHEREFORE**, based on the findings above, it is

**ORDERED**, that plaintiff's application to proceed IFP (Dkt. No. 2) is **GRANTED**, and it is

**RECOMMENDED,** that the claim for excessive force proceed as against defendant Matthew Ryan; and it is further

**RECOMMENDED**, that the remaining defendants and causes of action be dismissed **WITH PREJUDICE,** and it is further

**ORDERED** that the defendant's deadline to answer or otherwise respond to plaintiff's complaint be stayed until the District Judge has ruled on the instant Report-Recommendation, and it is further

**ORDERED** that, and copy of the Order and Report-Recommendation be served by mail upon plaintiff at his address of record.

Pursuant to 28 U.S.C. § 636 (b)(1) and Local Rule 72.1(c), the parties have **FOURTEEN (14) DAYS** within which to file written objections to the foregoing report. Any objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636 (b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

**All Citations**

Not Reported in Fed. Supp., 2023 WL 12107649

---

## Footnotes

1    VTL § 402 requires that all vehicles have license plates that correspond to the certificate of registration and that those plates are conspicuously displayed on the front and on the rear of the vehicle. N.Y. VTL § 402(1)(a); *see also Brace v. Johnson*, No. 1:20-CV-588 (FJS/CFH), 2022 WL 504972, at *4 (N.D.N.Y. Feb. 18, 2022), *aff'd*, No. 22-590, 2023 WL 2027274 (2d Cir. Feb. 16, 2023).

2    In doing so, the court expresses no opinion as to whether plaintiff's excessive force claim against defendant Ryan can withstand a properly filed dispositive motion.

3    As further discussed below, plaintiff alleges that he was wrongfully accused of threatening defendant Cavaliere at the Solvay Village Court, resulting in the filing of a police report and an order of protection issued against him. Although not clear from the complaint, this is, presumably, the reason why the Solvay Village Court Justices recused themselves from plaintiff's case, and his criminal proceedings were transferred to Town of Salina Court.

4    Fed. R. Civ. P. 8 requires a " 'short and plain statement' " of a claim, showing that 'the pleader is entitled to relief.' " *Whitfield v. Johnson*, 763 F. App'x 106, 107 (2d Cir. 2019) (quoting Fed. R. Civ. P. 8(a)). Each statement must be " 'simple, concise, and direct,' and must give 'fair notice of the claims asserted.' " *Id.* (quoting *Simmons v. Abruzzo*, 49 F.3d 83, 86 (2d Cir. 1995)). "A complaint may be dismissed under Rule 8 if it is 'so confused, ambiguous, or otherwise unintelligible that its true substance, if any, is well disguised.' " *Id.*

5    See "Section IX. Personal Involvement" below.

6    These factors were:

   (1) the defendant participated directly in the alleged constitutional violation;

   (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong;

   (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom;

   (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts; or

   (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

   *Colon*, 58 F.3d at 873.

7    To the extent plaintiff is suing defendant McMahon in his official capacity, his claim is duplicative of those asserted against the defendant County of Onondaga, and subject to dismissal. *See Mr. Quinn v. Gould*, No. 3:19-CV-820, 2020 WL 1234553, at *4 (D. Conn. Mar. 13, 2020) ("[D]istrict courts within the Second Circuit consistently dismiss claims asserted against officials in their official capacities as duplicative where the plaintiff has named the municipal entity as a defendant.") (collecting cases). The court reaches the same conclusion with any official capacity claims asserted against defendants Paro, Baichi, and Osbeck.

---

**End of Document**                    © 2025 Thomson Reuters. No claim to original U.S. Government Works.